```
 1              UNITED STATES DISTRICT AND BANKRUPTCY COURTS
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   KEVIN OWEN McCARTHY, et al.,    Case Number 20-cv-1395

 4             Plaintiffs,

 5        v.                         Washington, D.C.

 6   NANCY PELOSI, et al.,           July 24, 2020

 7             Defendants.           2:00 p.m.

 8   ------------------------/

 9          TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
              BEFORE THE HONORABLE RUDOLPH CONTRERAS
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES:

12   For the Plaintiffs:     Cooper & Kirk, PLLC
                             By: CHARLES J. COOPER, ESQUIRE
13                               JOSE J. ALICEA, ESQUIRE
                             1523 New Hampshire Avenue, NW
14                           Washington, D.C. 20036

15
     For the Defendants:     U.S. House of Representatives
16                           By: DOUGLAS N. LETTER, ESQUIRE
                                 ADAM A. GROGG, ESQUIRE
17                               WILLIAM HAVEMANN, ESQUIRE
                             219 Cannon House Office Building
18                           Washington, D.C. 20515

19

20

21   Court Reporter          Lisa K. Bankins RMR FCRR RDR
                              United States District Court
22                            333 Constitution Avenue, NW
                              Washington, D.C. 20001
23

24   Proceedings recorded by mechanical stenography,
     transcript produced by notereading.
25
```

```
1                    P R O C E E D I N G S
2            THE CLERK:  Civil Action 20-1395, Kevin Owen
3    McCarthy, et al. versus Nancy Pelosi, et al.  For
4    plaintiffs, I have Mr. Charles J. Cooper and Mr. Jose J.
5    Alicea.  For defendants, I have Mr. Douglas N. Letter,
6    Mr. Adam A. Grogg and William Havemann.  Our court
7    reporter today is Ms. Lisa Bankins.  All parties are
8    present.
9            THE COURT:  Good afternoon.
10           MR. COOPER:  Good afternoon, Your Honor.
11           THE COURT:  So I've read all the pleadings.
12   They're all very clear and very helpful.  I obviously
13   still have to dig into some of the cases that have been
14   cited.  But, you know, I have some ideas, but I've made no
15   decisions yet in my mind.  So I'm completely open to your
16   persuasion today.  So give me your best pitch and I'll get
17   you onto the next level as quickly as practical.
18           MR. LETTER:  Judge, this is Douglas Letter.
19   There was a little trouble.  Mr. Cooper couldn't hear me
20   very well.  If I speak like this, can you hear me well,
21   Your Honor?
22           THE COURT:  Yes.
23           MR. LETTER:  Okay.  Thank you, Your Honor.  If
24   for any reason at any point, Your Honor, you have trouble,
25   would you please let me -- signal me and I'll make sure to
```

1    speak louder.

2              THE COURT:  I will not hesitate to do so.

3              MR. LETTER:  Thank you, Your Honor.

4              MR. COOPER:  And, Mr. Letter, thank you.  I can

5    hear you much better now, too.

6              MR. LETTER:  Thank you.

7              THE COURT:  All right.  Mr. Cooper, since it's

8    your initial motion, why don't you get started?

9              MR. COOPER:  Yes, sir.  Of course.  Thank you

10   very much, Judge Contreras.  And may it please the Court,

11   Charles Cooper for the plaintiffs in this action, who are

12   160 members of the House of Representatives and five

13   private citizens who are also constituents of five of

14   those members of the House.

15             Your Honor, the plaintiffs have brought before

16   you today a constitutional challenge, House Resolution

17   965, a resolution that for the first time in the nation's

18   history authorizes absent members of Congress to be

19   counted as part of the quorum necessary to do business in

20   Congress and also to cast their votes on the floor of the

21   House by giving their proxy to a present member of

22   Congress.

23             The justification for this unprecedented proxy

24   rule, Your Honor, is the Coronavirus crisis now

25   confronting our country.  But the Coronavirus pandemic,

1    Your Honor, is not the first public health crisis of its

2    kind to plague our nation.  In 1793, the country was

3    ravished by a Yellow Fever epidemic and it was especially

4    devastating to the City of Philadelphia, which was then

5    the seat of the federal government.  President Washington

6    had received urgent requests to as he put it "to convene

7    Congress at some other place in light of the calamitous

8    situation in Philadelphia."  And so we ask James Madison,

9    no less an authority on the meaning of the Constitution,

10   Your Honor, James Madison, whether he had such a power

11   under the Constitution.  Washington emphasized Mr. Madison

12   that -- as I'm quoting again -- "that upwards of 3500 have

13   died in Philadelphia and the disorder by all accounts was

14   spreading and raging more violently than ever."

15           Now, Your Honor, in 1793, 3500 deaths was well

16   over six percent of Philadelphia's entire population.  So

17   the crisis was orders of magnitude greater than the one we

18   face today.

19           Madison advised the President that his power

20   under Article II, Section 3 to "on extraordinary occasions

21   convene both houses or either of them," authorized the

22   President to determine the time of such a special session,

23   but not a place.  As Madison noted, although this

24   provision, Article II, Section 3 does not expressly limit

25   the place, it's -- and I'm quoting again from Madison --

1    "its obvious meaning is confirmed by other parts of the

2    Constitution."  Especially, he cited the arrest clause,

3    Your Honor, one that's before you today.  In Article 1,

4    Section 6, "immunizing members of Congress" -- quoting

5    again from the Constitution -- "from arrest during their

6    attendance at the session of their respective houses and

7    in going to and returning from the same."

8          Washington also asked Jefferson and Hamilton the

9    same question, Your Honor, in 1793 and they, too, opined

10   that the President has no power to protect the members of

11   Congress from the danger of contracting Yellow Fever by

12   convening them in a place other than Philadelphia.  The

13   Constitution precluded that in the President.  It was a

14   given, Your Honor, to all four of these founders that the

15   members of Congress would have no choice but to convene in

16   person in their respective houses at the seat of

17   government despite the contagion that awaited them there.

18   And so they did, Your Honor, in December of 1793 convene

19   in Philadelphia and pursued their session through to June.

20         This founding error action of Congress, Your

21   Honor, is especially meaningful and instructive and

22   standing alone, we would submit, is decisive on the issue

23   before you as a historical example.  But that's by no

24   means all.  Your Honor, the Constitution's text explains

25   why it didn't occur I'm sure -- though that's speculative

1    frankly -- to any of those founders at that time that

2    perhaps the danger could be mitigated by authorizing proxy

3    votes at Philadelphia.  A practice, Your Honor, that was

4    well known at the founding because the State of Maryland's

5    legislature actually practiced it.

6              But, Your Honor, the reason it didn't is because

7    the words and text of the Constitution itself preclude in

8    a such interpretation of Congress' power under its rule

9    making power.  It is simply impossible I would submit to

10   reasonably to read the Constitution and overlook its

11   repeated and emphatic requirement that members of Congress

12   be actually present in their respective houses when they

13   vote.  There are many provisions.  But let me offer the

14   Court just three of the key ones.

15             The first one is the Quorum Clause, Your Honor.

16   Your Honor is familiar with these provisions I know, but

17   bear with me.  I want to quote them for the emphasis --

18             THE COURT:  Yes.

19             MR. COOPER:  -- that the particular words

20   provide.  "A majority of each house shall constitute a

21   quorum to do business.  But a smaller number may adjourn

22   from day to day and may be authorized to compel the

23   attendance of absent members."

24             The Yeas and Nays Clause, Your Honor, of Article

25   I, Section 5.  It provides the yeas and nays of the

1    members of either house on any question shall at the

2    desire of one-fifth of those present, of those present,

3    Your Honor, be entered on the journal.

4            And I've already mentioned, Your Honor, the

5    clause that was particularly cited, one of them, by

6    Madison back to President Washington.  The Arrest Clause.

7    And again that protect members "from arrest during their

8    attendance at the session of their respective houses and

9    in going to and returning from the same."  Their

10   attendance at their respective houses, Your Honor.

11           Your Honor, there's much more.  Sprinkled

12   throughout the Constitution are phrases that bespeak the

13   clear understanding and requirement, Your Honor, by the

14   Constitution that for either the House or the Senate to do

15   business and its members to participate, they had to be

16   present.  Let me share some of those phrase with you.

17   They are sprinkled throughout.  "The first meeting of

18   Congress shall be assembled" and shall assemble "when

19   sitting for that purpose."  And that, of course, is the

20   impeachment clause, Your Honor.  When sitting for that

21   purpose.  Elsewhere, "two-thirds of the members present."

22   Present.  "Two-thirds of the senators present."  Another

23   phrase, "in the presence of the Senate and the House of

24   Representatives."  Finally, "nor to any other place than

25   that in which the two houses shall be sitting."  That

1    provision the Court will recognize is the one allowing

2    either house to adjourn, but only for three days and not

3    to adjourn to any other place than the seat of government

4    if they adjourn, if they adjourn without the consent of

5    the other house to any other place than that in which the

6    two houses shall be sitting.

7             Your Honor, these clear textual provisions

8    bespeak the framers' understanding that the House of

9    Representatives and the Senate as well are deliberative

10   bodies.  They were understood to be deliberative

11   legislative bodies where the people's representatives

12   would gather together face to face to debate, to persuade,

13   to listen, to argue and ultimately, Your Honor, to address

14   the issues of the day through voting and through enacting

15   or rejecting legislation.

16            Your Honor, coupled with these textual

17   provisions is our constitutional history.  I've shared

18   with you the extraordinarily relevant and pertinent

19   history from 1793 involving principal founders of our

20   country and framers.  The principal framer of our

21   Constitution.

22            But that history doesn't stand alone, Your

23   Honor, because throughout our nations history sadly, the

24   nation's capitol has been beset by other crises.  Crises

25   that were the presence of the members optional, Your

1    Honor.  The members and the Congress would surely have

2    exercised that option from, Your Honor, the pandemic in

3    1918 of the Spanish Flu, which, Your Honor, in the country

4    at that time killed some almost 700,000 people.  And if

5    extrapolated to today's population would be two million

6    Americans.  Two million.  That 1918 pandemic, Your Honor,

7    did not bring forward the option we're addressing today.

8    Nor did the Civil War or the War of 1812.

9           Your Honor, the historical impetus, if you will,

10   for the Congress to have enacted a provision of this kind

11   and it certainly had many occasions after modern

12   technology was available to it has been extreme and in

13   fact even at least as extreme as it is now, Your Honor.

14   But that unbroken American history and tradition, Your

15   Honor, we would submit is clear confirmation, if you will,

16   of the meaning of the words, the words themselves in one

17   provision after another of the text of the Constitution.

18          And the Court will recall the many occasions

19   when the Supreme Court has said an unbroken and settled

20   historical practice speaks volumes, if you will, with

21   respect to the proper interpretation of the -- the meaning

22   of the Constitution's provisions.  Most recently, I think

23   in Noel Canning the Court made the point.  But its most

24   famous expression I think came in the Pocket Veto case.

25          Your Honor that concludes my affirmative

1     presentation.  I, of course, know that my friend, Mr.

2     Letter, and his colleague contend that the Court is

3     precluded from reaching the merits of my case and I'm

4     happy to address his standing arguments and his speech and

5     debate arguments now or subside and proceed in any way

6     that the Court believes is orderly.

7                 THE COURT:  Sure.  I mean I'm in no rush today.

8     So I'm going to let everyone say what they need to say.

9     So we're going to be somewhat informal here.  So why don't

10    you just go ahead and address those issues now?

11                MR. COOPER:  Sure.  Very well, Your Honor.

12    Thank you.

13                Standing.  Your Honor, the House makes two main

14    points as I read their papers with respect to standing.

15    The first one is to simply argue that we or my clients,

16    the plaintiffs lack standing because the plaintiffs'

17    voting strength, that is the members of the House and

18    derivatively, their constituents, the constituent

19    plaintiffs, their voting strength is not diluted at all by

20    the proxy rule.  It's not diluted because on the rules

21    face and in operation, it ensures only -- I'm quoting now

22    from their papers -- "that each member is entitled to one

23    and only one vote."  And they also emphasize that each one

24    of those absent members who's providing a proxy to a

25    present member is in control of that vote.  The proxy has

1   no discretion to deviate from the way that the absent
2   member instructs.  Although -- and I'll come back to
3   this -- I don't think -- I think the constitutional status
4   of either rule is identical and would be prohibited.
5           But, Your Honor, this argument by the House
6   simply overlooks the Hornbook proposition that Your Honor,
7   the Court, must assume the validity of my constitutional
8   argument in order to assess the standing for my clients to
9   make it.  That's black letter.  So you must assume that
10  I'm right and the House Resolution 965 is
11  unconstitutional.  And that every vote cast on behalf of
12  an absent member through a proxy by a present member is a
13  nullity.  That that vote doesn't -- is constitutionally
14  null.  And once that assumption is made and you realize
15  that notwithstanding the assumption that is the
16  constitutional nullity, it's being counted anyway, then it
17  follows that the dilution of the votes who -- of those
18  members of Congress who are present and who only vote
19  their own vote a single vote, that those votes are
20  diluted.  And also, of course, that the voting strength of
21  their constituents is necessarily diluted as well.
22          So, Your Honor, that injury again I guess it
23  does assume that I'm right on the merits.  But you must
24  assume I'm right on the merits.  And if you do, then it
25  simply follows that the dilution exists every time an

1    invalid vote or an ineligible vote is registered, whether

2    it be in an election for the local school board or for the

3    President or in a vote on the floor of Congress.  If an

4    invalid vote is cast, it -- to a mathematical certainty as

5    this Court framed it in the Michel against McConnell case,

6    to a mathematical certainty, there's a dilution there.

7    So, Your Honor, I'll proceed to their second argument --

8            THE COURT:  Let me ask you a question about

9    that, Mr. Cooper, because it's not crystal clear to me,

10   but your argument didn't evolve a little bit on that back

11   where initially you focused more on Congressman Raskin's

12   vote counting seven times and then it evolved more on the

13   nullity proposition that if using your numbers, if 200

14   members vote and 50 are by proxy, your position is the

15   dilution is instead of being one out of a hundred and

16   fifty, it's one out of -- it becomes one out of 200 if you

17   count what other according to your contentions would be

18   the null votes.  Am I articulating that correctly?

19           MR. COOPER:  Well, Your Honor, yes except I

20   don't think your math with respect to my hypo is as at

21   least I understand and as I tried to express it.  And let

22   me take a run at it this way, just using it in simple

23   terms.  And I certainly had not meant to pick on

24   Representative Raskin in this.  He just -- he's an old

25   friend and I would never do that.  But his -- he happens

1    to be proximate to Washington and so obviously, he's been

2    a popular choice for casting proxy votes.

3           But at the time we put forward our briefs to

4    you, Your Honor, I think he had received seven

5    authorizations to cast proxy votes.  If assuming he cast

6    all seven of them plus his own eight, our proposition is

7    simply that seven of those votes were cast on behalf of

8    absent members and so they were null.  They were invalid.

9    It was as though they had been cast on the floor of the

10   House by a let's say a former member or a staffer or

11   somebody walking in off the street.  They were simply

12   invalid.

13          And if they were invalid as I believe the law

14   requires you to assume for purposes of standing, then

15   Representative Raskin actually cast eight votes.  They

16   were counted.  They were counted.  And so one valid vote

17   plus seven invalid votes were counted at the instance of

18   Representative Raskin.  Those seven invalid votes, Your

19   Honor, they changed the denominator from what it should

20   have been.  One additional vote cast validly by one

21   present member to eight additional votes in that

22   denominator because seven of them were null, nullities.

23   They were invalid and so that's the dilution.  Anyone who

24   casts a valid single vote, his or her vote now is diluted

25   by those seven invalid votes.  It's just like invalid

1    votes being cast in the election for, you know, any public

2    office.  If say non-citizens are allowed to vote, if they

3    were to vote, those would be invalid votes and they would

4    necessarily dilute the valid votes that were cast.  So

5    that's the nature of our argument.

6              THE COURT:  Okay.  I think we were saying the

7    same thing.  But I understand.

8              MR. COOPER:  Yes.  And, Your Honor, I would now

9    move to what I -- what their second standing argument is

10   and it is that -- before I do, let me just I guess bring

11   my first point to closure by pointing out that the

12   circumstance I've just described and that is before you is

13   factually indistinguishable from Michel versus Anderson,

14   the D.C. Circuit case that held that members and their

15   constituents, plaintiff members and their constituents had

16   standing to challenge the mathematically certain dilution

17   of their voting strength.  That was caused in that case by

18   a rule like this one, a rule that allowed five territorial

19   delegates, that is delegates from Puerto Rico and other

20   territories to cast a vote in the committee of the whole.

21             The D.C. Circuit held that those votes if

22   invalid -- and they believed and they concluded that they

23   were -- if invalid, would necessarily dilute the voting

24   strength of every other member of Congress because, Your

25   Honor, instead of having a voting strength of one over 435

1    members of Congress, the members of Congress had a voting
2    strength of one over 440 votes.  The members of Congress
3    from the states and the delegates plus the five delegates
4    from the territories.  And so the court held that that
5    plainly vested the constituent plaintiffs with standing
6    and, of course, it acknowledged its earlier ruling that
7    the -- in the Vander Jagt case that the members clearly
8    would have standing as well to challenge the dilution of
9    their vote.

10          And so I come then to the Raines case, Your
11   Honor.  The case that counsel for the House has advanced
12   as essentially overruling the D.C. Circuit's precedent
13   establishing the standing for those members whose votes
14   have been diluted.  And again, I would submit that the
15   Michel against Anderson case, Your Honor, is on all fours
16   with our case.  But counsel says it was effectively
17   overruled.  Now the D.C. Circuit has never said that.
18   It's never said that Michel and Vander Jagt were
19   overruled.  And so for Mr. Letter to carry his burden of
20   persuading you that they've been effectively overruled, he
21   must show that they are utterly irreconcilable.  That they
22   are incompatible, those two cases.  But, Your Honor, they
23   are entirely compatible.

24          In the Raines case, Your Honor, and just to I
25   think put in a context that at least to me has made it

1    more accessible, if you will, the dispute that is before

2    you is an intra-branch dispute.  One between members of

3    Congress against its other members of Congress

4    essentially, against the House itself.  Intra -- actually,

5    it's intra-house dispute.  The Raines case was an

6    inter-branch dispute, one by members of Congress against

7    the executive branch.  And, Your Honor, I think that's a

8    key to understanding why these cases are not at all

9    incompatible.

10        In that case, a handful of members of Congress,

11   both senators and members of the House sued the secretary

12   of the treasury and the director of OMB, executive

13   officers challenging the constitutionality of the Line

14   Item Veto.  And it was on the ground and I'm quoting now

15   from the opinion.  "It was on the ground that the act

16   itself, Line Item Veto Act, unconstitutionally expands the

17   President's power at the expense of the Congress."  Again,

18   an inter-branch struggle or conflict there, Your Honor.

19   The court held that the members lacked standing for a

20   specific reason, Your Honor.

21        And I want to share a passage from the case

22   because I think it's dispositive and the passage is from

23   521 U.S. at 821, Your Honor.  The court held that the

24   members lacked standing because they "have not been

25   singled out for specially unfavorable treatment as opposed

1    to other members of their respective body."  Again an

2    intra-branch reference as opposed to inter-branch, Your

3    Honor.

4            THE COURT:  I'm sorry.  Could you repeat --

5    which case are you reading from?

6            MR. COOPER:  Yes, Your Honor.  I'm reading

7    actually from the Raines case.  The case that Mr. Letter

8    has cited is effectively overruling the -- what we submit

9    to is the controlling precedence in the D.C. Circuit.  The

10   Michel against Anderson.  And I want to invite your

11   attention to page 821, Your Honor.

12           THE COURT:  All right.  I'm there.

13           MR. COOPER:  Okay.  Yes, sir.  In my version of

14   it, Your Honor, it's in that carryover paragraph at the

15   top there of 821.  And the court said that the "members of

16   Congress" -- and I'm quoting now -- "have not been singled

17   out."  Actually, it says first, "appellees have not been

18   singled out."

19           THE COURT:  Okay.  I got it.

20           MR. COOPER:  Okay.  All right.  Thank you.

21   "Have not been singled out for specially unfavorable

22   treatment as opposed to other members of their respective

23   body."  Again a reference to intra-branch or intra-house,

24   the conflict.  It continues.  "Their claim is that the act

25   causes a type of institutional injury (the diminution of

1   legislative power) which necessarily damages all members

2   of Congress and both houses of Congress equally.  And then

3   they say and the court said "see Note 7 intra."  So I'm

4   going to come back to Note 7 because it's especially

5   illuminating.

6           But before, Your Honor, I just want to emphasize

7   this passage again because the court is saying that the

8   Line Item Veto Act inflicted an institutional injury in

9   which the executive's power was enhanced at the expense of

10  the Congress as a whole.  And here the court had before it

11  six members of the House and Senate who were attempting to

12  redress an injury that wasn't to them individually.  It

13  affected everybody in the institution.  It was an

14  institutional injury.  Because it was institutional, the

15  court said there's no standing in an individual member to

16  redress an institutional injury such as was being alleged

17  there.

18          The court even went on to distinguish a

19  different case called Coleman from Kansas in which the

20  members of that legislature had enough in numbers to

21  actually serve as plaintiffs to redress an institutional

22  injury.  But half a dozen members of Congress who haven't

23  been specifically authorized by Congress to bring that

24  suit don't have standing to do it.

25          And Your Honor, the court then cites "see Note

7."  I'd like to invite the Court's attention to that
footnote.  It's a couple of pages over.

           THE COURT:  I'm there.

           MR. COOPER:  And, Your Honor, the money
quotation is a couple of lines down.  But let me just read
it if I may into the record from the beginning.  "Just as
appellees cannot show that their vote was denied or
nullified as in Coleman" -- that's the case I just
mentioned to you, the Kansas case -- "(in the sense that a
bill they voted for would have become law if their vote
had not been stripped of its validity) so are they unable
to show that their vote was denied or nullified in a
discriminatory manner."  And here's the important
phrasing.  "(In the sense that their vote was denied its
full validity, its full validity in relation to the votes
of their colleagues denied its full validity.)"  Here,
Your Honor, our point is our plaintiffs' vote has been
denied its full validity by the dilution created by proxy
votes that are null and void.

           But I continue with this footnote, Your Honor.
"Thus, the various hypotheticals offered by appellees in
their briefs and discussed during oral argument have no
applicability to this case."  And he cites the reply brief
and in a parenthetical, it says positing hypothetical law
in which "first term members are not allowed to vote on

19

1    appropriations bills."  Your Honor, that hypothetical

2    which the court specifically identified as not the kind of

3    case that was before it, that hypothetical where the full

4    validity of a vote was being compromised is the case

5    that's before you.  That is the case that was Michel

6    against Anderson.  That's the case we have brought to you.

7    Again the -- whether a vote is diluted or whether it's

8    denied all together is not an injury that is different in

9    kind.  You said that.  Your Honor, this court said that in

10   Michel against McConnell referencing Michel against

11   Anderson, the case -- the D.C. Circuit case that we submit

12   to you is controlling on this question of standing.  If a

13   vote is denied or if it's just diluted, it's the same

14   injury, Your Honor.

15          And so Raines itself we would submit earnestly,

16   Judge Contreras, is not in any way incompatible with the

17   Michel against Anderson case at which -- again is quite

18   controlling here.

19          Your Honor, the next point I would like to make

20   on this head -- yes?

21          THE COURT:  Well, are you moving to a different

22   topic or are you still on standing?

23          MR. COOPER:  I'm still on standing, Your Honor.

24          THE COURT:  Okay.  Go ahead.

25          MR. COOPER:  Yes.  Thank you.  Because I'd like

1       to direct the Court's attention to a place where the D.C.

2       Circuit subsequent to Raines distinguished Raines along

3       precisely the lines that Raines distinguishes itself in

4       the passages that I've just mentioned to you and that I am

5       suggesting to you for why it is quite distinguishable.

6       The case is Campbell against Clinton.  It's at 203 Fed.

7       2nd. --

8                 THE COURT:  Mr. Cooper, if I could stop you for

9       just a moment?  If I can ask all the listeners, we're

10      getting more feedback, if we can make sure that anyone who

11      is not speaking, put their phone on mute.

12                MR. COOPER:  Yes.  Thank you.  That helps.  In

13      the D.C. Circuit case, Your Honor, Campbell against

14      Clinton after Raines was decided, the court distinguished

15      Raines from the case I've brought to you on precisely

16      these terms.  At page 21, Footnote 2, this is what the

17      court said.  The court in Raines did not decide whether

18      congressmen would have standing to challenge actions of

19      Congress which diminished their institutional role.  And,

20      Your Honor, it's clear that the court was talking about

21      challenge -- actions of Congress such as the resolution

22      before you diminishing their institutional role within the

23      Congress because they go on to cite Michel versus

24      Anderson, the very case that the House is saying has been

25      overruled and is of no effect.  They cite that and they

1    have a parenthetical to describe it afterward.  The

2    parenthetical is as follows:  "Congressmen had standing to

3    challenge House rule which diluted their vote in the

4    committee of the whole."  So, Your Honor, again, the D.C.

5    Circuit after Raines has recognized Michel and Anderson as

6    good law.

7           But Your Honor, equally importantly here is that

8    so have you, this court.  You've had occasion as I've

9    mentioned a couple of times before in Michel against

10   McConnell to reference in the case where the voter, you

11   know, brought you the proposition that Senator McConnell's

12   conduct in not having a hearing for Judge Garland violated

13   his vote, diluted his vote.  Well, you rejected that

14   claim, Your Honor, I would say, of course.  But you've

15   treated with Michel versus Anderson, Your Honor, as good

16   law.  You're recognizing that a mathematical dilution

17   produces standing.  Mathematical certainty dilution would

18   vest standing in a voter or a member.

19          Your Honor, even if there was something about

20   Raines that somehow prevented members of Congress from

21   having standing, there is nothing in Raines that speaks to

22   the constituent plaintiff.  So at the end of the day, even

23   if Mr. Letter is right and the members that are before you

24   somehow lack standing after Raines, again there is nothing

25   in Raines that would say that the voters, the individual

1    constituents before you lack standing and their dilution

2    of their vote, even though derivative, is clearly an

3    injury under all election law from Wesberry and Sanders

4    and Reynolds and Sims to the census cases up to today.

5            Your Honor, that concludes my response to the

6    standing points that counsel --

7            THE COURT:  Let me ask you a question that goes

8    back to the merits because I don't recall you touching on

9    your non-delegation argument which you indicate is a

10    separate reason.  I think towards the end of the briefing,

11    they merged a little bit more.  But why don't you touch on

12    that as well?

13            MR. COOPER:  Thank you.  I will do that.  One of

14    the plaintiffs before you, Plaintiff Swayze, is a

15    constituent of a member who actually has provided a proxy

16    or did provide a proxy.  I'm not sure what the current

17    state is with respect to that member, but did provide a

18    proxy and his vote by proxy was cast on the floor of the

19    House.

20            THE COURT:  And that's the Charlie --

21            MR. COOPER:  Yes, Your Honor.  That's the one

22    that relates to Plaintiff Swayze in particular.

23            THE COURT:  Um-hum.

24            MR. COOPER:  Our proposition, Your Honor, is

25    this.  That the voters in that district, they are the ones

1      that hold the genuine legislative power and that through

2      their votes and through their choices elect particular and

3      specific individuals to represent them, speak for them,

4      argue for them, represent their values and their needs in

5      the House.  And that that vote, that power, that

6      legislative power is one that the people, the voters

7      delegate to that member of the House or the Senate.  And

8      that that delegation does not carry with it the authority

9      to sub-delegate, if you will, the power to cast that vote,

10     to be on the floor, to participate in the debate and do

11     all the other things that the voters in that district

12     contemplate and delegate to that specific member of

13     Congress.

14             And so while I have no case whatsoever to cite

15     to you to support this proposition because this has never

16     been done, we believe that the common sense and the very

17     nature of our republic form of government, the Court is

18     familiar with Federalist Ten and all of Madison's writings

19     why we opted for a republic instead of a direct democracy.

20     It was so that the people themselves didn't have to

21     gather -- did not have to gather themselves to make the

22     decisions.  They elected and delegated that power to

23     specific individuals to then come and gather at the feet

24     of government to represent them in all those ways.  But

25     the key way is to vote for them.

1          And, Your Honor, so our simple merits

2    proposition is the Constitution, its structure.  As surely

3    as Congress cannot delegate without -- with no governing

4    limiting standards, cannot delegate its legislative power

5    to the President and certainly not to the courts, the same

6    theory, if you will, limits -- we believe limits Congress'

7    ability to effectuate a sub-delegation of the voter's

8    power, the constituent's power by the person they elect.

9    That's our argument.

10         THE COURT:  Okay.  So towards -- I think it was

11   in your last pleading, you focused on that the -- what was

12   being protected was that the Congress person had to cast

13   the vote.  That it's not a delegation of the decision

14   because the proxy rule continues to allow the person

15   giving the proxy to make the decision.  But it's the

16   actual power to cast the vote and that that has special

17   significance.  Is that --

18         MR. COOPER:  Yes, Your Honor.  We believe that

19   standing quite alone and apart from any discretion that

20   the absent member might vest the present member with to

21   make a choice, that standing alone, the power to cast the

22   vote can't be separated from the other elements, Your

23   Honor, of representation.  It's to represent and all of

24   these things, to argue, to listen, to advocate, to learn,

25   to debate and we'll be getting into the Speech and Debate

1    Clause momentarily, Your Honor.  An element of
2    representation.  An element of the deliberative nature of
3    these bodies that has constitutional protection.  Well,
4    those elements of representation, Your Honor, can't be
5    disaggregated.  And, yes, they culminate in the ultimate
6    legislative authority, the vote itself.
7            But, Your Honor, I would also add that we don't
8    see any difference at all in the constitutional status of
9    a rule that authorizes an absent member to vote by proxy
10   specifying how the vote will happen versus a rule that
11   would authorize an absent member to give a general proxy
12   instead of a specific proxy.  That is a proxy that says
13   you have my vote, you voted however you like.  There would
14   be no constitutional difference whatsoever, Your Honor,
15   between those two rules.  If the House is right and
16   there's power to -- in the House to dispense with the
17   necessity of the member being present and can vote through
18   proxy, we see no constitutional provision that would
19   somehow invalidate that rule if the member offered a
20   general proxy, Your Honor.
21           THE COURT:  So one of the things Mr. Letter
22   argues and which is the point I want to get to is if what
23   you're arguing is that that vote must be cast from the
24   floor and not from afar, that the argument although
25   perhaps theoretically separate merges with your primary

1       argument about no proxy votings at all.

2              MR. COOPER:  Yes, Your Honor.  I believe that is

3       the case.  We proceed from the -- from a fundamental --

4       what we believe -- fundamental premise that we believe is

5       driven by the text of the Constitution and the history

6       informing and we think confirming what the text of the

7       Constitution means, which is that in order to, one, be

8       counted as part of a majority that constitutes a quorum

9       and, two, to actually vote in a recorded vote, one has to

10      be present.  You have to actually -- you have to be

11      assembled.  You must be present.  You cannot be absent.

12      You must be -- the House must be sitting.  All of these

13      words that and phrases, Your Honor, that bespeak again the

14      necessity in the framers' contemplation that this is a

15      deliberative body.  One that even in 1793 with the seat of

16      government ravaged by contagion, one that requires its

17      members to be present in order to engage that deliberative

18      process and function.

19             THE COURT:  Okay.  So the only thing I was

20      actually trying to establish is that although in your

21      briefs, you refer to those separate arguments as

22      independent, in reality they're inextricably intertwined.

23             MR. COOPER:  They both proceed from the same

24      fundamental constitutional proposition, which is proxy

25      votes are invalid.  Yes, Your Honor.  They do.  But they

1    approach it from two different perspectives.  One is the

2    perspective of the constituent whose member will not proxy

3    vote and so that constituent, his member is present or his

4    or her member is present and is voting in person versus

5    another constituent, one whose member has given a proxy.

6    We think those are two different and independent harms,

7    but they proceed from the same fundamental -- from the

8    same fundamental constitutional premise that a proxy vote

9    is invalid.

10             THE COURT:  Okay.

11             MR. COOPER:  Yes, Your Honor.

12             THE COURT:  I got it.

13             MR. COOPER:  Thank you.

14             Your Honor, I would proceed now with the Court's

15   permission to another threshold argument that counsel for

16   the House has made relating to Speech and Debate Clause.

17   If I may?

18             THE COURT:  Yes, you may.  Go ahead.

19             MR. COOPER:  Thank you.  First, I guess kind of

20   to set the stage for my points, I want to just articulate

21   a couple of the basics of speech and debate more to help

22   me in the order of the argument than you, Your Honor.  But

23   in the very recent case, D.C. Circuit case of Barker

24   against Conroy, the D.C. Circuit emphasizes the Speech and

25   Debate Clause.  It emphasizes the scope of it.  It says

1    first -- and, Your Honor, I'll pause for a moment if you'd

2    like as you reach for Barker I guess.

3              THE COURT:  Got it.

4              MR. COOPER:  Yes, sir.  Your Honor, I'm

5    specifically referring to page 1127 for these passages at

6    921 Fed. 3rd. at 1127.  And at that page, Your Honor, you

7    will see that or close to it -- I hope I have the right

8    page here -- but the D.C. Circuit said and here it's

9    quoting, you know, venerable Supreme Court speech and

10   debate jurisprudence.  But it says the clause extends only

11   to acts that are an integral part of the deliberative and

12   communicative processes; that is, the processes of members

13   pertaining to matters within their legislative

14   jurisdiction.  And it also says that it does not extend --

15   and I am quoting -- "it does not extend beyond what is

16   necessary to preserve the integrity of the legislative

17   process."  And that was at page 1127.  Your Honor, I'm not

18   sure about the first quote.

19              But here is the more important part, Your Honor,

20   for our purposes of Baker and Conroy because the Court of

21   Appeals noted that the Supreme Court as well as the Court

22   of Appeals has -- and I'm quoting now -- "drawn a key

23   distinction, drawn a key distinction" and by the way, this

24   is on -- this is at -- I'm sorry, Your Honor.  This isn't

25   in Baker against Conroy.  This is from another Speech and

1    Debate Clause case called Walker versus Jones.  Walker

2    versus Jones.

3              THE COURT:  I got it.

4              MR. COOPER:  Okay.  Thank you.  And this is at

5    page 933 of that precedent.  And the circuit said that

6    "the Supreme Court has drawn a key distinction between

7    legislative speech or debate and associated matters on the

8    one hand and" -- I'm continuing to quote here --

9    "executing a legislative order or carrying out legislative

10   directions on the other hand."  So, Your Honor, Walker

11   versus Jones and many other cases draw this distinction.

12   One is things that are at the -- involved with speech and

13   debate itself, deliberative process and the members.

14             The other thing which is completely

15   distinguishable are those acts taken in execution of a

16   legislative order or carrying out legislative direction.

17             And the court went on in Walker versus Jones to

18   say that the courts view with a jaundiced eye a decidedly

19   jaundiced view, it said.  Attempts to extend the clauses

20   shield to acts that are performed in carrying out

21   legislative direction.  That is those administrative acts

22   that, Your Honor, here we have asked the Court to review

23   and ultimately to enjoin if the Court ultimately is

24   persuaded of the merits of our case.  The administrative

25   acts by the Clerk of the House, by the sergeant of the

1    House, for example.  And this Court has to view those acts

2    in carrying out House Resolution 965 with a jaundiced

3    view.

4              THE COURT:  So let me get you -- I know you do

5    so in your brief, but refresh my recollection as to how

6    you distinguish Consumers Union.

7              MR. COOPER:  That's their best case, Your Honor.

8    Make no mistake.

9              THE COURT:  That's why I asked.

10             MR. COOPER:  That's their best case.  Let me

11   take a run at it.  But before I do, if the Court please, I

12   want to note for the Court that that is the only appellate

13   case that they cite or that I'm aware of in which the

14   Speech or Debate Clause immunity, legislative immunity has

15   been extended to non-members, if you will; that is,

16   extended to officers of the House and there even it was

17   extended to this Publications Committee as well as the

18   Sergeant-at-Arms who was responsible for, Your Honor, for

19   policing the floor of the House in response to the

20   decisions made by the Publications Committee.

21             But, Your Honor, in that case, the court -- if

22   you will bear with me for one moment?  In that case, the

23   court emphasized that this was a function; that is,

24   ensuring that the members when they were in the chamber

25   itself were not approached or lobbied by people who were

1   permitted to enter the chamber as a result of their press

2   credentials, the press gallery.  That that essential

3   function was one that the Periodical Committee and the

4   Sergeant-at-Arms were protected from suit, if you will,

5   and that activity was protected even from judicial review

6   because it was essential.

7           And I'm reading now from the court's -- the D.C.

8   Circuit's decision in Barker versus Conroy where it

9   distinguishes Consumers Union and where it says that "that

10  activity was essential -- essential to that determination

11  was the fact that Congress had itself developed the press

12  gallery rules to protect legislators' independence."

13          I'm continuing from Barker versus Conroy

14  explaining and interpreting Consumers Union.  "Congress

15  designed the rules to ensure that the galleries would be

16  used by bonafide reporters who would not abuse the

17  privilege of accreditation by importuning members on

18  behalf of private interests or causes."

19          And then the court goes on.  "As we explained in

20  a later case because the association's denial of the

21  organization's application for access to the press

22  gallery, because that application involved regulation of

23  the very atmosphere in which law making deliberations

24  occur, the Speech or Debate Clause barred us from hearing

25  the suit."  And they were quoting there from Walker versus

1    Jones.  And, Your Honor, I think I may have -- and that --
2    and I've just read to you from Barker versus Conroy which
3    is the 2019 case just last year from the D.C. Circuit.
4    That's how the D.C. Circuit distinguished that case, Your
5    Honor.
6         Even as it in Barker and in all these other
7    Speech and Debate Clause cases that are before you, it did
8    not shield legislative officers, if you will, from
9    immunity when they were engaged in implementing or
10   executing, if you will, carrying out a legislative
11   directive that was said to be unconstitutional.  And the
12   reason that in Consumers Union the court did extend the
13   shield of speech and debate immunity to those non-members
14   was that they were engaged in an activity that had been
15   performed by members from the founding which was
16   essentially policing the access to the chamber itself and
17   that was viewed as essential to the deliberations, you
18   know, if you will to use the Gravel, Gravel versus United
19   States classic test, that was viewed as an integral part
20   of the deliberative and communicative processes.  That is
21   not the case with respect to the administrative matters,
22   Your Honor, that we have called the Court's attention to
23   that the Clerk performs, that the Sergeant-at-Arms
24   performs under Resolution 965.
25         Your Honor, further to the Speech and Debate

1   Clause point, we believe that Consumers Union is

2   distinguishable along the lines that the D.C. Circuit

3   Court has distinguished it at least twice since it was

4   decided.  We also, frankly, believe, Your Honor, it is an

5   outlier and the court has been coping with it since it was

6   decided if I may be so candid as to observe.

7            THE COURT:  It's irreconcilable with the other

8   jurisprudence?

9            MR. COOPER:  Well, Your Honor, I am at least

10  content to be confident that it is distinguishable from

11  this case at least as much as it was distinguishable from

12  the other cases that the D.C. Circuit distinguished it in.

13  I would submit that to your consideration.

14           THE COURT:  Okay.

15           MR. COOPER:  But the case that isn't

16  distinguishable --

17           THE COURT:  Do you agree that if the Speech and

18  Debate Clause applies here, that that's case dispositive,

19  there's nothing left of the case?

20           MR. COOPER:  Your Honor, if the Speech and

21  Debate Clause shield, Your Honor, extends not only to the

22  members, for, one, enacting House Resolution 965, but,

23  two, you know, casting votes that ultimately, are recorded

24  in the journal as valid votes, and, three, to all of the

25  administrative, if you will, and executing or carrying out

1    functions of the officers who are assigned under that
2    resolution to do that, then, yes, Your Honor, I think
3    that's -- I think it's game over and that would be
4    extending legislative immunity I hasten to add beyond
5    any -- we believe any of the cases that are relevant here
6    or that have been offered by counsel.
7            And, Your Honor, I think it would be in the
8    teeth of the leading Speech and Debate Clause case, the
9    one involving Adam Clayton Powell or Powell against
10   McCormack.  We think this case is really materially
11   indistinguishable from that case on every relevant metric.
12           You'll recall that member-elect,
13   Congressman-elect Powell and his constituents filed a
14   lawsuit challenging the constitutionality of a House
15   resolution.  One, that excluded him from his seat pursuant
16   to the House's Article I, Section 5 power to judge the
17   qualifications of its own members, a key and clear
18   constitutional power of each house of Congress to judge
19   the qualifications of their own members.  Powell and his
20   constituents challenged that as inconsistent, Your Honor,
21   with the specific qualification articulated in Article I,
22   Section 1 of the Constitution regarding, you know, age and
23   the other specific qualifications.
24           Just as here, Your Honor, the plaintiffs in the
25   Powell case claimed that the resolution infringed on his

1   rights as a member to enter the floor of the House and to

2   cast his vote.  Just as here, Your Honor, he sued the

3   officials.  He sued a number of members of Congress.  But

4   he more importantly, he sued the officials responsible for

5   carrying out the resolution.  And in particular, of

6   particular importance here is he sued the doorman of the

7   House, who was charged with essentially barring him from

8   the floor of the House and thus from casting his vote.

9   The Supreme Court held that Powell and his constituents --

10  and I'm quoting now -- "were entitled to maintain their

11  action against the House employee, but not the members,

12  Your Honor, the House employee, and to just judicial

13  review of their constitutional challenge to the

14  resolution.

15          So in that case, the court again drew the

16  distinction that I mentioned earlier and that the D.C.

17  Circuit has emphasized several times the distinction

18  between members engaged in the activities integral to

19  exercising their legislative jurisdiction as members on

20  the one hand and, two, those acts taken in executing a

21  legislative order or in carrying out those legislative

22  directions, again to use the wording from Walker versus

23  Jones.  So the Supreme Court in Powell drew that very

24  distinction and said that the employees were not shielded.

25  And once again, Your Honor, the doorman there was just as

1    clearly exercising or executing a legislative order that

2    lies at the core of the legislative function; that is,

3    determining the eligibility and the qualifications of the

4    members of the House.

5            THE COURT:  Yet, the D.C. Circuit also said

6    though that the focus is on the acts, not the actors as to

7    whether something is a legislative act?

8            MR. COOPER:  Well, yes and yes, the D.C. Circuit

9    has said that and we don't quarrel with that.  But in

10   focusing on the acts, it is said when the acts before you

11   are acts in execution of and acts in carrying out, you

12   must view it with a jaundiced eye under speech and debate.

13   And again the only case that we've seen which shielded

14   such acts is this Consumers Union case.  The other cases

15   have not extended the shield of speech and debate to

16   anyone, but these cases -- anyone members or otherwise who

17   were charged with executing an allegedly unconstitutional

18   House resolution.  But, Your Honor, that is almost

19   invariably officers --

20           THE COURT:  Hold on, Mr. Cooper.  There is

21   someone listening that is not on mute and we can hear you.

22   If anyone that is not speaking does not have their phone

23   on mute, please put it on mute now.  Thank you.

24           Go ahead, Mr. Cooper.

25           MR. COOPER:  Thank you, Your Honor.  Your Honor,

1    I'm going to now conclude my argument with respect to the

2    Speech and Debate Clause with a final point.  And that is

3    if the defendant's argument and this argument -- this

4    point I think extends as well to their standing arguments,

5    not just their Speech and Debate Clause argument.  But if

6    the Speech and Debate Clause does bar the plaintiffs'

7    action here in this court, it would also bar any claim

8    that the House had unconstitutionally infringed a member's

9    voting power.  We don't think that any reasonable

10   differentiation or distinction could be made, Your Honor,

11   between this infringement of a member's voting power and

12   more extreme examples that are sprinkled throughout the

13   cases, Your Honor, and we have sprinkled throughout our

14   briefing to the Court.

15           For example, to give one very extreme example.

16   I'm going to borrow it from Raines itself.  I mentioned it

17   to you earlier from Footnote 7 of Raines.  Imagine that

18   the House passed a resolution prohibiting first-term

19   members from voting on appropriations bills.  Your Honor,

20   the Speech and Debate Clause would not fail to shield that

21   resolution if it shields Resolution 965 from this Court's

22   review or again carrying it even farther, a resolution as

23   we've mentioned in our case and as was suggested by one of

24   our female plaintiffs in this case, a resolution denying

25   women members of a vote, whether it's a vote generally or

1    a vote say on appropriation measures or to bring it

2    perhaps a little more readily in line, though we don't

3    think there's any distinction at all between dilution and

4    denial, but to bring it into the realm of dilution, a

5    resolution that counted every male member's vote twice,

6    but only once for female members.

7            Your Honor, we don't believe that it can

8    reasonably be said or concluded that the Speech or Debate

9    Clause would bar the claims of members in these admittedly

10   extreme for illustrative purposes hypotheticals.  But if

11   that is true, then it cannot bar this Court's review of

12   the case we have brought forward.

13           With that, Your Honor, I hope I haven't consumed

14   all of the time I might have had for rebuttal.

15           THE COURT:  No.  No.  I appreciate the

16   thoroughness and the care with which you have given.

17           All right.  Mr. Letter, are you ready to go or

18   do you need a break?

19           MR. LETTER:  Your choice, Your Honor.  I can

20   take a break.  I can go.  Your choice.

21           THE COURT:  I'm fine going forward.

22           MR. LETTER:  Thank you, Your Honor.

23           THE COURT:  Do you need a break, Mr. Cooper?

24           MR. COOPER:  No.  But thank you, Your Honor.  I

25   am fine as well.

1          (The Court asked the court reporter if a break
2     was needed and the court reporter acknowledged that a
3     break was not necessary.)

4          THE COURT:  Go ahead, Mr. Letter.  Let me ask
5     you before you get started, Mr. Letter, let me ask you a
6     couple of factual questions.  Is it still the case that
7     there has been an actual quorum present for each and every
8     vote?

9          MR. LETTER:  Yes, Your Honor.

10         THE COURT:  Okay.  And looking at the schedule,
11    the House schedule online, it appears to me that there are
12    votes next week, but then there's a break until
13    essentially after Labor Day.  Is that right?

14         MR. LETTER:  That is right, Your Honor.  But the
15    House depending upon if there are emergency legislation
16    that needs to be passed, the House can decide to stay in,
17    Your Honor.  That's within the power of the House
18    leadership.

19         THE COURT:  Okay.  All right.  Go ahead.

20         MR. LETTER:  Thank you.  And, Your Honor, I hope
21    that I was able to reserve my right to ask for a break
22    later if I need it.

23         THE COURT:  Of course.

24         MR. LETTER:  Thank you.

25         Your Honor, let me please begin by saying that,

1    first of all, I guess I'm addressing my esteemed opposing

2    counsel, it is always a pleasure and an honor to appear

3    against my long-time friend, Mr. Cooper.

4            I have a number of points to make.  I hope

5    everybody is comfortable.  And what I want to do is begin

6    with the exact opposite of Mr. Cooper.  For obvious

7    reasons, Mr. Cooper wanted to jump straight to the merits.

8    As you well know, Your Honor, we don't think you should be

9    coming anywhere near the merits here.  But if you do, I've

10   got answers on all of that as well and I will get to all

11   of that in time.

12           So we have as you know quite a few

13   jurisdictional/justiciability arguments and they're all

14   independent.  If we win on any of them, then this case

15   must be dismissed.

16           I do have to admit, I was watching with great

17   interest when you asked Mr. Cooper if we're right on

18   speech or debate, does the case end.  I think that was the

19   longest yes that I've ever seen in court and I'm just

20   going to tweak my friend if you don't mind.

21           So first, there's the no dilution theory that

22   I'm going to talk about.  Then I'm going to talk about

23   Raines.  I'm going to talk about the separation of powers

24   concerns, how the D.C. Circuit has instructed you not to

25   interfere with the internal operations of Congress.  I'm

1    going to talk about speech or debate and only then will I

2    get to the merits.

3          So first, I guess I don't recognize the rule

4    that Mr. Cooper is talking about when he's making his

5    argument about dilution because he -- and, you know, this

6    ties in with what he spent a lot of time on that certain

7    members, you know, Mr. Raskin, my friend and my

8    representative is supposedly voting seven times, which by

9    the way is very interesting because Mr. Raskin and that

10   means was voting yes for himself, that he voted four times

11   yes and then he voted four times no.  So it's very

12   interesting that that's how his seven votes go.

13         Mr. Raskin did not vote seven times.  There is

14   no way that you can read Resolution 965 and conclude that

15   Mr. Raskin voted seven times.  Mr. Raskin transmitted the

16   votes of other members.

17         Now you can argue, you can say you're not

18   allowed to do that, you're not allowed to transmit

19   somebody else's vote.  I can understand that argument.

20   But there's no way to argue that Mr. Raskin actually voted

21   seven times.  He clearly did not.  He acted as really no

22   different from the electronic voting system in

23   transmitting the vote of other members.  He could by the

24   rule, he could act only on their direct instructions on

25   the specific matter that was before Congress.  He had no

1   authority to do any thinking for himself.  He couldn't

2   refuse.  He couldn't decline.  He couldn't decide to vote

3   something else, et cetera.  He was merely transmitting the

4   votes of other members of Congress just like the

5   electronic voting system does.  And I assume that Mr.

6   Cooper and his clients are not challenging the electronic

7   voting system.

8           It's also no different -- I'm sorry.  Did Your

9   Honor have a question?

10          THE COURT:  I was just going to say I view it as

11  closer to the tally clerk than the electronic system.

12          MR. LETTER:  I was just getting there.  So you

13  beat me to it, Your Honor.  It's the same as the tally

14  clerk.  Nobody thinks the tally clerk votes.  So all these

15  people are doing is transmitting the votes.  And again it

16  would just be the strangest thing given what Mr. Raskin

17  did to say that he voted seven times.

18          Now Mr. Cooper said, well, this is no different

19  from if a general proxy were given.  Well, that's

20  obviously not true.  Congress did not give a general

21  proxy.  If Congress did that, we could have a case about

22  that and decide whether that is or isn't constitutional.

23  But that's nowhere near what was done here because as I

24  said, Mr. Raskin and all the other proxy voters could do

25  nothing other than the tally clerk does and transmit the

1     vote that they were given by the actual voting member.

2           THE COURT:  So let's focus then on the dilution

3     by virtue of the null votes under his theory.

4           MR. LETTER:  Right.  So we don't think that

5     that -- what Mr. Cooper is trying to do is trying to take

6     what he says is the injury -- he's saying the merits are

7     that's not allowed and then make that into his injury.

8     But there is no injury here because the other members all

9     were allowed to vote.  No member was deprived of his or

10     her vote.

11           THE COURT:  The theory is using the numbers he

12     used in his original hypothetical.  Let's say 200 members

13     are going to vote on a piece of legislation.  Fifty vote

14     by proxy.  The person, the member who was present,

15     physically present, thinks his vote should be worth one

16     out of a 150 because that's the only people physically

17     present.  Whereas under the proxy rule, it's only one out

18     of 200.  Why is that not a dilution?

19           MR. LETTER:  We're not aware of a single case

20     where that kind of situation has been called a dilution.

21     Michel is exactly the opposite, you remember.  Michel was

22     votes were added.  Other people were added in.  People,

23     who, you know, were not members of Congress.  You know,

24     they were territorial delegates.  And so that changes the

25     denominator.  But it doesn't change the denominator at

1    all.  Mr. Cooper's clients all still got one vote.  So

2    the -- and as I say, I listened.  I didn't hear Mr. Cooper

3    cite a single case that would support his vote dilution

4    theory.

5            So let's move to Raines.  First, I wanted to

6    start with one of the last things that Mr. Cooper said.

7    He said if there's no standing or speech or debate applies

8    here -- remember those are independent claims -- then that

9    would also mean there could be no claim, no case if

10   somebody were targeted for individual discrimination.

11   They were not allowed to vote because of their color or

12   their gender or the fact that they were a new member or

13   their vote counted less.  Raines specifically reserved

14   that question.  So that's not before -- that wasn't before

15   the court in Raines.  It's not before the Court here.

16   Obviously, none of Mr. Cooper's clients were in the

17   slightest bit discriminated against.  Every single one of

18   them was allowed to vote.  Under these rules, they were

19   allowed to vote and they were allowed to vote by proxy if

20   they wished to do that.

21           So Raines does apply to this case.  In fact,

22   Raines seems very closest.  Well, now Mr. Cooper tried to

23   draw a distinction, a very interesting one where he is

24   saying, well, Raines involved a dispute, an inter-branch

25   dispute and that's very different he said from an

1      intra-branch dispute.  The problem with that is that

2      Raines already dealt with that because remember what

3      Raines did and Mr. Cooper concedes this, Raines overruled

4      a series of D.C. Circuit decisions, some of which by the

5      way I was the attorney on, where the D.C. Circuit had said

6      there is standing, but then threw the cases out under a

7      different ground.

8               In Raines, the court specifically mentions, for

9      example, Michel and Moore as examples of the kind of --

10     types of cases that it is then overruling.  Both Michel

11     and Moore were internal congressional cases.  So the

12     distinction that Mr. Cooper wants to draw is not one that

13     the Supreme Court adopted.  In fact the Supreme Court

14     rejected it because the Supreme Court made clear that it

15     was overriding a theory that applied to all different

16     cases and the D.C. Circuit has recognized that.  So it was

17     Chenoweth where the D.C. Circuit said that its line of

18     cases are now untenable and that line is to say includes

19     cases like Michel and Moore.  So that distinction just

20     doesn't work.

21              THE COURT:  Okay.  Do you have the pinpoint cite

22     in Chenoweth handy?

23              MR. LETTER:  I do, Your Honor.  Fortunately, I

24     have Mr. Havemann with me and he got it for me.  So that

25     the -- that is on 181 F.3rd, page 115.  If I could, I'll

1     just quote a sentence for a moment?  "Consequently, the

2     portions of our legislative standing cases upon which the

3     current plaintiffs rely are untenable in light of Raines."

4     And earlier -- just above there, the court talks about the

5     Moore case and says quite clearly that that's one of the

6     ones that are no longer tenable.  So and Moore as I say as

7     I recall as I say I actually handled that case.  It was I

8     believe Moore versus U.S. House of Representatives.  So it

9     was -- it's directly on point.

10          I'm trying not to jump around.  So I'm looking

11    back at my notes to see if there were other points

12    specifically about Raines.  I'm not seeing any others --

13    oh, I'm sorry, Your Honor, and there's one more.  Very

14    interesting because it slightly preceded Raines.  The D.C.

15    Circuit's decision in Skaggs that we have heavily relied

16    on and Skaggs was an internal House challenge, challenged

17    the House rule requiring a super majority vote and the

18    D.C. Circuit found there was no standing because there was

19    no actual vote dilution because the House majority could

20    at any time vote to suspend that rule by a procedural

21    vote.  So Mr. Cooper also has to deal with Skaggs.

22          Since I said that, I am going to jump to another

23    point for just a moment if you don't mind.  Mr. Cooper for

24    obvious reasons doesn't like the Consumers Union decision

25    and so he described it as an outlier.  I'm not aware of

1     any case law and I doubt Mr. Cooper is either where a

2     district judge has said, oh, thank goodness this decision

3     is an outlier and so even though it's from the circuit, I

4     can ignore it.  So it's not an outlier.

5                 THE COURT:  Before you go on, Skaggs is a

6     district court case rather than a circuit case or --

7                 MR. LETTER:  No.  It's D.C. Circuit, Your Honor.

8     Do you want a citation on that, Your Honor?

9                 THE COURT:  Hold on.  Let me see if I can find

10    it.

11                MR. LETTER:  Yes, Your Honor.  And it is cited

12    in our -- cited and discussed in our brief.

13                THE COURT:  I see it now.  It looks like you

14    cited the district court case in your initial brief.

15    Okay.  I got it.

16                MR. LETTER:  It's -- yeah.  Oh, we cited both,

17    Your Honor.

18                THE COURT:  Yeah.  I got it.

19                MR. LETTER:  So I don't remember anything else

20    that I needed to say about Raines in response to

21    Mr. Cooper.  Obviously, Raines reflects a very important

22    decision by the Supreme Court that changed the case law

23    entirely in this area and it governs as the Supreme Court

24    has never given any indication that Raines is not good

25    law.

1          Now Raines is also extremely important because
2    Mr. Cooper is heavily relying on the Michel decision.
3    Raines expressly cited Michel as the Supreme Court was
4    talking about the line of cases that it was overruling.
5    So there's no question that Michel was not in the cites of
6    the Supreme Court when it did that.
7          Now Mr. Cooper though still would like you to
8    rely on Michel particularly with regard to constituent
9    standing, but you can't do that because the Supreme Court
10   in Raines says that the whole foundation on which Michel,
11   Moore, Vander Jagt, Riegle, et cetera, all of those D.C.
12   Circuit cases, Humphrey's stood is invalid.
13         So when in Michel, the D.C. Circuit said Michel
14   has standing and then but the court said but Michel cannot
15   proceed because of the remedial discretion doctrine, the
16   discretionary doctrine that the D.C. Circuit had come up
17   with, but then the individual constituent still can
18   because they are not covered by remedial discretion.
19   Well, remember as I say, Raines overrules Michel and says
20   there is no standing.  So the derivative argument here
21   that Mr. Cooper is making is the constituents can sue
22   despite the fact that they are piggybacking on members of
23   Congress who under Raines because of separation powers
24   have -- cannot go forward.  There is no standing.  So the
25   Michel decision just does not help Mr. Cooper at all

1    anymore unless he convinced the Supreme Court to change

2    Raines.

3           So again those are two independent grounds.

4    Then the third is Hearst versus Black, a decision from the

5    1930's.  And lest anybody say, well, that's an old

6    decision, it's been cited since then.  But more

7    importantly, I've heard people chastised in the D.C.

8    Circuit for suggesting that old decisions no longer count

9    as precedent.  They do.  So Hearst versus Black, William

10   Randolph Hearst was attempting to get a court to order the

11   Senate, Senate staff not to look at material that the

12   Senate had assertedly obtained unconstitutionally.

13          The D.C. Circuit said no, there's a major

14   separation of powers problem here.  It is not up to us to

15   tell Congress how to operate and so the court said we

16   can't get into this.  We're not even going to get into a

17   situation where the claim is the material was

18   unconstitutionally obtained and therefore would be

19   unconstitutionally used by the Senate and the D.C. Circuit

20   said no can do.

21          Okay.  Let's go to speech or debate and this is

22   obviously where Mr. Cooper has an extremely serious

23   problem.  That's demonstrated by the fact that he's saying

24   would you please ignore Consumers Union.  As I say, you

25   and I know you cannot do that.

1         Mr. Cooper it's possible that he misspoke.  I

2    don't know.  I don't think I heard him incorrectly.  He

3    said Consumers Union is the only case where speech or

4    debate has been used to bar cases other than against

5    members.  The Supreme Court did that in Eastland, said you

6    can do it in Gravel.  The D.C. Circuit did it in Rangel.

7    So no, Consumers Union is not the only one.  There are at

8    least two Supreme Court cases and two D.C. Circuit cases

9    that say that the Speech or Debate Clause applies just as

10   well to people in Congress other than the members or the

11   senators.

12        Since Consumers Union is the law of the circuit

13   that is binding, let's focus on that.  Consumers Union was

14   a much harder case for speech or debate than this one was.

15   As Mr. Cooper said, what you are required to focus on is

16   the legislative action.  It's simply tied in with

17   Congress' legislating.

18        I find it more -- very difficult to think of

19   something that is more central to legislating than voting,

20   the voting by the members of Congress.  Consumers Union,

21   remember, what that dealt with was a journal that said

22   that it had been wrongly excluded from a certain part of

23   the press gallery.  And the D.C. Circuit said that is

24   still covered by speech or debate because the rules about

25   the press gallery are designed to protect the members as

they are voting.  Well, this case isn't one step removed

like this.  This is about voting.  That's exactly what it

is about.  This is precisely why we have a Speech or

Debate Clause.  So we're at the very heart of it here.

Now Mr. Cooper relied on Barker.  As an aside,

I'm glad he did so because Barker there at the D.C.

Circuit said that statements made to the court by my

predecessor as general counsel of the House, Mr. Tom

Hungar, about the meaning of rules of the House govern in

the court.  Well, I'm very pleased to have that because

that means that when we're looking at the vote dilution

and also when we get to the merits argument, what the

House says about what its rules mean, its rule about

voting means, that governs.  So as I say, I'm quite

pleased that Mr. Cooper wants you to read the Barker

decision very carefully.

And what Barker reaffirmed is that the question

must be tied again as I said before to the voting

function.  And the Consumers Union test there of a

traditional legislative action test, as I say, it's just

very difficult to see how you can get more central than

this.

I'm also I'm continuing to consult my notes as I

say in order to avoid -- oh, I know.  Mr. Cooper, then

switched to Powell versus McCormack.  First of all, again

1    I'm sorry if I misheard him.  I think he was saying that
2    the Supreme Court there said that it held that the
3    constituents could sue.  What the Supreme Court -- the
4    Supreme Court did not deal with the claims of the
5    constituents.  Those were remanded back to lower court to
6    deal with.
7            Remember, Representative Powell, what he
8    actually litigated and won on because certain parts of the
9    case became moot was his claim to back pay.  And so there
10   was no speech or debate problem there the Supreme Court
11   held.  Well, again, that's not what this case is about.
12   This case is about voting.  So Powell provides no
13   assistance to Mr. Cooper's argument here.
14           Moving for a moment about the delegation claim,
15   I'm not sure, maybe -- this might be more of a merits
16   claims, but I'm going to hit it now anyway.  So Mr. Cooper
17   was talking about the challenge by Mr. Swayze.  So
18   Mr. Swayze's challenge is against Representative Crist.
19   It's not against the House.  Now what he's asking you to
20   do, he's one of the plaintiffs, he's asking the same thing
21   as all the other plaintiffs and he's saying that the
22   remote vote by Mr. Crist should not be counted.  So I'm
23   having a very difficult time figuring out how Mr. Swayze
24   was injured by the fact that his representative's vote
25   actually was counted.  It seems to me that Mr. Swayze then

1    is arguing for relief that goes against himself.

2          So what Mr. Swayze really is saying is he wished

3    that Mr. Crist had not used remote voting.  But that's not

4    a claim against the House.  That's a claim against that

5    Mr. Crist -- that Mr. Swayze thinks Mr. Crist should not

6    have utilized that voting mechanism.

7          It would be interesting, for instance, if

8    Mr. Swayze would say that Mr. Crist shouldn't be able to

9    use the, you know, the ballot counter or the electronic

10   machines or something like that.  I guess he can do that.

11   He can make those claims against Mr. Crist.  I assume they

12   would be barred by speech or debate.  But he's suing the

13   wrong person here because nobody in the House required

14   Mr. Crist to vote in any particular way using any

15   particular method.

16         In addition, there's obviously no delegation

17   anyway.  As I pointed out at the beginning, nobody is

18   delegated the power to do anything other than to do what

19   the electronic voting system or the counting clerk does in

20   accepting a vote.

21         So then we get to I believe the merits at that

22   point.  If Your Honor has any questions about the standing

23   or speech or debate issues, I'll take them.  If Your Honor

24   will indulge me for a moment, I'm going to look at my

25   colleagues to see if they have anything that I missed on

1     those points.  No.  They are also satisfied.

2             So let's go to the merits.  The first point I

3     want to make is it's very interesting that this challenge

4     is even being brought because what we have is the House

5     leadership put in place and the House put in place a

6     system that helps our democratic system to work.  Our

7     democracy is working here despite the extremely grave

8     public health threat.  We fortunately have a system now, a

9     technological system that allows our democracy to continue

10    working.  If members can't vote because they're unable to

11    because there's a deadly virus out there, I think we

12    calculated that if those who voted by proxy weren't

13    allowed to vote, that would have meant approximately

14    50 million Americans would not have had any say in the

15    House.  Because the House put into place this system, that

16    meant 50 million Americans were represented in the House

17    of Representatives.

18             As I said before, the Rule 965 is clear on its

19    face.  It doesn't allow the things that Mr. Cooper that

20    some of the parade of horribles he mentioned, it doesn't

21    go to any of that.  It says each member gets one vote.

22    Proxy voter is merely transmitting the vote to others.

23    There's no delegation except the same as a voting machine.

24             So then we get to I think the heart of Mr.

25    Cooper's argument which is, well, look at the

1    constitutional text and I would be delighted to do that

2    because the Rules Committee and the House members did

3    that.  There is not a single word in the constitutional

4    text that says that members have to be physically present

5    in any particular room in order to be counted for a quorum

6    or to vote.  There is not a single word that says that.

7            Now Mr. Cooper says yeah, but dictionaries at

8    the time seem to contemplate that.  We pointed out in our

9    reply brief I think at page 14 that one of the definitions

10   to attend means to be present for some duty and present

11   can mean ready at hand.  Well, obviously, because of

12   today's technology, members of Congress can be ready at

13   hand even when there is a deadly virus out there.

14           A deadly virus that by the way, I read the other

15   day is causing major problems with certain state

16   legislators because a large percentage of their

17   legislators are getting this deadly illness.  And the

18   House though, the House of Representatives has been able

19   to avoid that and keep our democratic system going because

20   technology allows our members to be ready at hand.

21           And what this calls to mind therefore is the

22   Supreme Court's very recent opinion in Chiafalo.  I hope

23   I'm pronouncing that correctly.  That was a decision at

24   the very end of the term about the, you know, whether

25   electors are required to vote as they said they would.

1    And there, Justice Kagan writing for a majority of the

2    court says -- I want to make sure that I get this right.

3    She says -- she's responding to the argument that the

4    framers expected that electors would use their best

5    judgment.  And therefore, when electors actually vote in

6    an electoral college, they should be allowed to vote using

7    their best judgment.

8           What Justice Kagan writing for the majority says

9    is that was that the framers "did not reduce their

10   thoughts about electors' discretion to the printed page.

11   And nowhere as I said before in the Constitution did the

12   framers say anything about physical presence.

13          What we have are Supreme Court decisions such as

14   the North Dakota versus Wayfair decision that recognizes

15   that technology has changed our country.  I'm not saying

16   it has changed our Constitution.  I don't have to argue

17   that because nothing in the Constitution -- we're not

18   violating anything that's actually in the Constitution.

19   But there, the court recognized that the technology has

20   changed things so now people can purchase things on the

21   Internet and so that means that a prior Supreme Court

22   doctrine about presence, actual presence in a state before

23   somebody can be taxed was no longer a valid -- no longer

24   made sense.  And we agree completely.  Technology here has

25   enabled our democracy to work better even when it is

1      threatened by a global pandemic.

2              Now Mr. Cooper said, well, but President

3      Washington asked Mr. Madison about this and got the answer

4      that Mr. Cooper wanted.  Well, first of all, that's not in

5      the Constitution.  But second is even more important.

6      What Mr. Cooper was describing was could the President

7      issue orders to Congress about where it would sit.  Again

8      it's great to have colleagues.  Fortunately, my colleague,

9      Mr. Grogg, has pointed it out that the letter that

10     Jefferson sent to the President said that we, meaning the

11     executive, has no power.

12             But nobody was asking if the House could have

13     some kind of remote voting or proxy voting or anything.

14     So that early example one was not reduced to any wording

15     in the Constitution, no amendment was made in the

16     Constitution to add it and, two, it didn't go to the issue

17     here.  And that raises the extremely key point that I am

18     pretty sure Mr. Cooper never mentioned once.  The

19     Constitution says that the House and the Senate set their

20     own rules.  And the Supreme Court has made quite clear

21     that it will not interfere with the rule making and

22     procedural power of both houses of Congress to decide how

23     they will operate.

24             Now if they operate in a way that as Mr. Cooper

25     says what if they start discriminating against

1      individuals, et cetera, we could talk about that.  We

2      could see whether the rules how it doesn't apply that way,

3      but that's not this case.  It's not even close to this

4      case.

5              So the rules clause is absolutely essential here

6      and Mr. Cooper has to address it.  He has to face it.  He

7      has to see, well, so the framers didn't say anything that

8      you couldn't do this and the framers said it's up to the

9      House to determine how it's going to work procedurally.

10     That's a very powerful argument that he has not

11     confronted.

12             This also raises another point that Mr. Cooper

13     did not get into that is a serious I think fatal logical

14     flaw in the position of the plaintiffs.  The plaintiffs

15     say that the unanimous consent power is constitutional.

16     And in fact we have a chart with a count I forget what it

17     is.  Mr. McCarthy, all of the plaintiffs, the

18     representative plaintiffs have made motions for unanimous

19     consent in this Congress and the prior Congress.  I think

20     Mr. McCarthy, I think it's something like 80 times.  So

21     apparently, it is fully constitutional and we agree and

22     Mr. McCarthy and all the other plaintiffs agree that the

23     House can pass legislation when there is one member in the

24     House.  One member who is physically there.  One member

25     who is voting.  So again Mr. Cooper will tell you that is

1    fully constitutional.  So if that is constitutional, there

2    is no logic to saying that, well, members nevertheless

3    can't vote, they can't pass legislation if enough of them

4    are not -- their feet aren't actually in the floor of the

5    chamber because in the unanimous consent situation, there

6    may be 434 who are not in the chamber.  Well, if you have

7    one in the chair and one other member.  So 433 who are not

8    in the chamber.  And Mr. Cooper will tell you which his

9    main client says that that is constitutional.  That he may

10   say, well, because that depends on the way that the House

11   determines if there is a quorum and that's true.  That's

12   set by rules of the House.  The House determines whether

13   there's a quorum or not.  Well, the House determined here

14   that members who vote remotely by proxy count toward a

15   quorum.  And Mr. Cooper must tell you, well, I guess,

16   yeah, that's for the House to determine.  That's not for

17   the courts to determine, which again as I say totally

18   undermines the logic of his argument.

19           Again I'm going to just consult my notes and the

20   one thing I wanted to note is that, you know, one of the

21   things where I started that this rule serves the goals of

22   the democratic government is that the Constitution is a

23   broad charter for government.  It's a way of governing and

24   that's why, for example, unanimous consent is an

25   appropriate way for both the House and the Senate since

1    the very beginnings of our nation have acted and it's

2    again a way why given the technology we now have is

3    perfectly appropriate for Congress to use its rules power

4    to keep our democracy going.

5         The other point about Mr. Cooper saying, well,

6    the Madison example shows that members can't be -- can't

7    move Congress somewhere else except under certain

8    circumstances.  But the House is still convened in the

9    Capitol.  Mr. Cooper is talking about a different

10   situation that is not here.  There is no reason to take

11   any position on.  The House is convened in the Capitol.

12   There were still -- in fact as Your Honor's first question

13   to me asked, there was still a quorum even in Mr. Cooper's

14   way of counting, there was still a quorum when every

15   single one of these votes was taken in the Capitol.  We're

16   not saying anything here about that.  And again that goes

17   to nothing in the Constitution talks about physical

18   presence of members whether they have to actually be

19   physically in the -- under the Capitol dome.

20         Give me one more second to see if I have

21   anything else in my notes that I wanted to cover.

22         (Pause.)

23         MR. LETTER:  Your Honor, I believe that is

24   everything I wanted to affirmatively cover.  Mr. Havenmann

25   and Mr. Grogg, nothing else.  And again I'm happy to

1    answer questions.  I hope I have not bored you.

2              THE COURT:  You have not.  So I guess the

3    question raised by one of Mr. Cooper's points is under the

4    Speech and Debate Clause, no matter how egregious or

5    discriminatory this rule would be, under your theory it

6    would be shielded by the Speech and Debate Clause?

7              MR. LETTER:  Your Honor, I'm not taking that

8    position because I don't have to.  It may very well be.

9    I'm just saying that in other cases, it might very well be

10   that speech or debate doesn't -- wouldn't apply if

11   something is highly discriminatory against a member of

12   Congress for individual characteristics such as race or

13   gender.  Again I'm saying it might very well be.

14   Fortunately, the House has not come anywhere close to

15   doing that here.  And so if there are limits on speech or

16   debate, we're not involved with those.

17             And by the way, remember, Your Honor, that in

18   the arguments that have been made against speech or

19   debate, the claims have been, well, I'm making a

20   constitutional claim.  In Consumers Union, if they said it

21   was a violation of their First Amendment rights.  In these

22   others, the other speech or debate cases, the claims were

23   that their constitutional rights were being violated.  In

24   Clinton, they said the First Amendment rights of the

25   veterans group there were being violated.  In Gravel, I

1    believe it was also about constitutional rights.  The fact

2    that somebody makes constitutional claims doesn't matter.

3            The Supreme Court said in the Brewster decision,

4    the court noted -- I think maybe it was with some sadness,

5    but the court noted that the clause enabled "reckless men

6    to slander and destroy others with impunity."  But the

7    Supreme Court says but that was a very calculated

8    considered decision made by the framers because they were

9    reacting against a practice of the king, that they felt it

10   was so important that the members of Congress be able to

11   do things like vote.  That they did not want either the

12   executive branch or the courts to interfere with that.

13           THE COURT:  So in like Judge Henderson said in

14   Rangel that his remedy was in the court of public opinion,

15   there are injuries to which under the Speech and Debate

16   Clause, there may be injuries to which there's no remedy

17   in court?

18           MR. LETTER:  Yes, Your Honor.  Again I suspect

19   with a tinge of sadness the Supreme Court was saying in

20   Brewster, they recognized -- that was undoubtedly a very

21   difficult decision for the framers to make because

22   obviously, you are then balancing some really important

23   things and yet, the framers obviously decided that it was

24   too important not to allow the executive or the courts to

25   interfere with the very basic elements of our democratic

1    system.  So that is an absolutely clear decision that they

2    made.

3              THE COURT:  All right.  Thank you.

4              MR. LETTER:  Thank you, Your Honor.

5              THE COURT:  Mr. Cooper, do you need a break?

6              MR. COOPER:  Excuse me.  No, Your Honor.  Not

7    unless you do.  I can soldier on here.

8              (The court reporter was asked if a break was

9    necessary and the court reporter did not need a break.)

10             THE COURT:  Go ahead, Mr. Cooper.

11             MR. COOPER:  Thank you, Your Honor.  I do have a

12   few points I'd like to make in response to my old friend,

13   Mr. Letter's argument.

14             First of all, with respect to his point that the

15   Congressman Raskin who voted eight times, one on behalf of

16   himself, one on behalf of seven absent members by proxy,

17   he noted that four of those votes were yes and four of

18   them were no.  Your Honor, and Mr. Letter said that

19   Mr. Raskin clearly did not vote eight times.  He

20   transmitted seven votes and voted his own one time.  Well,

21   I agree, Your Honor.  He did vote only once.  But that's

22   because he only had one valid vote to cast.  He was

23   present.  He could cast his own vote.  He voted seven

24   invalid votes.  The Court has to assume that is true for

25   purposes of judging standing.  And when he voted those

1    seven invalid votes, Your Honor, there were seven invalid

2    votes that went into the denominator of the measure that

3    passed.  And so, Your Honor, I agree, he did only vote one

4    time.  But eight votes were counted as a result of him

5    standing up and offering those seven invalid votes.

6            Mr. Letter likens this proxy process to the

7    tally clerk or an electronic device communicating or

8    signaling a present member's vote to the chair or to the

9    clerk, whoever is collecting and counting those votes.

10           Your Honor, the method by which the House

11   decides to actually have present voters signal their votes

12   is indeed a matter that the House rules permit the House

13   to determine so long as it is reasonable under the Ballin

14   case.  In that case the court examined whether or not the

15   House could determine that members of Congress who had not

16   voted but who were present in the House could be counted

17   towards a quorum.  And the court said yes, they can.  The

18   court can do that.  It doesn't have to rely just on a

19   member voting to determine if they are present for

20   purposes of constituting a majority to make the quorum.

21   And the court went on and said it can do it through any

22   reasonable way.  It can require a show of hands.  It can

23   have them walk through the turnstiles or any other method

24   to actually demonstrate and establish their presence for

25   determining whether there's a quorum there.  The House can

1    certainly use a tally clerk or electronic device.  That is

2    a far cry, Your Honor, from permitting the House to allow

3    an absent member not to be present and yet be counted

4    towards creating the quorum, establishing the quorum or

5    certainly from voting.

6            If the tally clerk, for example, if the tally

7    clerk had transmitted the votes of a non-member, pursuant

8    to a House rule that allowed the non-member to vote, that

9    would still be clearly, Your Honor, under the Constitution

10   an invalid vote and that House resolution would clearly be

11   invalid and the fact that, you know, the tally clerk was

12   the method for transmission would be irrelevant.

13           Counsel has said the Michel case was the

14   opposite of our case.  He makes the point that in Michel,

15   there were votes added to the denominator, if you will,

16   because delegates were allowed to vote.  Your Honor, this

17   is precisely what we have here.  Just as the non-present

18   vote -- members whose votes are counted are exactly like

19   delegates whose votes cannot be counted.  The non-present

20   votes, Your Honor, again assuming the merit of my

21   constitutional argument, those votes are invalid just as a

22   delegate's vote would be invalid if cast in any context

23   other than a committee, but in a context in which votes

24   were cast on the floor and recorded.

25           I should also point out that the Court of

1   Appeals in Michel against Anderson also articulated

2   several hypotheticals that they said would be no

3   different.  What if the House passed a rule that said that

4   the Congressman from Georgia get no vote?  Well, that

5   would clearly be unconstitutional, Your Honor.  So also it

6   would also be unconstitutional if every other state but

7   Georgia got an extra vote in the House.  And again, it

8   doesn't matter, Your Honor, that the rule just dilutes

9   votes as opposed to denies them all together.  That is

10  a -- that is a difference in the injury in degree, but not

11  in kind as the Michel court made clear and this Court has

12  observed as well.

13          With respect to the hypotheticals that we've

14  been discussing, some of them requiring discrimination,

15  for example, the hypothetical about women members of

16  Congress not being permitted to vote or their votes not

17  counting, some of those are on invidious grounds, yes, and

18  it's designed to bring into sharper focus the notion and

19  how empty the proposition is that a member who is injured

20  in that fashion would have no relief and that member's

21  constituents would have no place in the federal court to

22  turn for redress for that kind of a plainly

23  unconstitutional injury.  Your Honor, there is no

24  distinction.  The members in these hypotheticals would be

25  injured in their status, their official status as members

of Congress.  Not as private individuals.  As members of
Congress.  And whatever unconstitutional basis, their vote
might be denied all together or their vote might just be
diluted, whatever that basis is, they would suffer an
injury that would sustain their standing.  If in any of
those hypotheticals, then it would sustain their standing
in all of them.

Counsel points out that, you know, or at least
he argues that this Chenoweth case he cites recognize that
everything that went before Raines in the D.C. Circuit was
wiped off the page.  Your Honor, I think it's telling that
Chenoweth does not cite the Michel against Anderson case
among the cases that that it says have been -- that have
now been affected by the Raines decision.  It doesn't cite
Michel versus Anderson.  And the Campbell case, Your
Honor, from the D.C. Circuit that I walked the Court
through earlier where the D.C. Circuit distinguished
Michel versus Anderson from the case before it with a
revealing and a passage that clearly understood --
reflected the Court understood what Michel versus Anderson
held, that case postdates Chenoweth.

So, Your Honor, the governing thread of
authority here goes from Michel against Anderson through
Raines, through Chenoweth and to Campbell and for that
matter, Your Honor, to Michel against McConnell, the case

1    you decided where the continuing vitality of Michel is

2    accepted.  In no case, if counsel had a case that said

3    Michel versus Anderson is overruled, well, he would have

4    cited it.  And never has the D.C. Circuit said that and

5    everything it said about it reflects the opposite.  It

6    continues to have vitality.

7         Counsel mentions the Skaggs case.  In that case,

8    members of Congress challenged a rule -- if memory serves

9    me on this -- it challenged a rule that required a

10   two-thirds majority to enact some type of a taxation

11   measure.  I think it was a tax measure.  And the court

12   there held that the injury claimed was not to an

13   individual member, qua member, but to the majority of

14   members, qua majority.  And it held that that injury was

15   illusory because there were other rules under which a

16   majority, a simple majority could waive the two-thirds

17   requirement and there had been many times, Your Honor,

18   when that majority had done exactly that.  And so the

19   court held that there's no real injury here because the

20   injury that's alleged is to the majority, qua majority.

21   And it's not injury.  It has the means of relief in its

22   own hands and it has exercised them.  That is not true of

23   the members, Your Honor, that are before you now.  And

24   certainly not true of their constituent.

25         Counsel clings to the Consumers Union case.

1    Your Honor, we discussed that previously at some length.

2    I've invited the Court's attention to two subsequent cases

3    that have understood it and distinguished it in exactly

4    the same way as we discussed.  But he says that that rule

5    that was at issue there about access to the press gallery

6    and the concern about people who had that access

7    importuning members of Congress on the floor to lobby

8    them, that was for protecting the House for voting.  And

9    that is certainly true.  Counsel is correct.  We agree on

10   that.

11          He goes further to say but this case is directly

12   about voting.  But, Your Honor, so was Powell.  So was

13   Powell.  Powell was about voting.

14          Yes, counsel is correct.  The existence of the

15   claim in the case that Adam Clayton Powell advanced about

16   his lost salary did keep the case alive.  It was a live

17   case in controversy.  But the court did not in any way

18   limit -- it decided the whole case, Your Honor.  It

19   decided that Congressman Powell and his constituents could

20   and had standing notwithstanding the Speech and Debate

21   Clause to bring forward their claims and including the

22   claim against the doorman for blocking Congressman Powell

23   from the floor and therefore, from voting.

24          Just consulting my notes, Your Honor.

25          THE COURT:  Of course.

1          MR. COOPER:  Counsel mentions as he then

2     transitioned to the merits of the case and as I will as

3     well, but I think his first point on that score was

4     Plaintiff Swayze and the delegation point we've made here

5     on Plaintiff Swayze's behalf and he says that Swayze's

6     challenge is against Congressman Crist because Congressman

7     Crist is the direct reason that Plaintiff Swayze was

8     denied representation by the Congressman that Swayze and

9     the other constituents had elected ultimately to represent

10    them.

11          But, Your Honor, it is House Resolution 965 that

12    authorized Crist, Congressman Crist to vote by proxy.  And

13    despite the moving presentation made by Mr. Letter about

14    the exigency of the crisis that faces Congress and the

15    rest of the American people, it is my burden to say that

16    Congressman Crist when he offered his proxy at least in

17    one episode that is outlined in our briefing was not --

18    was absent for reasons that had nothing to do with the

19    pandemic, Your Honor.

20          THE COURT:  He went to Cape Canaveral.

21          MR. COOPER:  That's right, Your Honor, according

22    to his own commentary.  Further to the merits -- well,

23    before I leave that, but for Resolution 965, presumably

24    Congressman Crist would have been present in the House

25    chamber.  Not necessarily so.  But he certainly would not

1     have had the authorization to vote while he was at Cape
2     Canaveral absent 965.

3               I want to address myself, Your Honor, to Mr.
4     Letter's comments about the text.  It doesn't contain a
5     word he said that members have to be physically present in
6     the same room in order, one, to be counted towards
7     establishing a majority that would constitute a quorum to
8     do business or, two, to vote or otherwise do anything else
9     that we say requires actual presence.

10              If what my old friend is saying is that it
11    doesn't say that members of Congress have to be physically
12    present, because it omits the word "physically," then he
13    is right.  And Your Honor, if in trying to discern the
14    meaning of the Constitution and these many provisions that
15    we have trudged through earlier this afternoon, it would
16    be said that the intendment of these words and phrases
17    which simply could not be clearer can be ignored and
18    blinked because the word "physically" doesn't pertain,
19    then, Your Honor, that would not be interpretation.

20              He's not inviting you to interpret these
21    passages.  He's inviting you and in fact he's asking you
22    to ignore the plain and clear meaning of these passages.
23    Yes, Your Honor.  Nowhere in the Constitution does it say
24    that the federal courts have the power to judicial review
25    to review a statute enacted duly and properly by both

1   houses of Congress and signed by the President to

2   determine if it is constitutional, that power.  Nowhere

3   does it say that in the Constitution.

4          But in Marbury versus Madison, Your Honor, and

5   in countless other cases, the courts have been called upon

6   to discern the meaning of the Constitution.  It uses

7   particular provisions such as the Quorum Clause which

8   allows members, a number of members that fall short of a

9   majority to what?  To compel what?  The attendance of the

10  absence members.  With due respect to my esteemed and old

11  friend, this is not even a debatable proposition.

12         Wayfair.  The Wayfair case.  Yes, and this goes

13  to counsel's point about technology.  Technology, Your

14  Honor, has made proxy voting a whole lot easier than it

15  was in 1793 during the Yellow Fever epidemic.  But it

16  hasn't invented proxy voting.  It was around then.  The

17  technology we are using right now, amazing as it is, it

18  was preceded by technologies that would have made proxy

19  voting quiet easy in 1918.  A telegraph, other -- much

20  more modern at that time modes of transportation, et

21  cetera.

22         But, Your Honor, the reference to the Wayfair

23  case is completely inapposite.  That was the case that

24  up-ended the actual presence rule that limited, if memory

25  serves again, that limited the state's ability to tax

1    out-of-state retailers for sales made within their state.

2    If they didn't have a warehouse, they didn't have

3    employees, they didn't have a headquarters, they didn't

4    have a store, the state couldn't tax them.  The court

5    reversed what was called the Quill Rule.  Because of

6    the -- the court believed it was wrong when it was

7    decided, but it certainly was wrong in light of modern

8    economic transaction.

9            But Wayfair, Your Honor, dealt with corporate

10   retailers that can have a presence in many states at the

11   same time.  Members of Congress cannot.  They can only be

12   present at one place at one time.

13           Jefferson to be sure did say that no, the

14   President does not have this authority to convene

15   Congress.  And he said and we don't dispute in the

16   slightest that Congress would have that authority.  But

17   Jefferson made clear that even if the members of Congress

18   had to journey to Philadelphia and meet in a field

19   somewhere and then enact legislation that would permit

20   them to meet somewhere else, they still would have to do

21   that.  And Your Honor, in 1793, the third Congress did

22   pass the statute that -- and we have no doubt of this

23   constitutionality that allowed the Congress to meet in

24   circumstances that are emergent in a place other than the

25   permanent seat of government.

1          But neither Congress nor the founders in the

2    executive branch in the third Congress, Your Honor,

3    considered the notion of mitigating the dangers through

4    distant absent voting, proxy or otherwise.

5          Counsel quite justly points out that I did not

6    mention in my presentation the rules power.  That the each

7    house has the power to adopt its own rules of proceeding

8    and that's the power that the house has adopted here.  And

9    broad though that power may be, Your Honor, it's clear

10   from the Ballin case if it's not clear from common sense

11   that that power is limited by the Constitution.  As the

12   Ballin court said, the rules can't exceed constitutional

13   restraint nor violate fundamental rights.  That's not a

14   direct quote.  But that's a pretty close paraphrase.

15         And our case to you, Your Honor, is that this

16   rule exceeds constitutional restraints.  Restraints that

17   proceed from the words and phrases used by the

18   Constitution and are confirmed by the two and a half

19   century history of practice.

20         I'm almost done.  Just a couple more points,

21   Your Honor.

22         THE COURT:  Take your time.

23         MR. COOPER:  I'm not sure I understood counsel's

24   point, but to the extent I did, I think he said that

25   members are permitted to vote and their presence is

1       permitted to be counted and recorded by proxy for a quorum

2       in order to satisfy the Constitution's quorum requirement.

3       And yes, that's true and that's one of our central

4       complaints.  Our whole point is that the Quorum Clause

5       itself by its text even if the rest of the Constitution

6       didn't contain passage after passage after passage

7       indicating that actual presence is necessary, the Quorum

8       Clause itself could not be interpreted I would submit as

9       counsel suggests it may be.  Members must be present.

10      That's why the time-honored formulation, you know, noting

11      the absence of a quorum or confirming the presence of a

12      quorum, they must be present, Your Honor.

13              Let me turn now to the unanimous consent point.

14      Unanimous consent predates the Constitution.  It is a --

15      at least my research has educated me that practicing

16      unanimous consent is not -- it's been around in the

17      Congress from the founding and it is a feature of

18      legislative bodies that predates the Constitution and that

19      is commonplace.  It is co-existed in other words with

20      acknowledged requirement that only present members can be

21      counted towards the establishment of a quorum and voting.

22              It's important to understand the theory of

23      unanimous consent to understand why it is readily

24      reconcilable with our argument and with the terms and

25      phrases of the Constitution that plainly require actual

1    presence to constitute a quorum and to vote.

2          The unanimous consent is based on the

3    presumption of a continuing quorum.  That's the

4    presumption that -- in that presumption at the root of it,

5    at its premise is that a majority of members are actually

6    present in the chamber.  That's the presumption of a

7    continuing quorum.  It's not that nobody is there.  It is

8    that they are present.  Even though in truth as counsel

9    says, that is a fiction.  But it is a presumption and that

10   presumption is established whenever the presence of an

11   actual quorum present, the presence of an actual quorum;

12   that is, a majority of present members is established and

13   is recorded on the journal of the House.

14         So at that moment, Your Honor, the presumption

15   of the continuing quorum and the existence of the quorum

16   and it is at that moment that the power of the House comes

17   into existence as the court put it in Ballin when a quorum

18   is established.  And it can only be established, Your

19   Honor, and it is established at the beginning of every

20   session by an actual count of members present.  From that

21   point, that's recorded in the journal and then there's a

22   presumption.

23         And that journal, Your Honor, as the Ballin case

24   also makes clear must be assumed to speak the truth.  The

25   journal has a special constitutional status, Your Honor,

1    all of its own.  And it is assumed to speak the truth as

2    the court put it and it stands, Your Honor, as conclusive

3    proof of the presence of a quorum, this presumed quorum

4    until such time as the absence of a quorum is established

5    by the actual head count.  So any member can seek and

6    question the existence and validity of that presumption

7    and question the existence of an actual quorum.  Nothing

8    in the Constitution, Your Honor, prohibits the House from

9    proceeding on that presumption of the presence of a quorum

10   and actual -- the presumption that a majority are actually

11   present in the chamber.

12           But, Your Honor, the presumption cannot come

13   into existence until an actual majority of present members

14   is established, Your Honor, and only -- and again that

15   presumption can be rebutted by an actual count on the

16   motion of any member.

17           With that, Your Honor, I believe I've answered

18   every point that I was able to take down during my

19   friend's presentation.

20           THE COURT:  All right.  Are we done, Mr. Letter?

21           MR. LETTER:  Your Honor, may I have just a

22   couple of minutes to make a few more points --

23           THE COURT:  Sure.

24           MR. LETTER:  -- if Your Honor pleases?

25           THE COURT:  Not new points.  Points that he

1    raised just now.

2              MR. LETTER:  Exactly.

3              THE COURT:  All right.

4              MR. LETTER:  Exactly.  Your Honor, would it help

5    if I just speak very, very fast and --

6              THE COURT:  That will cause problems for the

7    court reporter.

8              MR. LETTER:  Okay, Your Honor.  First of all,

9    with regard to my friend, Mr. Cooper, bringing up Ballin,

10   the -- oh, I'm sorry.  I had it right here and oh, I can't

11   believe I did this.  So Ballin says that the Constitution

12   empowers each house to determine its rules proceedings.

13   It may not by its rules ignore constitutional restraints

14   or violate fundamental rights and there should be a

15   reasonable relation between the mode or method proceeding

16   established by the rule and the result which it has sought

17   to be obtained.

18              And here that is fully met because as Mr. Cooper

19   conceded, the Constitution nowhere says anything about

20   physically present.  And that gets to the very important

21   point that Mr. Cooper made, that the unanimous consent

22   procedure precedes the Constitution.  So the framers were

23   aware of it.  So what that means is that the framers knew

24   about the concept that present did not mean physically

25   present because they were apparently we know perfectly

1    comfortable with the notion that nowhere near a majority

2    of members could actually officially act and pass

3    legislation even if only two of them are on the floor of

4    the House and the Senate.

5            Then with regard to Mr. Crist, the fact remains

6    that Mr. Crist did vote.  Now Mr. Cooper notes that in the

7    complaint meant complying that I think it is they said.

8    Well, he went to Cape Canaveral.  So obviously, he

9    violated the rules.  I'd only like to say that his

10   complaint doesn't establish that.  The complaint

11   establishes that he went to Cape Canaveral.  Mr. Crist is

12   from Florida.  That's obviously very, very different from

13   traveling to Washington, D.C.  I'm not here to debate

14   whether he did or didn't violate a rule.  All I wanted to

15   point out is stating that he went to Cape Canaveral

16   instead of traveling to Washington, D.C. does not by

17   itself show that the rule was violated.  And even if the

18   rule was violated, that's not what Mr. McCarthy's claim is

19   about.  He's made a completely different claim that

20   Mr. Crist's vote should be not counted because he violated

21   the rule.

22           Two last points.  Oh, by the way, if Mr. Cooper

23   says what you look to is the journal and the journal is --

24   can't be questioned.  The journal reflects that these

25   members did vote.  So we're fine with that rule.

1              And then two last points.  We cited two opinions

2      in our case, in our brief that are definitely worth

3      looking at.  Hurtado, the Supreme Court there was looking

4      at a statutory language about attending in court.  I'll

5      give Your Honor a moment.  Hurtado, the Supreme Court

6      interpreted that term to cover even when those individuals

7      were not actually in court.  So attending was covered by

8      the statute and they were therefore entitled to pay as if

9      they had been actually physically in court whereas instead

10     they were physically in jail.  They were material

11     witnesses who were being detained.

12             And then your colleague, Judge Boasberg, said in

13     2012 in the Chamber of Commerce decision that we cited,

14     that an NLRB member can be present for purposes of a

15     quorum even if they're not physically there.  So just

16     saying, well, physically means -- I mean present means

17     physically present is just not true.

18             And, therefore, I am going to end if you don't

19     mind with something, I think the Chiafalo decision from

20     just a couple of weeks ago is very important.  And if you

21     don't mind, I want to read from one part of Justice

22     Kagan's opinion that is four/eight justices.

23             "But even assuming other framers shared that

24     outlook, it would not be enough.  Whether by choice or

25     accident, the framers did not reduce their thoughts about

1     electors' discretion to the printed page.  All that they

2     put down about the electors what we have said, that the

3     states would appoint them and that they would meet and

4     cast ballots to send to the Capitol.  Those sparse

5     instructions took no position on our independent front or

6     faithful to party and popular preferences the electors'

7     votes should be."  And I'm about to get to the very key

8     part.

9             "On that score, the Constitution left much to

10     the future and the future did not take long in coming.

11     Almost immediately presidential electors became trusted

12     transmitters of other people's decisions."

13             If Your Honor has any questions, I'm happy to

14     address them.

15             THE COURT:  I do not.

16             MR. LETTER:  Thank you, Your Honor.

17             MR. COOPER:  Your Honor, one quick point in

18     response to that last citation to the Chiafalo case.

19             THE COURT:  Go ahead.

20             MR. COOPER:  With respect to that last point, I

21     think the passage that counsel have shared with the Court

22     contains itself the seed of the doom of the point that

23     counsel is trying to make because the court said as I

24     heard the quotation and I don't have it before me, but all

25     that they have said, that is all that the framers said in

1    the Constitution about going to the question of discretion

2    of the electors and that they were sparse instructions I

3    think I heard from the passage.  Your Honor, the framers

4    said one word and phrase after another in one provision

5    after another.  From Article I, Section 2 to the 23rd

6    Amendment, Your Honor, the words of the Constitution are

7    not sparse on this question.  They are plentiful and

8    overwhelming on the question whether or not the framers

9    were creating a deliberative body, two deliberative body

10   in the bicameral Congress.  The presence of whose members

11   were to be present and not absent and sitting, Your Honor,

12   in assembly when they did business of the country.  Thank

13   you.

14            THE COURT:  All right.  So I will -- as I

15   indicated earlier, I doubt I will be the last word on

16   this.  So I will get a decision out as quickly as

17   practical so that I can send everyone on their way.  All

18   right.  Anything else we need to resolve today?

19            MR. COOPER:  Just thank you for your stamina and

20   your patience this afternoon, Your Honor.

21            THE COURT:  It's my pleasure.  It's one of the

22   greatest parts of a job are on days like today when

23   everyone knows what they're talking about and writes

24   clearly.  The opposite happens all too frequently.  All

25   right.  Thank you.  Have a good weekend, everybody.

1          (Proceedings concluded.)

1          <u>CERTIFICATE OF REPORTER</u>

2

3          I, Lisa K. Bankins, an Official Court Reporter

4   for the United States District Court for the District of

5   Columbia, do hereby certify that I reported, by machine

6   shorthand, in my official capacity, the proceedings had

7   and testimony adduced upon the preliminary injunction

8   hearing in the case of the Kevin McCarthy, et al.  Versus

9   Nancy Pelosi, et al, Civil Number 20-cv-01395, in said

10  court on the 24th day of July, 2020.

11          I further certify that the foregoing 84 pages

12  constitute the official transcript of said proceedings, as

13  taken from my machine shorthand notes, together with the

14  backup tape of said proceedings to the best of my ability.

15          In witness whereof, I have hereto subscribed my

16  name, this 27th day of July, 2020.

17

18

19                              Lisa K. Bankins

20                              Lisa K. Bankins
                                Official Court Reporter
21

22

23

24

25

**MR. COOPER: [41]**   2/10 3/4
3/9 6/19 10/11 12/19 14/8
17/6 17/13 17/20 19/4 20/23
20/25 21/12 23/13 23/21
23/24 25/18 27/2 27/23 28/11
28/13 28/19 29/4 30/4 31/7
31/10 34/9 34/15 34/20 37/8
37/25 39/24 64/6 64/11 71/1
71/21 75/23 82/17 82/20
83/19
**MR. LETTER: [28]**   2/18 2/23
3/3 3/6 39/19 39/22 40/9
40/14 40/20 40/24 43/12 44/4
44/19 46/23 48/7 48/11 48/16
48/19 61/23 62/7 63/18 64/4
78/21 78/24 79/2 79/4 79/8
82/16
**THE CLERK: [1]**   2/2
**THE COURT: [66]**   2/9 2/11
2/22 3/2 3/7 6/18 10/7 12/8
14/6 17/4 17/12 17/19 19/3
20/21 20/24 21/8 23/7 23/20
23/23 25/10 26/21 27/19
28/10 28/12 28/18 29/3 30/3
31/4 31/9 34/7 34/14 34/17
37/5 37/20 39/15 39/21 39/23
40/4 40/10 40/19 40/23 43/10
44/2 44/11 46/21 48/5 48/9
48/13 48/18 62/2 63/13 64/3
64/5 64/10 70/25 71/20 75/22
78/20 78/23 78/25 79/3 79/6
82/15 82/19 83/14 83/21

**0**

**01395 [1]**   85/9

**1**

**1127 [3]**   29/5 29/6 29/17
**115 [1]**   46/25
**1395 [2]**   1/3 2/2
**14 [1]**   56/9
**150 [1]**   44/16
**1523 [1]**   1/13
**160 [1]**   3/12
**1793 [8]**   4/2 4/15 5/9 5/18
8/19 27/15 73/15 74/21
**181 [1]**   46/25
**1812 [1]**   9/8
**1918 [3]**   9/3 9/6 73/19
**1930's [1]**   50/5

**2**

**20-1395 [1]**   2/2
**20-cv-01395 [1]**   85/9
**20-cv-1395 [1]**   1/3
**200 [4]**   12/13 12/16 44/12
44/18
**20001 [1]**   1/22
**20036 [1]**   1/14
**2012 [1]**   81/13
**2019 [1]**   33/3
**2020 [3]**   1/6 85/10 85/16
**203 [1]**   21/6
**20515 [1]**   1/18
**21 [1]**   21/16
**219 [1]**   1/17
**23rd [1]**   83/5
**24 [1]**   1/6
**24th [1]**   85/10
**27th [1]**   85/16
**2:00 [1]**   1/7
**2nd [1]**   21/7

**3**

**333 [1]**   1/22
**3500 [2]**   4/12 4/15
**3rd [1]**   29/6

**4**

**433 [1]**   60/7
**434 [1]**   60/6
**435 [1]**   14/25
**440 [1]**   15/2

**5**

**50 [1]**   12/14
**50 million [2]**   55/14 55/16
**521 [1]**   16/23

**7**

**700,000 [1]**   9/4

**8**

**80 [1]**   59/20
**821 [3]**   16/23 17/11 17/15
**84 [1]**   85/11

**9**

**921 [1]**   29/6
**933 [1]**   30/5
**965 [11]**   3/7 11/10 31/2
33/24 34/22 38/21 42/14
55/18 71/11 71/23 72/2

**A**

**ability [3]**   25/7 73/25 85/14
**able [5]**   40/21 54/8 56/18
63/10 78/18
**about [58]**   12/8 21/20 22/19
27/1 29/18 41/22 41/22 41/23
42/1 42/4 42/5 43/21 47/4
47/12 48/20 49/4 51/24 52/2
52/3 52/9 52/13 52/13 53/11
53/12 53/14 53/17 54/22
56/24 57/10 57/12 57/22 58/3
58/7 59/1 61/5 61/9 61/16
61/17 63/1 67/15 69/5 70/5
70/6 70/12 70/13 70/15 71/13
72/4 73/13 79/19 79/24 80/19
81/4 81/25 82/2 82/7 83/1
83/23
**above [1]**   47/4
**absence [3]**   73/10 76/11 78/4
**absent [16]**   3/18 6/23 10/24
11/1 11/12 13/8 25/20 26/9
26/11 27/11 64/16 66/3 71/18
72/2 75/4 83/11
**absolutely [2]**   59/5 64/1
**abuse [1]**   32/16
**accepted [1]**   69/2
**accepting [1]**   54/20
**access [4]**   32/21 33/16 70/5
70/6
**accessible [1]**   16/1
**accident [1]**   81/25
**according [2]**   12/17 71/21
**accounts [1]**   4/13
**accreditation [1]**   32/17
**acknowledged [3]**   15/6 40/2
76/20
**act [7]**   16/15 16/16 17/24
18/8 37/7 42/24 80/2
**acted [2]**   42/21 61/1
**action [7]**   2/2 3/11 5/20
36/11 38/7 51/16 52/20
**actions [2]**   21/18 21/21
**activities [1]**   36/18
**activity [3]**   32/5 32/10
33/14
**actors [1]**   37/6
**acts [13]**   29/11 30/15 30/20
30/21 30/25 31/1 36/20 37/6
37/10 37/10 37/11 37/11
37/14
**actual [17]**   25/16 40/7 44/1
47/19 57/22 72/9 73/24 76/7
76/25 77/11 77/11 77/20 78/5

78/7 78/10 78/13 78/15
78/24 79/6 79/19 79/25 80/5
**acting [5]**   5/6 6/12 13/15
16/4 17/7 17/17 18/21 23/15
27/9 27/10 27/20 42/20 47/7
53/8 53/25 57/5 57/18 60/4
61/18 65/11 65/24 77/5 78/10
80/2 81/7 81/9
**ADAM [4]**   1/16 2/6 35/9 70/15
**add [3]**   26/7 35/4 58/16
**added [3]**   44/22 44/22 66/15
**addition [1]**   54/16
**additional [2]**   13/20 13/21
**address [6]**   8/13 10/4 10/10
59/6 72/3 82/14
**address it [1]**   59/6
**addressing [2]**   9/7 41/1
**adduced [1]**   85/7
**adjourn [5]**   6/21 8/2 8/3 8/4
8/4
**administrative [4]**   30/21
30/24 33/21 34/25
**admit [1]**   41/16
**admittedly [1]**   39/9
**adopt [1]**   75/7
**adopted [2]**   46/13 75/8
**advanced [2]**   15/11 70/15
**advised [1]**   4/19
**advocate [1]**   25/24
**afar [1]**   26/24
**affected [2]**   18/13 68/14
**affirmative [1]**   9/25
**affirmatively [1]**   61/24
**after [10]**   9/11 9/17 21/14
22/5 22/24 40/13 76/6 76/6
83/4 83/5
**afternoon [4]**   2/9 2/10 72/15
83/20
**afterward [1]**   22/1
**again [38]**   4/12 4/25 5/5 7/7
11/22 15/14 16/17 17/1 17/23
18/7 20/7 20/17 22/4 22/24
27/13 36/15 36/22 36/25
37/13 38/22 43/15 50/3 52/18
52/25 53/11 58/7 59/25 60/17
60/19 61/2 61/16 61/25 62/13
63/18 66/20 67/7 73/25 78/14
**against [36]**   12/5 15/15 16/3
16/4 16/6 17/10 20/6 20/10
20/10 20/17 21/6 21/13 22/9
28/24 29/25 35/9 36/11 41/3
45/17 51/4 53/18 53/19 54/1
54/4 54/4 54/11 58/25 62/11
62/18 63/9 67/1 68/12 68/23
68/25 70/22 71/6
**age [1]**   35/22
**ago [1]**   81/20
**agree [7]**   34/17 57/24 59/21
59/22 64/21 65/3 70/9
**ahead [8]**   10/10 20/24 28/18
37/24 40/4 40/19 64/10 82/19
**al [6]**   1/3 1/6 2/3 2/3 85/8
85/9
**ALICEA [2]**   1/13 2/5
**alive [1]**   70/16
**all [64]**   2/7 2/11 2/12 3/7
4/13 5/14 5/24 10/19 13/6
15/15 16/8 17/12 17/20 18/1
20/8 21/9 23/3 24/11 24/18
24/24 25/23 26/8 27/1 27/12
33/6 34/24 39/3 39/14 39/17
40/19 41/1 41/10 41/10 41/13
43/14 43/24 44/8 45/1 45/1
46/15 49/11 49/25 52/25
53/21 58/4 59/17 59/22 64/3
64/14 67/9 68/3 68/7 78/1
78/20 79/3 79/8 80/14 82/1
82/24 82/25 83/14 83/17
83/24 83/24
**alleged [2]**   18/16 69/20

## A

**allegedly [1]** 37/17
**allow [4]** 25/14 55/19 63/24 66/2
**allowed [16]** 14/2 14/18 19/25 42/18 44/7 44/9 45/11 45/18 45/19 45/19 55/13 57/6 66/8 66/16 74/23
**allowing [1]** 8/1
**allows [3]** 55/9 56/20 73/8
**almost [4]** 9/4 37/18 75/20 82/11
**alone [4]** 5/22 8/22 25/19 25/21
**along [2]** 21/2 34/2
**already [2]** 7/4 46/2
**also [24]** 3/13 3/20 5/8 10/23 11/20 26/7 29/14 34/4 37/5 38/7 43/8 45/9 47/21 49/1 52/12 52/23 55/1 59/12 63/1 66/25 67/1 67/5 67/6 77/24
**although [4]** 4/23 11/2 26/24 27/20
**always [1]** 41/2
**am [8]** 12/18 21/4 29/15 34/9 39/25 47/22 58/17 81/18
**amazing [1]** 73/17
**amendment [4]** 58/15 62/21 62/24 83/6
**American [2]** 9/14 71/15
**Americans [3]** 9/6 55/14 55/16
**among [1]** 68/13
**Anderson [16]** 14/13 15/15 17/10 20/6 20/11 20/17 21/24 22/5 22/15 67/1 68/12 68/15 68/18 68/20 68/23 69/3
**another [9]** 7/22 9/17 28/5 28/15 29/25 47/22 59/12 83/4 83/5
**answer [2]** 58/3 62/1
**answered [1]** 78/17
**answers [1]** 41/10
**any [39]** 2/24 2/24 6/1 7/1 7/24 8/3 8/5 10/5 14/1 20/16 25/19 26/8 35/5 35/5 38/7 38/9 39/3 41/14 43/1 47/12 47/20 48/1 48/24 54/14 54/14 54/22 55/14 55/21 56/5 58/14 61/11 65/21 65/23 66/22 68/5 70/17 78/5 78/16 82/13
**anybody [1]** 50/5
**anymore [1]** 50/1
**anyone [5]** 13/23 21/10 37/16 37/16 37/22
**anything [12]** 48/19 54/18 54/25 57/12 57/18 58/13 59/7 61/16 61/21 72/8 79/19 83/18
**anyway [3]** 11/16 53/16 54/17
**anywhere [2]** 41/9 62/14
**apart [1]** 25/19
**apparently [2]** 59/21 79/25
**Appeals [3]** 29/21 29/22 67/1
**appear [1]** 41/2
**APPEARANCES [1]** 1/11
**appears [1]** 40/11
**appellate [1]** 31/12
**appellees [3]** 17/17 19/7 19/21
**applicability [1]** 19/23
**application [2]** 32/21 32/22
**applied [1]** 46/15
**applies [3]** 34/18 45/7 51/9
**apply [3]** 45/21 59/2 62/10
**appoint [1]** 82/3
**appreciate [1]** 39/15
**approach [1]** 28/1
**approached [1]** 31/25
**appropriate [2]** 60/25 61/3
**appropriation [1]** 39/1
**appropriations [2]** 20/1 38/19
**approximately [1]** 55/13
**are [82]** 2/7 3/11 3/13 6/13 7/12 7/17 8/9 11/18 11/19 12/14 14/2 15/21 15/22 15/23 16/8 17/5 19/11 19/19 19/25 20/21 20/22 22/23 23/25 27/25 28/6 29/11 30/12 30/15 30/20 33/7 34/23 35/1 35/5 37/11 38/12 39/17 40/11 40/15 43/6 43/15 44/6 44/13 45/8 46/18 47/3 47/6 49/18 49/22 50/3 51/7 51/15 51/25 52/1 55/1 56/17 56/25 57/13 60/4 60/6 60/7 62/15 63/15 63/22 65/19 66/18 66/18 66/21 67/17 69/23 73/17 74/24 75/18 75/25 77/5 77/8 78/10 78/20 80/3 81/2 83/6 83/7 83/22
**area [1]** 48/23
**aren't [1]** 60/4
**argue [7]** 8/13 10/15 24/4 25/24 42/17 42/20 57/16
**argues [2]** 26/22 68/9
**arguing [2]** 26/23 54/1
**argument [29]** 11/5 11/8 12/7 12/10 14/5 14/9 19/22 23/9 25/9 26/24 27/1 28/15 28/22 38/1 38/3 38/3 38/5 42/5 42/19 49/20 52/12 53/13 55/25 57/3 59/10 60/18 64/13 66/21 76/24
**arguments [6]** 10/4 10/5 27/21 38/4 41/13 62/18
**Arms [3]** 31/18 32/4 33/23
**around [3]** 47/10 73/16 76/16
**arrest [4]** 5/2 5/5 7/6 7/7
**Article [7]** 4/20 4/24 5/3 6/24 35/16 35/21 83/5
**articulate [1]** 28/20
**articulated [2]** 35/21 67/1
**articulating [1]** 12/18
**as [133]**
**aside [1]** 52/5
**ask [7]** 4/8 12/8 21/9 23/7 40/4 40/5 40/21
**asked [8]** 5/8 30/22 31/9 40/1 41/17 58/3 61/13 64/8
**asking [4]** 53/19 53/20 58/12 72/21
**assemble [1]** 7/18
**assembled [2]** 7/18 27/11
**assembly [1]** 83/12
**assertedly [1]** 50/12
**assess [1]** 11/8
**assigned [1]** 35/1
**assistance [1]** 53/13
**associated [1]** 30/7
**association's [1]** 32/20
**assume [8]** 11/7 11/9 11/23 11/24 13/14 43/5 54/11 64/24
**assumed [2]** 77/24 78/1
**assuming [3]** 13/5 66/20 81/23
**assumption [2]** 11/14 11/15
**atmosphere [1]** 32/23
**attempting [2]** 18/11 50/10
**Attempts [1]** 30/19
**attend [1]** 56/10
**attendance [5]** 5/6 6/23 7/8 7/10 73/9
**attending [2]** 81/4 81/7
**attention [5]** 17/11 19/1 21/1 33/22 70/2
**attorney [1]** 46/5
**authority [7]** 4/9 24/8 26/6 43/1 68/23 74/14 74/16
**authorization [1]** 72/1
**authorizations [1]** 13/5
**authorize [1]** 26/11
**authorized [4]** 4/21 6/22 18/23 71/12
**authorizes [2]** 3/18 26/9
**authorizing [1]** 6/2
**available [1]** 9/12
**Avenue [2]** 1/13 1/22
**avoid [2]** 52/24 56/19
**awaited [1]** 5/17
**aware [4]** 31/13 44/19 47/25 79/23

## B

**back [8]** 7/6 11/2 12/10 18/4 23/8 47/11 53/5 53/9
**backup [1]** 85/14
**Baker [2]** 29/20 29/25
**balancing [1]** 63/22
**Ballin [7]** 65/13 75/10 75/12 77/17 77/23 79/9 79/11
**ballot [1]** 54/9
**ballots [1]** 82/4
**Bankins [5]** 1/21 2/7 85/3 85/19 85/20
**BANKRUPTCY [1]** 1/1
**bar [5]** 38/6 38/7 39/9 39/11 51/4
**Barker [10]** 28/23 29/2 32/8 32/13 33/2 33/6 52/5 52/6 52/15 52/17
**barred [2]** 32/24 54/12
**barring [1]** 36/7
**based [1]** 77/2
**basic [1]** 63/25
**basics [1]** 28/21
**basis [2]** 68/2 68/4
**be [112]**
**bear [2]** 6/17 31/22
**beat [1]** 43/13
**became [2]** 53/9 82/11
**because [69]** 6/4 6/6 8/23 10/16 10/20 12/9 13/22 14/24 16/22 16/24 18/4 18/7 18/14 20/25 21/23 23/8 24/15 25/14 29/20 32/6 32/20 32/22 42/5 42/9 43/23 44/8 44/16 45/11 46/2 46/14 47/14 47/18 47/19 49/1 49/9 49/15 49/18 49/23 51/24 52/6 52/10 53/8 54/13 55/4 55/10 55/11 55/15 56/2 56/11 56/16 56/19 57/17 60/5 60/10 62/8 63/8 63/21 64/22 66/16 69/15 69/19 71/6 72/12 72/18 74/5 79/18 79/25 80/20 82/23
**become [1]** 19/10
**becomes [1]** 12/16
**been [37]** 2/13 8/24 9/12 13/1 13/9 13/20 15/14 15/20 16/24 17/16 17/17 17/21 18/23 19/11 19/17 21/24 24/16 31/15 33/14 34/5 35/6 40/7 44/20 50/6 51/4 51/22 56/18 62/18 62/19 67/14 68/13 68/14 69/17 71/24 73/5 76/16 81/9
**before [34]** 1/9 3/15 5/3 5/23 14/10 14/12 16/1 18/6 18/10 20/3 20/5 21/22 22/9 22/23 23/1 23/14 31/11 33/7 37/10 40/5 42/25 45/14 45/14 45/15 48/5 52/18 55/18 57/11 57/22 68/10 68/18 69/23 71/23 82/24
**begin [2]** 40/25 41/5

**B**

beginning [3]   19/6 54/17
  77/19
beginnings [1]   61/1
behalf [6]   11/11 13/7 32/18
  64/15 64/16 71/5
being [12]   11/16 12/15 14/1
  18/16 20/4 25/12 26/17 55/4
  62/23 62/25 67/16 81/11
believe [17]   13/13 24/16
  25/6 25/18 27/2 27/4 27/4
  34/1 34/4 35/5 39/7 47/8
  54/21 61/23 63/1 78/17 79/11
believed [2]   14/22 74/6
believes [1]   10/6
beset [1]   8/24
bespeak [3]   7/12 8/8 27/13
best [6]   2/16 31/7 31/10
  57/4 57/7 85/14
better [2]   3/5 57/25
between [7]   16/2 26/15 30/6
  36/18 38/11 39/3 79/15
beyond [2]   29/15 35/4
bicameral [1]   83/10
bill [1]   19/10
bills [2]   20/1 38/19
binding [1]   51/13
bit [3]   12/10 23/11 45/17
black [3]   11/9 50/4 50/9
blinked [1]   72/18
blocking [1]   70/22
board [1]   12/2
Boasberg [1]   81/12
bodies [4]   8/10 8/11 26/3
  76/18
body [5]   17/1 17/23 27/15
  83/9 83/9
bonafide [1]   32/16
bored [1]   62/1
borrow [1]   38/16
both [9]   4/21 16/11 18/2
  27/23 46/10 48/16 58/22
  60/25 72/25
branch [11]   16/2 16/6 16/7
  16/18 17/2 17/2 17/23 45/24
  46/1 63/12 75/2
break [10]   39/18 39/20 39/23
  40/1 40/3 40/12 40/21 64/5
  64/8 64/9
Brewster [2]   63/3 63/20
brief [6]   19/23 31/5 48/12
  48/14 56/9 81/2
briefing [3]   23/10 38/14
  71/17
briefs [3]   13/3 19/22 27/21
bring [7]   9/7 14/10 18/23
  39/1 39/4 67/18 70/21
bringing [1]   79/9
broad [2]   60/23 75/9
brought [6]   3/15 20/6 21/15
  22/11 39/12 55/4
Building [1]   1/17
burden [2]   15/19 71/15
business [5]   3/19 6/21 7/15
  72/8 83/12

**C**

calamitous [1]   4/7
calculated [2]   55/12 63/7
called [6]   18/19 30/1 33/22
  44/20 73/5 74/5
calls [1]   56/21
came [1]   9/24
Campbell [4]   21/6 21/13
  68/15 68/24
can [44]   2/20 3/4 21/9 21/10
  26/17 37/21 39/7 39/19 39/20
  40/16 42/14 42/17 42/17
  42/19 48/4 48/9 49/17 49/21

50/20 51/6 52/21 54/10 54/11
  56/24 59/4 59/6 60/8 60/13
  59/23 64/7 65/17 65/18 65/21
  65/22 65/22 65/25 72/17
  74/10 74/11 76/20 77/18 78/5
  78/15 81/14 83/17
can't [12]   25/22 26/4 49/9
  50/16 55/10 60/3 60/3 61/6
  61/6 75/12 79/10 80/24
Canaveral [5]   71/20 72/2
  80/8 80/11 80/15
candid [1]   34/6
Canning [1]   9/23
Cannon [1]   1/17
cannot [11]   19/7 25/3 25/4
  27/11 39/11 49/14 49/24
  50/25 66/19 74/11 78/12
capacity [1]   85/6
Cape [5]   71/20 72/1 80/8
  80/11 80/15
capitol [6]   8/24 61/9 61/11
  61/15 61/19 82/4
care [1]   39/16
carefully [1]   52/16
carry [2]   15/19 24/8
carrying [10]   30/9 30/16
  30/20 31/2 33/10 34/25 36/5
  36/21 37/11 38/22
carryover [1]   17/14
case [116]
cases [28]   2/13 15/22 16/8
  23/4 30/11 33/7 34/12 35/5
  37/14 37/16 38/13 46/6 46/10
  46/11 46/16 46/18 46/19 47/2
  49/4 49/12 51/4 51/8 51/8
  62/9 62/22 68/13 70/2 73/5
cast [24]   3/20 11/11 12/4
  13/5 13/5 13/7 13/9 13/15
  13/20 14/1 14/4 14/20 23/18
  24/9 25/12 25/16 25/21 26/23
  36/2 64/22 64/23 66/22 66/24
  82/4
casting [3]   13/2 34/23 36/8
casts [1]   13/24
cause [1]   79/6
caused [1]   14/17
causes [2]   17/25 32/18
causing [1]   56/15
census [1]   23/4
central [3]   51/19 52/21 76/3
century [1]   75/19
certain [6]   14/16 42/6 51/22
  53/8 56/15 61/7
certainly [9]   9/11 12/23
  25/5 66/1 66/5 69/24 70/9
  71/25 74/7
certainty [3]   12/4 12/6
  22/17
CERTIFICATE [1]   84/2
certify [2]   85/5 85/11
cetera [4]   43/3 49/11 59/1
  73/21
chair [2]   60/7 65/8
challenge [12]   3/16 14/16
  15/8 21/18 21/21 22/3 36/13
  47/16 53/17 53/18 55/3 71/6
challenged [4]   35/20 47/16
  69/8 69/9
challenging [3]   16/13 35/14
  43/6
chamber [10]   31/24 32/1
  33/16 60/5 60/6 60/8 71/25
  77/6 78/11 81/13
change [2]   44/25 50/1
changed [5]   13/19 48/22
  57/15 57/16 57/20
changes [1]   44/24
characteristics [1]   62/12
charged [2]   36/7 37/17

CHARLES [3]   1/12 2/4 3/11
chart [1]   59/16
charter [1]   60/23
chastised [1]   50/7
Chenoweth [6]   46/17 46/22
  68/9 68/12 68/21 68/24
Chiafalo [3]   56/22 81/19
  82/18
choice [6]   5/15 13/2 25/21
  39/19 39/20 81/24
choices [1]   24/2
circuit [43]   14/14 14/21
  15/17 17/9 20/11 21/2 21/13
  22/5 28/23 28/24 29/8 30/5
  33/3 33/4 34/2 34/12 36/17
  37/5 37/8 41/24 46/4 46/5
  46/16 46/17 47/18 48/3 48/6
  48/7 49/12 49/13 49/16 50/8
  50/13 50/19 51/6 51/8 51/12
  51/23 52/7 68/10 68/16 68/17
  69/4
Circuit's [3]   15/12 32/8
  47/15
circumstance [1]   14/12
circumstances [2]   61/8 74/24
citation [2]   48/8 82/18
cite [8]   21/23 21/25 24/14
  31/13 45/3 46/21 68/12 68/14
cited [13]   2/14 5/2 7/5 17/8
  48/11 48/12 48/14 48/16 49/3
  50/6 69/4 81/1 81/13
cites [4]   18/25 19/23 49/5
  68/9
citizens [2]   3/13 14/2
City [1]   4/4
Civil [3]   2/2 9/8 85/9
claim [14]   17/24 22/14 38/7
  45/9 50/17 53/9 53/14 54/4
  54/4 62/20 70/15 70/22 80/18
  80/19
claimed [2]   35/25 69/12
claims [9]   39/9 45/8 53/4
  53/16 54/11 62/19 62/22 63/2
  70/21
classic [1]   33/19
clause [34]   5/2 6/15 6/24
  7/5 7/6 7/20 26/1 28/16
  28/25 29/10 30/1 31/14 32/24
  33/7 34/1 34/18 34/21 35/8
  38/2 38/5 38/6 38/20 39/9
  51/9 52/4 59/5 62/4 62/6
  63/5 63/16 70/21 73/7 76/4
  76/8
clauses [1]   30/19
Clayton [2]   35/9 70/15
clear [17]   2/12 7/13 8/7
  9/15 12/9 21/20 35/17 46/14
  55/18 58/20 64/1 67/11 72/22
  74/17 75/9 75/10 77/24
clearer [1]   72/17
clearly [11]   15/7 23/2 37/1
  42/21 47/5 64/19 66/9 66/10
  67/5 68/19 83/24
clerk [13]   30/25 33/23 43/11
  43/14 43/14 43/25 54/19 65/7
  65/9 66/1 66/6 66/7 66/11
client [1]   60/9
clients [5]   10/15 11/8 43/6
  45/1 45/16
clings [1]   69/25
Clinton [3]   21/6 21/14 62/24
close [4]   29/7 59/3 62/14
  75/14
closer [1]   43/11
closest [1]   45/22
closure [1]   14/11
co [1]   76/19
co-existed [1]   76/19

## C

Coleman [2]   18/19 19/8
colleague [3]   10/2 58/8 81/12
colleagues [3]   19/16 54/25 58/8
collecting [1]   65/9
college [1]   57/6
color [1]   45/11
COLUMBIA [2]   1/1 85/5
come [7]   11/2 15/10 18/4 24/23 49/16 62/14 78/12
comes [1]   77/16
comfortable [2]   41/5 80/1
coming [2]   41/9 82/10
commentary [1]   71/22
comments [1]   72/4
Commerce [1]   81/13
committee [7]   14/20 22/4 31/17 31/20 32/3 56/2 66/23
common [2]   24/16 75/10
commonplace [1]   76/19
communicating [1]   65/7
communicative [2]   29/12 33/20
compatible [1]   15/23
compel [2]   6/22 73/9
complaint [3]   80/7 80/10 80/10
complaints [1]   76/4
completely [5]   2/15 30/14 57/24 73/23 80/19
complying [1]   80/7
compromised [1]   20/4
conceded [1]   79/19
concedes [1]   46/3
concept [1]   79/24
concern [1]   70/6
concerns [1]   41/24
conclude [2]   38/1 42/14
concluded [3]   14/22 39/8 84/1
concludes [2]   9/25 23/5
conclusive [1]   78/2
conduct [1]   22/12
confident [1]   34/10
confirmation [1]   9/15
confirmed [2]   5/1 75/18
confirming [2]   27/6 76/11
conflict [2]   16/18 17/24
confronted [1]   59/11
confronting [1]   3/25
Congress [78]   3/18 3/20 3/22 4/7 5/4 5/11 5/15 5/20 6/11 7/18 9/1 9/10 11/18 12/3 14/24 15/1 15/1 15/2 16/3 16/3 16/6 16/10 16/17 17/16 18/2 18/2 18/10 18/22 18/23 21/19 21/21 21/23 22/20 24/13 25/3 25/12 32/11 32/14 35/18 36/3 41/25 42/25 43/4 43/20 43/21 44/23 49/23 50/15 51/10 51/20 56/12 58/7 58/22 59/19 59/19 61/3 61/7 62/12 63/10 65/15 67/16 68/1 68/2 69/8 70/7 71/14 72/11 73/1 74/11 74/15 74/16 74/17 74/21 74/23 75/1 75/2 76/17 83/10
Congress' [3]   6/8 25/6 51/17
congressional [1]   46/11
Congressman [12]   12/11 35/13 64/15 67/4 70/19 70/22 71/6 71/6 71/8 71/12 71/16 71/24
Congressman-elect [1]   35/13
congressmen [2]   21/18 22/2
Conroy [6]   28/24 29/20 29/25 32/8 32/13 33/2
consent [11]   8/4 59/15 59/19

60/5 60/24 76/13 76/14 76/16 76/20 78/9
Consequently [1]   47/1
consideration [1]   34/13
considered [2]   63/8 75/3
constituent [10]   10/18 15/5 22/22 23/15 28/2 28/3 28/5 49/8 49/17 69/24
constituent's [1]   25/8
constituents [15]   3/13 10/18 11/21 14/15 14/15 23/1 35/13 35/20 36/9 49/21 53/3 53/5 67/21 70/19 71/9
constitute [4]   6/20 72/7 77/1 85/12
constitutes [1]   27/8
constituting [1]   65/20
Constitution [44]   1/22 4/9 4/11 5/2 5/5 5/13 6/7 6/10 7/12 7/14 8/21 9/17 25/2 27/5 27/7 35/22 57/11 57/16 57/17 57/18 58/5 58/15 58/16 58/19 60/22 61/17 66/9 72/14 72/23 73/3 73/6 75/11 75/18 76/5 76/14 76/18 76/25 78/8 79/11 79/19 79/22 82/9 83/1 83/6
Constitution's [3]   5/24 9/22 76/2
constitutional [31]   3/16 8/17 11/3 11/7 11/16 26/3 26/8 26/14 26/18 27/24 28/8 35/18 36/13 43/22 56/1 56/3 59/15 59/21 60/1 60/1 60/9 62/20 62/23 63/1 63/2 66/21 73/2 75/12 75/16 77/25 79/13
constitutionality [3]   16/13 35/14 74/23
constitutionally [1]   11/13
consult [2]   52/23 60/19
consulting [1]   70/24
consumed [1]   39/13
Consumers [16]   31/6 32/9 32/14 33/12 34/1 37/14 47/24 50/24 51/3 51/7 51/12 51/13 51/20 52/19 62/20 69/25
contagion [2]   5/17 27/16
contain [2]   72/4 76/6
contains [1]   82/22
contemplate [2]   24/12 56/8
contemplation [1]   27/14
contend [1]   10/2
content [1]   34/10
contentions [1]   12/17
context [3]   15/25 66/22 66/23
continue [2]   19/20 55/9
continues [3]   17/24 25/14 69/6
continuing [7]   30/8 32/13 52/23 69/1 77/3 77/7 77/15
contracting [1]   5/11
CONTRERAS [3]   1/9 3/10 20/16
control [1]   10/25
controlling [1]   17/9 20/12 20/18
controversy [1]   70/17
convene [5]   4/6 4/21 5/15 5/18 74/14
convened [2]   61/8 61/11
convening [1]   5/12
convinced [1]   50/1
Cooper [60]   1/12 1/12 2/4 2/19 3/7 3/11 12/9 21/8 37/20 37/24 39/23 41/3 41/6 41/7 41/17 42/4 43/6 43/18 44/5 45/2 45/6 45/22 46/3 46/12 47/21 47/23 48/1 48/21 49/2 49/7 49/21 49/25 50/22

51/1 51/15 52/5 52/15 52/24 52/25 53/19 53/25 58/2 58/4 58/6 58/18 58/24 59/6 59/12 59/25 60/8 60/15 61/5 61/9 64/5 64/10 79/9 79/18 79/21 80/6 80/22
Cooper's [6]   45/1 45/16 53/13 55/25 61/13 62/3
coping [1]   34/5
core [1]   37/2
Coronavirus [2]   3/24 3/25
corporate [1]   74/9
correct [2]   70/9 70/14
correctly [2]   12/18 56/23
could [24]   6/2 17/4 21/8 38/10 42/23 42/24 43/21 43/24 45/9 46/25 47/19 53/3 58/6 58/12 59/1 59/2 64/23 65/15 65/16 69/16 70/19 72/17 76/8 80/2
couldn't [6]   2/19 43/1 43/2 43/2 59/8 74/4
counsel [20]   15/11 15/16 23/6 28/15 35/6 41/2 52/8 66/13 68/8 69/2 69/7 69/25 70/9 70/14 71/1 75/5 76/9 77/8 82/21 82/23
counsel's [2]   73/13 75/23
count [7]   12/17 50/8 59/16 60/14 77/20 78/5 78/15
counted [20]   3/19 11/16 13/16 13/16 13/17 27/8 39/5 45/13 53/22 53/25 56/5 65/4 65/16 66/3 66/18 66/19 72/6 76/1 76/21 80/20
counter [1]   54/9
counting [5]   12/12 54/19 61/14 65/9 67/17
countless [1]   73/5
country [6]   3/25 4/2 8/20 9/3 57/15 83/12
couple [8]   19/2 19/5 22/9 28/21 40/6 75/20 78/22 81/20
coupled [1]   8/16
course [8]   3/9 7/19 10/1 11/20 15/6 22/14 40/23 70/25
court [129]
court's [9]   19/1 21/1 28/14 32/7 33/22 38/21 39/11 56/22 70/2
courts [8]   1/1 25/5 30/18 60/17 63/12 63/24 72/24 73/5
cover [3]   61/21 61/24 81/6
covered [3]   49/18 51/24 81/7
created [1]   19/18
creating [2]   66/4 83/9
credentials [1]   32/2
crises [2]   8/24 8/24
crisis [4]   3/24 4/1 4/17 71/14
Crist [17]   53/18 53/22 54/3 54/5 54/5 54/8 54/11 54/14 71/6 71/7 71/12 71/12 71/16 71/24 80/5 80/6 80/11
Crist's [1]   80/20
cry [1]   66/2
crystal [1]   12/9
culminate [1]   26/5
current [2]   23/16 47/3
cv [2]   1/3 85/9

## D

D.C [48]   1/5 1/14 1/18 1/22 14/14 14/21 15/12 15/17 17/9 20/11 21/1 21/13 22/4 28/23 28/24 29/8 32/7 33/3 33/4 34/2 34/12 36/16 37/5 37/8 41/24 46/4 46/5 46/16 46/17 47/14 47/18 48/7 49/11 49/13

**D**

**D.C... [14]**  49/16 50/7 50/13 50/19 51/6 51/8 51/23 52/6 68/10 68/16 68/17 69/4 80/13 80/16
**Dakota [1]**  57/14
**damages [1]**  18/1
**danger [2]**  5/11 6/2
**dangers [1]**  75/3
**day [8]**  6/22 6/22 8/14 22/22 40/13 56/15 85/10 85/16
**days [2]**  8/2 83/22
**deadly [4]**  55/11 56/13 56/14 56/17
**deal [3]**  47/21 53/4 53/6
**dealt [3]**  46/2 51/21 74/9
**deaths [1]**  4/15
**debatable [1]**  73/11
**debate [48]**  8/12 10/5 24/10 25/25 25/25 28/16 28/21 28/25 29/10 30/1 30/7 30/13 31/14 32/24 33/7 33/13 33/25 34/18 34/21 35/8 37/12 37/15 38/2 38/5 38/6 38/20 39/8 41/18 42/1 45/7 50/21 51/4 51/9 51/14 51/24 52/4 53/10 54/12 54/23 62/4 62/6 62/10 62/16 62/19 62/22 63/15 70/20 80/13
**December [1]**  5/18
**December of [1]**  5/18
**decide [5]**  21/17 40/16 43/2 43/22 58/22
**decided [8]**  21/14 34/4 34/6 63/23 69/1 70/18 70/19 74/7
**decidedly [1]**  30/18
**decides [1]**  65/11
**decision [22]**  25/13 25/15 32/8 47/15 47/24 48/2 48/22 49/2 49/25 50/4 50/6 52/16 56/23 57/14 63/3 63/8 63/21 64/1 68/14 81/13 81/19 83/16
**decisions [7]**  2/15 24/22 31/20 46/4 50/8 57/13 82/12
**decisive [1]**  5/22
**decline [1]**  43/2
**defendant's [1]**  38/3
**defendants [3]**  1/7 1/15 2/5
**definitely [1]**  81/2
**definitions [1]**  56/9
**degree [1]**  67/10
**delegate [5]**  24/7 24/9 24/12 25/3 25/4
**delegate's [1]**  66/22
**delegated [2]**  24/22 54/18
**delegates [7]**  14/19 14/19 15/3 15/3 44/24 66/16 66/19
**delegation [8]**  23/9 24/8 25/7 25/13 53/14 54/16 55/23 71/4
**deliberations [2]**  32/23 33/17
**deliberative [10]**  8/9 8/10 26/2 27/15 27/17 29/11 30/13 33/20 83/9 83/9
**delighted [1]**  56/1
**democracy [5]**  24/19 55/7 55/9 57/25 61/4
**democratic [4]**  55/6 56/19 60/22 63/25
**demonstrate [1]**  65/24
**demonstrated [1]**  50/23
**denial [2]**  32/20 39/4
**denied [9]**  19/7 19/12 19/14 19/16 19/18 20/8 20/13 68/3 71/8
**denies [1]**  67/9
**denominator [6]**  13/19 13/22 44/25 44/25 65/2 66/15

**denying [1]**  38/24
**depending [1]**  40/10
**depends [1]**  60/10
**deprived [1]**  44/9
**derivative [2]**  23/2 49/20
**derivatively [1]**  10/18
**describe [1]**  22/1
**described [2]**  14/12 47/25
**describing [1]**  58/6
**designed [3]**  32/15 51/25 67/18
**desire [1]**  7/2
**despite [4]**  5/17 49/22 55/7 71/13
**destroy [1]**  63/6
**detained [1]**  81/11
**determination [1]**  32/10
**determine [9]**  4/22 59/9 60/16 60/17 65/13 65/15 65/19 73/2 79/12
**determined [1]**  60/13
**determines [2]**  60/11 60/12
**determining [2]**  37/3 65/25
**devastating [1]**  4/4
**developed [1]**  32/11
**deviate [1]**  11/1
**device [2]**  65/7 66/1
**dictionaries [1]**  56/7
**did [44]**  5/18 9/7 9/8 21/17 23/16 23/17 24/21 33/7 33/12 42/13 42/21 43/8 43/17 43/20 43/21 46/3 49/6 51/5 51/6 52/6 53/4 56/2 57/9 57/11 59/13 63/11 64/9 64/19 64/21 65/3 70/16 70/17 74/13 74/21 75/5 75/24 79/11 79/24 80/6 80/14 80/25 81/25 82/10 83/12
**didn't [13]**  5/25 6/6 12/10 24/20 45/2 58/16 59/7 74/2 74/2 74/3 74/3 76/6 80/14
**died [1]**  4/13
**difference [3]**  26/8 26/14 67/10
**different [15]**  18/19 20/8 20/21 28/1 28/6 42/22 43/8 43/18 45/25 46/7 46/15 61/9 67/3 80/12 80/19
**differentiation [1]**  38/10
**difficult [4]**  51/18 52/21 53/23 63/21
**dig [1]**  2/13
**dilute [2]**  14/4 14/23
**diluted [11]**  10/19 10/20 11/20 11/21 13/24 15/14 20/7 20/13 22/3 22/13 68/4
**dilutes [1]**  67/8
**dilution [21]**  11/17 11/25 12/6 12/15 13/23 14/16 15/8 19/18 22/16 22/17 23/1 39/3 39/4 41/21 42/5 44/2 44/18 44/20 45/3 47/19 52/11
**diminished [1]**  21/19
**diminishing [1]**  21/22
**diminution [1]**  17/25
**direct [5]**  21/1 24/19 42/24 71/7 75/14
**direction [2]**  30/16 30/21
**directions [2]**  30/10 36/22
**directive [1]**  33/11
**directly [2]**  47/9 70/11
**director [1]**  16/12
**disaggregated [1]**  26/5
**discern [2]**  72/13 73/6
**discretion [7]**  11/1 25/19 49/15 49/19 57/10 82/1 83/1
**discretionary [1]**  49/16
**discriminated [1]**  45/17
**discriminating [1]**  58/25

**discrimination [2]**  45/10 67/20
**discriminatory [3]**  19/13 62/5 62/11
**discussed [4]**  19/22 48/12 70/1 70/4
**discussing [1]**  67/14
**dismissed [1]**  41/15
**disorder [1]**  4/13
**dispense [1]**  26/16
**dispositive [2]**  16/22 34/18
**dispute [8]**  16/1 16/2 16/5 16/6 45/24 45/25 46/1 74/15
**distant [1]**  75/4
**distinction [13]**  29/23 29/23 30/6 30/11 36/16 36/17 36/24 38/10 39/3 45/23 46/12 46/19 67/24
**distinguish [2]**  18/18 31/6
**distinguishable [6]**  21/5 30/15 34/2 34/10 34/11 34/16
**distinguished [7]**  21/2 21/14 33/4 34/3 34/12 68/17 70/3
**distinguishes [2]**  21/3 32/9
**district [11]**  1/1 1/1 1/10 1/21 23/25 24/11 48/2 48/6 48/14 85/4 85/4
**do [51]**  3/2 3/19 6/21 7/14 11/24 12/25 14/10 18/24 23/13 24/10 27/25 31/4 31/11 34/17 35/2 39/18 39/23 41/5 41/9 41/16 42/18 43/1 43/24 44/5 45/20 46/21 46/23 48/8 49/9 50/9 50/20 50/25 51/6 53/20 54/10 54/18 54/18 56/1 59/8 63/11 64/5 64/7 64/11 65/18 65/21 71/18 72/8 72/8 74/20 82/15 85/5
**doctrine [3]**  49/15 49/16 57/22
**does [18]**  4/24 11/23 24/8 29/14 29/15 37/22 38/6 41/18 43/5 43/25 45/21 49/25 54/19 68/12 72/23 73/3 74/14 80/16
**doesn't [17]**  8/22 11/13 44/25 46/20 47/24 55/19 55/20 59/2 62/10 63/2 65/18 67/8 68/14 72/4 72/11 72/18 80/10
**doing [2]**  43/15 62/15
**dome [1]**  61/19
**don't [26]**  3/8 10/9 11/3 12/20 18/24 23/8 23/11 26/7 37/9 38/9 39/2 39/7 41/8 41/20 42/3 44/4 47/23 48/19 51/2 51/2 57/16 62/8 74/15 81/18 81/21 82/24
**done [5]**  24/16 43/23 69/18 75/20 78/20
**doom [1]**  82/22
**doorman [3]**  36/6 36/25 70/22
**doubt [3]**  48/1 74/22 83/15
**DOUGLAS [3]**  1/16 2/5 2/18
**down [3]**  19/5 78/18 82/2
**dozen [1]**  18/22
**draw [3]**  30/11 45/23 46/12
**drawn [3]**  29/22 29/23 30/6
**drew [2]**  36/15 36/23
**driven [1]**  27/5
**due [1]**  73/10
**duly [1]**  72/25
**during [5]**  5/5 7/7 19/22 73/15 78/18
**duty [1]**  56/10

**E**

**each [8]**  6/20 10/22 10/23 35/18 40/7 55/21 75/6 79/12
**earlier [7]**  15/6 36/16 38/17

**E**

earlier... [4]   47/4 68/17 72/15 83/15
early [1]   58/14
earnestly [1]   20/15
easier [1]   73/14
Eastland [1]   51/5
easy [1]   73/19
economic [1]   74/8
educated [1]   76/15
effect [1]   21/25
effectively [3]   15/16 15/20 17/8
effectuate [1]   25/7
egregious [1]   62/4
eight [7]   13/6 13/15 13/21 64/15 64/19 65/4 81/22
either [7]   4/21 7/1 7/14 8/2 11/4 48/1 63/11
elect [4]   24/2 25/8 35/12 35/13
elected [2]   24/22 71/9
election [3]   12/2 14/1 23/3
electoral [1]   57/6
electors [6]   56/25 57/4 57/5 82/2 82/11 83/2
electors' [3]   57/10 82/1 82/6
electronic [8]   42/22 43/5 43/6 43/11 54/9 54/19 65/7 66/1
element [2]   26/1 26/2
elements [3]   25/22 26/4 63/25
eligibility [1]   37/3
else [8]   43/3 48/19 61/7 61/21 61/25 72/8 74/20 83/18
else's [1]   42/19
Elsewhere [1]   7/21
emergency [1]   40/15
emergent [1]   74/24
emphasis [1]   6/17
emphasize [2]   10/23 18/6
emphasized [3]   4/11 31/23 36/17
emphasizes [2]   28/24 28/25
emphatic [1]   6/11
employee [2]   36/11 36/12
employees [2]   36/24 74/3
empowers [1]   79/12
empty [1]   67/19
enabled [2]   57/25 63/5
enact [2]   69/10 74/19
enacted [2]   9/10 72/25
enacting [2]   8/14 34/22
end [5]   22/22 23/10 41/18 56/24 81/18
ended [1]   73/24
engage [1]   27/17
engaged [3]   33/9 33/14 36/18
enhanced [1]   18/9
enjoin [1]   30/23
enough [3]   18/20 60/3 81/24
ensure [1]   32/15
ensures [1]   10/21
ensuring [1]   31/24
enter [2]   32/1 36/1
entered [1]   7/3
entire [1]   4/16
entirely [2]   15/23 48/23
entitled [3]   10/22 36/10 81/8
epidemic [2]   4/3 73/15
episode [1]   71/17
equally [2]   18/2 22/7
error [1]   5/20
especially [4]   4/3 5/2 5/21 18/4
ESQUIRE [5]   1/12 1/13 1/16

1/16 1/17
essentially [6]   1/3 32/10 32/10 33/17 59/5
essentially [5]   15/12 16/4 33/16 36/7 40/13
establish [3]   27/20 65/24 80/10
established [8]   77/10 77/12 77/18 77/18 77/19 78/4 78/14 79/16
establishes [1]   80/11
establishing [3]   15/13 66/4 72/7
establishment [1]   76/21
esteemed [2]   41/1 73/10
et [10]   1/3 1/6 2/3 2/3 43/3 49/11 59/1 73/20 85/8 85/9
even [27]   9/13 18/18 22/19 22/22 23/2 27/15 31/16 32/5 33/6 38/22 48/3 50/16 55/4 56/13 57/25 58/5 59/3 61/13 73/11 74/17 76/5 77/8 80/3 80/17 81/6 81/15 81/23
ever [2]   4/14 41/19
every [11]   11/11 11/25 14/24 35/11 39/5 40/7 45/17 61/14 67/6 77/19 78/18
everybody [3]   18/13 41/5 83/25
everyone [3]   10/8 83/17 83/23
everything [3]   61/24 68/10 69/5
evolve [1]   12/10
evolved [1]   12/10
exact [1]   41/6
exactly [7]   44/21 52/2 66/18 69/18 70/3 79/2 79/4
examined [1]   65/14
example [10]   5/23 31/1 38/15 38/15 46/9 58/14 60/24 61/6 66/6 67/15
examples [2]   38/12 46/9
exceed [1]   75/12
exceeds [1]   75/16
except [3]   12/19 55/23 61/7
excluded [2]   35/15 51/22
Excuse [1]   64/6
executing [6]   30/9 33/10 34/25 36/20 37/1 37/17
execution [2]   30/15 37/11
executive [6]   16/7 16/12 58/11 63/12 63/24 75/2
executive's [1]   18/9
exercised [2]   9/2 69/22
exercising [2]   36/19 37/1
exigency [1]   71/14
existed [1]   76/19
existence [6]   70/14 77/15 77/17 78/6 78/7 78/13
exists [1]   11/25
expands [1]   16/16
expected [1]   57/4
expense [2]   16/17 18/9
explained [1]   32/19
explaining [1]   32/14
explains [1]   5/24
express [1]   12/21
expression [1]   9/24
expressly [2]   4/24 49/3
extend [4]   29/14 29/15 30/19 33/12
extended [4]   31/15 31/16 31/17 37/15
extending [1]   35/4
extends [3]   29/10 34/21 38/4
extent [1]   75/24
extra [1]   67/7
extraordinarily [1]   8/18

extraordinary [1]   4/20
extrapolated [1]   9/5
extreme [5]   9/12 9/13 38/12 38/15 39/10
extremely [4]   49/1 50/22 55/7 58/17
eye [2]   30/18 37/12

**F**

F.3rd [1]   46/25
face [6]   4/18 8/12 8/12 10/21 55/19 59/6
faces [1]   71/14
fact [14]   9/13 32/11 45/12 45/21 46/13 49/22 50/23 53/24 59/16 61/12 63/1 66/11 72/21 80/5
factual [1]   40/6
factually [1]   14/13
fail [1]   38/20
faithful [1]   82/6
fall [1]   73/8
familiar [2]   6/16 24/18
famous [1]   9/24
far [1]   66/2
farther [1]   38/22
fashion [1]   67/20
fast [1]   79/5
fatal [1]   59/13
FCRR [1]   1/21
feature [1]   76/17
Fed [2]   21/6 29/6
federal [4]   4/5 67/21 72/24
Federalist [1]   24/18
feedback [1]   21/10
feet [2]   24/23 60/4
felt [1]   63/9
female [2]   38/24 39/6
Fever [3]   4/3 5/11 73/15
few [3]   41/12 64/12 78/22
fiction [1]   77/9
field [1]   74/18
fifth [1]   7/2
fifty [2]   12/16 44/13
figuring [1]   53/23
filed [1]   35/13
final [1]   38/2
Finally [1]   7/24
find [2]   48/9 51/18
fine [3]   39/21 39/25 80/25
first [25]   3/17 4/1 6/15 7/17 10/15 14/11 17/17 19/25 28/19 29/1 29/18 38/18 41/1 41/21 42/3 45/5 52/25 55/2 58/4 61/12 62/21 62/24 64/14 71/3 79/8
first-term [1]   38/18
five [4]   3/12 3/13 14/18 15/3
flaw [1]   59/14
floor [14]   3/20 12/3 13/9 23/18 24/10 26/24 31/19 36/1 36/8 60/4 66/24 70/7 70/23 80/3
Florida [1]   80/12
Flu [1]   9/3
focus [5]   37/6 44/2 51/13 51/15 67/18
focused [2]   12/11 25/11
focusing [1]   37/10
follows [3]   11/17 11/25 22/2
footnote [4]   19/2 19/20 21/16 38/17
foregoing [1]   85/11
forget [1]   59/16
form [1]   24/17
former [1]   13/10
formulation [1]   76/10
fortunately [4]   46/23 55/8

## F

**fortunately... [2]** 58/8 62/14
**forward [6]** 9/7 13/3 39/12 39/21 49/24 70/21
**found [1]** 47/18
**foundation [1]** 49/10
**founders [4]** 5/14 6/1 8/19 75/1
**founding [4]** 5/20 6/4 33/15 76/17
**four [6]** 5/14 42/10 42/11 64/17 64/17 81/22
**four/eight [1]** 81/22
**fours [1]** 15/15
**framed [1]** 12/5
**framer [1]** 8/20
**framers [16]** 8/20 57/4 57/9 57/12 59/7 59/8 63/8 63/21 63/23 79/22 79/23 81/23 81/25 82/25 83/3 83/8
**framers' [2]** 8/8 27/14
**frankly [2]** 6/1 34/4
**frequently [1]** 83/24
**friend [9]** 10/1 12/25 41/3 41/20 42/7 64/12 72/10 73/11 79/9
**friend's [1]** 78/19
**front [1]** 82/5
**full [5]** 19/15 19/15 19/16 19/18 20/3
**fully [3]** 59/21 60/1 79/18
**function [5]** 27/18 31/23 32/3 37/2 52/19
**functions [1]** 35/1
**fundamental [7]** 27/3 27/4 27/24 28/7 28/8 75/13 79/14
**further [4]** 33/25 70/11 71/22 85/11
**future [2]** 82/10 82/10

## G

**galleries [1]** 32/15
**gallery [6]** 32/2 32/12 32/22 51/23 51/25 70/5
**game [1]** 35/3
**Garland [1]** 22/12
**gather [4]** 8/12 24/21 24/21 24/23
**gender [2]** 45/12 62/13
**general [5]** 26/11 26/20 43/19 43/20 52/8
**generally [1]** 38/25
**genuine [1]** 24/1
**Georgia [2]** 67/4 67/7
**get [19]** 2/16 3/8 26/22 31/4 40/5 41/10 42/2 50/10 50/16 50/16 52/12 52/21 54/21 55/24 57/2 59/13 67/4 82/7 83/16
**gets [2]** 55/21 79/20
**getting [4]** 21/10 25/25 43/12 56/17
**give [6]** 2/16 26/11 38/15 43/20 61/20 81/5
**given [8]** 5/14 28/5 39/16 43/16 43/19 44/1 48/24 61/2
**giving [2]** 3/21 25/15
**glad [1]** 52/6
**global [1]** 58/1
**go [18]** 10/10 20/24 21/23 28/18 37/24 39/17 39/20 40/4 40/19 42/12 48/5 49/24 50/21 55/2 55/21 58/16 64/10 82/19
**goals [1]** 60/21
**goes [7]** 23/7 32/19 54/1 61/16 68/23 70/11 73/12
**going [25]** 5/7 7/9 10/8 10/9 18/4 38/1 38/16 39/21 41/20
41/22 41/22 41/23 42/1 43/10 44/20 47/6 47/16 53/18 54/24 56/19 59/9 60/19 61/4 81/18 83/1
**good [6]** 2/9 2/10 22/6 22/15 48/24 83/25
**goodness [1]** 48/2
**got [11]** 17/19 28/12 29/3 30/3 41/10 45/1 46/24 48/15 48/18 58/3 67/7
**govern [1]** 52/9
**governing [3]** 25/3 60/23 68/22
**government [9]** 4/5 5/17 8/3 24/17 24/24 27/16 60/22 60/23 74/25
**governs [2]** 48/23 52/14
**grave [1]** 55/7
**Gravel [4]** 33/18 33/18 51/6 62/25
**great [2]** 41/16 58/8
**greater [1]** 4/17
**greatest [1]** 83/22
**GROGG [4]** 1/16 2/6 58/9 61/25
**ground [3]** 16/14 16/15 46/7
**grounds [2]** 50/3 67/17
**group [1]** 62/25
**guess [9]** 11/22 14/10 28/19 29/2 41/1 42/3 54/10 60/15 62/2

## H

**had [41]** 4/6 4/10 7/15 9/11 12/23 13/4 13/9 14/15 15/1 18/10 18/20 19/11 22/2 22/8 25/12 32/11 33/14 38/8 39/14 42/25 46/5 49/16 50/12 51/22 54/3 55/14 64/22 65/15 66/7 69/2 69/17 69/18 70/6 70/20 71/9 71/18 72/1 74/18 79/10 81/9 85/6
**half [2]** 18/22 75/18
**Hamilton [1]** 5/8
**Hampshire [1]** 1/13
**hand [6]** 30/8 30/10 36/20 56/11 56/13 56/20
**handful [1]** 16/10
**handled [1]** 47/7
**hands [2]** 65/22 69/22
**handy [1]** 46/22
**happen [1]** 26/10
**happens [2]** 12/25 83/24
**happy [3]** 10/4 61/25 82/13
**harder [1]** 51/14
**harms [1]** 28/6
**has [64]** 5/10 8/24 9/12 9/19 10/25 15/11 15/17 15/25 17/8 19/17 21/24 22/5 23/15 24/15 25/16 26/3 27/9 28/5 28/16 29/22 30/6 31/1 31/14 34/3 34/5 36/17 37/9 40/7 41/24 44/20 46/16 47/21 48/2 48/24 49/14 50/22 51/4 54/22 56/18 57/15 57/16 57/19 57/24 58/9 58/11 58/20 59/6 59/6 59/7 59/10 62/14 64/24 66/13 67/11 69/4 69/21 69/22 73/14 75/7 75/8 76/15 77/25 79/16 82/13
**hasn't [1]** 73/16
**hasten [1]** 35/4
**have [112]**
**HAVEMANN [3]** 1/17 2/6 46/24
**haven't [2]** 18/22 39/13
**Havenmann [1]** 61/24
**having [4]** 14/25 22/12 22/21 53/23
**he [81]** 4/6 4/10 5/2 12/24

12/25 13/4 13/5 15/20 19/23 36/2 36/3 36/10 36/14 36/6 42/5 42/6 42/10 42/11 42/21 42/21 42/23 42/24 42/25 43/1 43/2 43/2 43/3 43/17 44/6 44/11 45/7 45/23 45/25 46/24 47/25 50/1 51/1 51/2 52/6 53/1 53/7 54/2 54/10 54/11 55/20 59/6 59/6 59/10 60/9 64/17 64/19 64/21 64/22 64/22 64/23 64/23 64/25 65/3 66/14 68/9 68/9 69/3 70/4 70/11 71/1 71/5 71/16 71/20 71/25 72/1 72/5 72/12 74/15 75/24 78/25 80/8 80/8 80/11 80/14 80/15 80/20
**he's [14]** 12/24 13/1 42/4 44/6 50/23 53/19 53/20 53/20 53/21 54/12 72/20 72/21 72/21 80/19
**head [2]** 20/20 78/5
**headquarters [1]** 74/3
**health [2]** 4/1 55/8
**hear [5]** 2/19 2/20 3/5 37/21 45/2
**heard [4]** 50/7 51/2 82/24 83/3
**hearing [4]** 1/9 22/12 32/24 85/8
**Hearst [3]** 50/4 50/9 50/10
**heart [2]** 52/4 55/24
**heavily [2]** 47/15 49/2
**held [12]** 14/14 14/21 15/4 16/19 16/23 36/9 53/2 53/11 68/21 69/12 69/14 69/19
**help [3]** 28/21 49/25 79/4
**helpful [1]** 2/12
**helps [2]** 21/12 55/6
**Henderson [1]** 63/13
**her [3]** 13/24 28/4 44/10
**here [43]** 10/9 18/10 19/16 20/18 22/7 29/8 29/8 29/19 30/8 30/22 34/18 35/5 35/24 36/2 36/6 38/7 41/9 43/23 44/8 45/8 45/15 49/20 50/14 52/4 53/13 54/13 55/7 57/24 58/17 59/5 60/13 61/10 61/16 62/15 64/7 66/17 68/23 69/19 71/9 79/10 79/18 80/13
**here's [1]** 19/13
**hereby [1]** 85/5
**hereto [1]** 85/15
**hesitate [1]** 3/2
**highly [1]** 62/11
**him [1]** 35/15 36/7 51/2 53/1 65/4
**himself [4]** 42/10 43/1 54/1 64/16
**his [43]** 4/19 10/2 10/4 10/4 12/25 13/6 13/24 15/19 22/13 22/13 23/18 28/3 28/3 35/13 35/15 35/19 35/25 36/2 36/8 36/9 42/4 42/12 43/6 44/3 44/7 44/9 44/12 44/15 45/3 53/9 53/24 60/8 60/18 63/14 64/14 64/20 64/23 70/16 70/19 71/3 71/16 71/22 80/9
**historical [3]** 5/23 9/9 9/20
**history [8]** 3/18 8/17 8/19 8/22 8/23 9/14 27/5 75/19
**hit [1]** 53/16
**hold [3]** 24/1 37/20 48/9
**honor [217]**
**Honor's [1]** 61/12
**HONORABLE [1]** 1/9
**honored [1]** 76/10
**hope [6]** 29/7 39/13 40/20 41/4 56/22 62/1
**Hornbook [1]** 11/6

## H

horribles [1] 55/20
house [107]
House's [1] 35/16
houses [11] 4/21 5/6 5/16
6/12 7/8 7/10 7/25 8/6 18/2
58/22 73/1
how [13] 26/10 31/5 33/4
41/24 42/12 50/15 52/21
53/23 58/22 59/2 59/9 62/4
67/19
however [1] 26/13
hum [1] 23/23
Humphrey's [1] 49/12
hundred [1] 12/15
Hungar [1] 52/9
Hurtado [2] 81/3 81/5
hypo [1] 12/20
hypothetical [5] 19/24 20/1
20/3 44/12 67/15
hypotheticals [6] 19/21
39/10 67/2 67/13 67/24 68/6

## I

I'd [4] 19/1 20/25 64/12
80/9
I'll [8] 2/16 2/25 11/2 12/7
29/1 46/25 54/23 81/4
I'm [68] 2/15 4/12 4/25 5/25
10/3 10/7 10/8 10/21 11/10
11/23 11/24 16/14 17/4 17/6
17/12 17/16 18/3 19/3 20/23
23/16 29/4 29/17 29/22 29/24
30/8 31/13 32/7 32/13 36/10
38/1 38/16 39/21 41/1 41/19
41/22 41/22 41/23 41/25 43/8
47/10 47/10 47/12 47/13
47/25 52/6 52/10 52/14 52/23
52/23 53/1 53/15 53/16 53/22
54/24 56/23 57/15 60/19
61/25 62/7 62/9 62/13 62/19
75/20 75/23 79/10 80/13 82/7
82/13
I've [14] 2/11 2/14 7/4 8/17
14/12 21/4 21/15 22/8 33/2
41/9 41/19 50/7 70/2 78/17
ideas [1] 2/14
identical [1] 11/4
identified [1] 20/2
ignore [4] 48/4 50/24 72/22
79/13
ignored [1] 72/17
II [2] 4/20 4/24
illness [1] 56/17
illuminating [1] 18/5
illusory [1] 69/15
illustrative [1] 39/10
Imagine [1] 38/17
immediately [1] 82/11
immunity [5] 31/14 31/14
33/9 33/13 35/4
immunizing [1] 5/4
impeachment [1] 7/20
impetus [1] 9/9
implementing [1] 33/9
importance [1] 36/6
important [11] 19/13 29/19
48/21 49/1 58/5 63/10 63/22
63/24 76/22 79/20 81/20
importantly [3] 22/7 36/4
50/7
importuning [2] 32/17 70/7
impossible [1] 6/9
impunity [1] 63/6
inapposite [1] 73/23
includes [1] 46/18
including [1] 70/21
incompatible [3] 15/22 16/9
20/16

## 

inconsistent [1] 35/20
incredibly [1] 51/21
indeed [1] 65/12
independence [1] 32/12
independent [6] 27/22 28/6
41/14 45/8 50/3 82/5
indicate [1] 23/9
indicated [1] 83/15
indicating [1] 76/7
indication [1] 48/24
indistinguishable [2] 14/13
35/11
individual [6] 18/15 22/25
45/10 49/17 62/12 69/13
individually [1] 18/12
individuals [5] 24/3 24/23
59/1 68/1 81/6
indulge [1] 54/24
ineligible [1] 12/1
inextricably [1] 27/22
inflicted [1] 18/8
informal [1] 10/9
informing [1] 27/6
infringed [2] 35/25 38/8
infringement [1] 38/11
initial [2] 3/8 48/14
initially [1] 12/11
injunction [2] 1/9 85/7
injured [3] 53/24 67/19
67/25
injuries [2] 63/15 63/16
injury [21] 11/22 17/25 18/8
18/12 18/14 18/16 18/22 20/8
20/14 23/3 44/6 44/7 44/8
44/10 67/23 68/5 69/12 69/14
69/19 69/20 69/21
instance [2] 13/17 54/7
instead [6] 12/15 14/25
24/19 26/12 80/16 81/9
institution [1] 18/13
institutional [8] 17/25 18/8
18/14 18/14 18/16 18/21
21/19 21/22
instructed [1] 41/24
instructions [3] 42/24 82/5
83/2
instructive [1] 5/21
instructs [1] 11/2
integral [3] 29/11 33/19
36/18
integrity [1] 29/16
intendment [1] 72/16
inter [4] 16/6 16/18 17/2
45/24
inter-branch [4] 16/6 16/18
17/2 45/24
interest [1] 41/17
interesting [6] 42/9 42/12
45/23 47/14 54/7 55/3
interests [1] 32/18
interfere [4] 41/25 58/21
63/12 63/25
internal [3] 41/25 46/11
47/16
Internet [1] 57/21
interpret [1] 72/20
interpretation [3] 6/8 9/21
72/19
interpreted [2] 76/8 81/6
interpreting [1] 32/14
intertwined [1] 27/22
intra [8] 16/2 16/4 16/5
17/2 17/23 17/23 18/3 46/1
intra-branch [4] 16/2 17/2
17/23 46/1
intra-house [2] 16/5 17/23
invalid [24] 12/1 12/4 13/8
13/12 13/13 13/17 13/18
13/23 13/25 13/25 14/3 14/22

## 

14/23 27/25 28/9 49/12 64/24
invalidate [1] 26/19
invariably [1] 37/19
invented [1] 73/16
invidious [1] 67/17
invite [2] 17/10 19/1
invited [1] 70/2
inviting [2] 72/20 72/21
involved [4] 30/12 32/22
45/24 62/16
involving [2] 8/19 35/9
irreconcilable [2] 15/21
34/7
irrelevant [1] 66/12
is [305]
isn't [4] 29/24 34/15 43/22
52/1
issue [4] 5/22 58/7 58/16
70/5
issues [3] 8/14 10/10 54/23
it [220]
it's [58] 3/7 4/25 10/20
11/16 12/9 12/16 13/25 15/18
16/5 16/22 17/14 18/4 19/2
20/7 20/13 20/13 21/6 21/20
25/13 25/15 25/23 29/8 34/7
35/3 38/25 42/11 43/8 43/13
44/17 45/15 47/9 48/3 48/4
48/7 48/16 50/6 51/1 51/16
52/20 53/19 55/3 58/8 59/3
59/8 59/9 59/20 60/23 61/1
67/18 68/11 69/21 75/9 75/10
76/16 76/22 77/7 83/21 83/21
Item [3] 16/14 16/16 18/8
its [29] 4/1 5/1 6/8 6/10
7/15 9/23 15/6 16/3 19/11
19/14 19/15 19/16 19/18 25/2
25/4 27/16 35/17 46/17 52/13
52/13 55/18 61/3 69/21 75/7
76/5 77/5 78/1 79/12 79/13
itself [15] 6/7 16/4 16/16
20/15 21/3 26/6 30/13 31/25
32/11 33/16 38/16 76/5 76/8
80/17 82/22

## J

Jagt [3] 15/7 15/18 49/11
jail [1] 81/10
James [2] 4/8 4/10
jaundiced [4] 30/18 30/19
31/2 37/12
Jefferson [4] 5/8 58/10
74/13 74/17
job [1] 83/22
Jones [6] 30/1 30/2 30/11
30/17 33/1 36/23
JOSE [2] 1/13 2/4
journal [10] 7/3 34/24 51/21
77/13 77/21 77/23 77/25
80/23 80/23 80/24
journey [1] 74/18
judge [10] 1/10 2/18 3/10
20/16 22/12 35/16 35/18 48/2
63/13 81/12
judging [1] 64/25
judgment [2] 57/5 57/7
judicial [3] 32/5 36/12
72/24
July [3] 1/6 85/10 85/16
jump [3] 41/7 47/10 47/22
June [1] 5/19
jurisdiction [2] 29/14 36/19
jurisdictional [1] 41/13
jurisdictional/justiciability
[1] 41/13
jurisprudence [2] 29/10 34/8
just [51] 6/14 10/10 12/22

**J**

just... **[48]** 12/24 13/25 14/10 14/12 15/24 18/6 19/5 19/6 19/8 20/13 21/4 21/9 28/20 33/2 33/3 35/24 36/2 36/12 36/25 38/5 41/19 43/4 43/10 43/12 43/16 46/19 47/1 47/4 47/23 49/25 51/9 52/20 60/19 62/9 65/18 66/17 66/21 67/8 68/3 70/24 75/20 78/21 79/1 79/5 81/15 81/17 81/20 83/19
Justice **[3]** 57/1 57/8 81/21
justices **[1]** 81/22
justiciability **[1]** 41/13
justification **[1]** 3/23
justly **[1]** 75/5

**K**

Kagan **[2]** 57/1 57/8
Kagan's **[1]** 81/22
Kansas **[2]** 18/19 19/9
keep **[3]** 56/19 61/4 70/16
KEVIN **[3]** 1/3 2/2 85/8
key **[9]** 6/14 16/8 24/25 29/22 29/23 30/6 35/17 58/17 82/7
killed **[1]** 9/4
kind **[10]** 4/2 9/10 20/2 20/9 28/19 44/20 46/9 58/13 67/11 67/22
king **[1]** 63/9
Kirk **[1]** 1/12
knew **[1]** 79/23
know **[26]** 2/14 6/16 10/1 14/1 22/11 29/9 31/4 33/18 34/23 35/21 41/8 41/12 42/5 42/7 44/23 44/23 50/25 51/2 52/24 54/9 56/24 60/20 66/11 68/8 76/10 79/25
known **[1]** 6/4
knows **[1]** 83/23

**L**

Labor **[1]** 40/13
lack **[3]** 10/16 22/24 23/1
lacked **[2]** 16/19 16/24
language **[1]** 81/4
large **[1]** 56/16
last **[8]** 25/11 33/3 45/6 80/22 81/1 82/18 82/20 83/15
later **[2]** 32/20 40/22
law **[11]** 13/13 19/10 19/24 22/6 22/16 23/3 32/23 48/1 48/22 48/25 51/12
lawsuit **[1]** 35/14
leadership **[2]** 40/18 55/5
leading **[1]** 35/8
learn **[1]** 25/24
least **[10]** 9/13 12/21 15/25 34/3 34/9 34/11 51/8 68/8 71/16 76/15
leave **[1]** 71/23
left **[2]** 34/19 82/9
legislating **[2]** 51/17 51/19
legislation **[7]** 8/15 40/15 44/13 59/23 60/3 74/19 80/3
legislative **[28]** 8/11 18/1 24/1 24/6 25/4 26/6 29/13 29/16 30/7 30/9 30/9 30/16 30/16 30/21 31/14 33/8 33/10 35/4 36/19 36/21 36/21 37/1 37/2 37/7 47/2 51/16 52/20 76/18
legislators **[2]** 56/16 56/17
legislators' **[1]** 32/12
legislature **[2]** 6/5 18/20
length **[1]** 70/1
less **[2]** 4/9 45/13

lest **[1]** 50/5
let's **[7]** 13/10 44/2 44/12 45/5 50/21 51/13 55/2
letter **[18]** 1/16 2/5 2/18 3/4 10/2 11/9 15/19 17/7 22/23 26/21 39/17 40/4 40/5 58/9 64/18 65/6 71/13 78/20
Letter's **[2]** 64/13 72/4
level **[1]** 2/17
lies **[1]** 37/2
light **[3]** 4/7 47/3 74/7
like **[22]** 2/20 13/25 14/18 19/1 20/19 20/25 26/13 29/2 43/4 46/19 47/24 48/13 49/7 52/2 54/10 59/20 63/11 63/13 64/12 66/18 80/9 83/22
likens **[1]** 65/6
limit **[2]** 4/24 70/18
limited **[3]** 73/24 73/25 75/11
limiting **[1]** 25/4
limits **[3]** 25/6 25/6 62/15
line **[7]** 16/13 16/16 18/8 39/2 46/17 46/18 49/4
lines **[3]** 19/5 21/3 34/2
Lisa **[5]** 1/21 2/7 85/3 85/19 85/20
listen **[2]** 8/13 25/24
listened **[1]** 45/2
listeners **[1]** 21/9
listening **[1]** 37/21
litigated **[1]** 53/8
little **[4]** 2/19 12/10 23/11 39/2
live **[1]** 70/16
lobbied **[1]** 31/25
lobby **[1]** 70/7
local **[1]** 12/2
logic **[2]** 60/2 60/18
logical **[1]** 59/13
long **[3]** 41/3 65/13 82/10
long-time **[1]** 41/3
longer **[4]** 47/6 50/8 57/23 57/23
longest **[1]** 41/19
look **[4]** 50/11 54/24 55/25 80/23
looking **[5]** 40/10 47/10 52/11 81/3 81/3
looks **[1]** 48/13
lost **[1]** 70/16
lot **[2]** 42/6 73/14
louder **[1]** 3/1
lower **[1]** 53/5

**M**

machine **[3]** 55/23 85/5 85/13
machines **[1]** 54/10
made **[25]** 2/14 9/23 11/14 15/25 28/16 31/20 38/10 46/14 52/7 57/24 58/15 58/20 59/18 62/18 63/8 64/2 67/11 71/4 71/13 73/14 73/18 74/1 74/17 79/21 80/19
Madison **[10]** 4/8 4/10 4/11 4/19 4/23 4/25 7/6 58/3 61/6 73/4
Madison's **[1]** 24/18
magnitude **[1]** 4/17
main **[2]** 10/13 60/9
maintain **[1]** 36/10
major **[2]** 50/13 56/15
majority **[22]** 6/20 27/8 47/17 47/19 57/1 57/8 65/20 69/10 69/13 69/14 69/16

69/16 69/18 69/20 69/20 72/7 73/20 74/6 74/22 78/10 78/13 80/1
make **[18]** 2/25 11/9 20/19 21/10 24/21 25/15 25/21 31/8 41/4 44/7 54/11 55/3 57/2 63/21 64/12 65/20 78/22 82/23
makes **[4]** 10/13 63/2 66/14 77/24
making **[6]** 6/9 32/23 42/4 49/21 58/21 62/19
male **[1]** 39/5
manner **[1]** 19/13
many **[7]** 6/13 9/11 9/18 30/11 69/17 72/14 74/10
Marbury **[1]** 73/4
Maryland's **[1]** 6/4
material **[3]** 50/11 50/17 81/10
materially **[1]** 35/10
math **[1]** 12/20
mathematical **[4]** 12/4 12/6 22/16 22/17
mathematically **[1]** 14/16
matter **[6]** 42/25 62/4 63/2 65/12 67/8 68/25
matters **[3]** 29/13 30/7 33/21
may **[16]** 3/10 6/21 6/22 19/6 28/17 28/18 33/1 34/6 60/6 60/9 62/8 63/16 75/9 76/9 78/21 79/13
maybe **[2]** 53/15 63/4
McCARTHY **[6]** 1/3 2/3 59/17 59/20 59/22 85/8
McCarthy's **[1]** 80/18
McConnell **[4]** 12/5 20/10 22/10 68/25
McConnell's **[1]** 22/11
McCormack **[2]** 35/10 52/25
me **[36]** 2/16 2/19 2/20 2/25 2/25 6/13 6/17 7/16 12/8 12/9 12/22 14/10 15/25 19/5 23/7 28/22 31/4 31/10 31/22 40/4 40/5 40/11 40/25 43/13 46/24 46/24 48/9 53/25 54/24 61/13 61/20 64/6 69/9 76/13 76/15 82/24
mean **[6]** 10/7 45/9 52/13 56/11 79/24 81/16
meaning **[9]** 4/9 5/1 9/16 9/21 52/9 58/10 72/14 72/22 73/6
meaningful **[1]** 5/21
means **[11]** 5/24 27/7 42/10 52/11 52/14 56/10 57/21 69/21 79/23 81/16 81/16
meant **[4]** 12/23 55/13 55/16 80/7
measure **[3]** 65/2 69/11 69/11
measures **[1]** 39/1
mechanical **[1]** 1/24
mechanism **[1]** 54/6
meet **[4]** 74/18 74/20 74/23 82/3
meeting **[1]** 7/17
member **[47]** 3/21 10/22 10/25 11/2 11/12 11/12 13/10 13/21 14/24 18/15 22/18 23/15 23/17 24/7 24/12 25/20 25/20 26/9 26/11 26/17 26/19 28/2 28/3 28/4 28/5 35/12 36/1 44/1 44/9 44/14 45/12 55/21 59/23 59/24 59/24 60/7 62/11 65/19 66/3 66/7 66/8 67/19 69/13 69/13 78/5 78/16 81/14
member's **[5]** 38/8 38/11 39/5 65/8 67/20
member-elect **[1]** 35/12

## M

members **[114]**
memory **[2]** 69/8 73/24
men **[1]** 63/5
mention **[1]** 75/6
mentioned **[9]** 7/4 19/9 21/4
22/9 36/16 38/16 38/23 55/20
58/18
mentions **[3]** 46/8 69/7 71/1
merely **[2]** 43/3 55/22
merged **[1]** 23/11
merges **[1]** 26/25
merit **[1]** 66/20
merits **[16]** 10/3 11/23 11/24
23/8 25/1 30/24 41/7 41/9
42/2 44/6 52/12 53/15 54/21
55/2 71/2 71/22
met **[1]** 79/18
method **[5]** 54/15 65/10 65/23
66/12 79/15
metric **[1]** 35/11
Michel **[40]** 12/5 14/13 15/15
15/18 17/10 20/5 20/10 20/10
20/17 21/23 22/5 22/9 22/15
44/21 44/21 46/9 46/10 46/19
49/2 49/3 49/5 49/8 49/10
49/13 49/13 49/14 49/19
49/25 66/13 66/14 67/1 67/11
68/12 68/15 68/18 68/20
68/23 68/25 69/1 69/3
might **[7]** 25/20 39/14 53/15
62/9 62/13 68/3 68/3
million **[4]** 9/5 9/6 55/14
55/16
mind **[6]** 2/15 41/20 47/23
56/21 81/19 81/21
minutes **[1]** 78/22
misheard **[1]** 53/1
missed **[1]** 54/25
misspoke **[1]** 51/1
mistake **[1]** 31/8
mitigated **[1]** 6/2
mitigating **[1]** 75/3
mode **[1]** 79/15
modern **[3]** 9/11 73/20 74/7
modes **[1]** 73/20
moment **[10]** 21/9 29/1 31/22
47/1 47/23 53/14 54/24 77/14
77/16 81/5
momentarily **[1]** 26/1
money **[1]** 19/4
Moore **[7]** 46/9 46/11 46/19
47/5 47/6 47/8 49/11
moot **[1]** 53/9
more **[23]** 4/14 7/11 12/11
12/12 16/1 21/10 23/11 28/21
29/19 36/4 38/12 39/2 47/13
50/6 51/18 51/19 52/21 53/15
58/5 61/20 73/20 75/20 78/22
most **[2]** 9/22 9/23
motion **[2]** 3/8 78/16
motions **[1]** 59/18
move **[3]** 14/9 45/5 61/7
moving **[3]** 20/21 53/14 71/13
Mr **[61]** 3/4 10/1 12/9 15/19
17/7 21/8 22/23 26/21 39/17
39/23 40/4 40/5 41/3 41/6
41/7 41/17 42/4 42/15 43/5
43/16 43/18 45/1 45/2 45/6
45/22 47/23 49/2 49/7 49/21
49/25 50/22 51/1 51/15 52/15
52/24 53/13 53/16 55/24 56/7
58/2 58/6 58/9 58/18 58/24
59/6 59/12 60/8 60/15 61/5
61/9 61/13 64/18 65/6 71/13
72/3 78/20 79/9 79/18 79/21
80/6 80/22
Mr. **[58]** 2/4 2/4 2/5 2/6
2/19 3/7 4/11 37/20 37/24
42/7 42/9 42/13 42/15 42/20
43/7 43/9 45/16 46/3 46/12
46/24 47/21 48/1 48/21 52/5
52/8 53/17 53/18 53/22 53/23
53/25 54/2 54/3 54/5 54/5
54/5 54/8 54/8 54/11 54/14
55/19 58/3 58/4 59/17 59/20
59/22 59/25 61/24 61/25 62/3
64/5 64/10 64/13 64/19 80/5
80/6 80/11 80/18 80/20
Mr. Adam **[1]** 2/6
Mr. Charles **[1]** 2/4
Mr. Cooper **[16]** 2/19 3/7
37/20 37/24 44/5 46/3 46/12
47/21 48/1 48/21 52/5 55/19
58/4 59/25 64/5 64/10
Mr. Cooper's **[2]** 45/16 62/3
Mr. Crist **[10]** 53/22 54/3
54/5 54/5 54/8 54/11 54/14
58/3 58/4 80/6 80/11
Mr. Crist's **[1]** 80/20
Mr. Douglas **[1]** 2/5
Mr. Grogg **[1]** 61/25
Mr. Havemann **[1]** 46/24
Mr. Havenmann **[1]** 61/24
Mr. Jose **[1]** 2/4
Mr. Letter's **[1]** 64/13
Mr. Madison **[2]** 4/11 58/3
Mr. McCarthy **[3]** 59/17 59/20
59/22
Mr. McCarthy's **[1]** 80/18
Mr. Raskin **[7]** 42/7 42/9
42/13 42/15 43/9 43/24
64/19
Mr. Swayze **[6]** 53/17 53/23
53/25 54/2 54/5 54/8
Mr. Swayze's **[1]** 53/18
Mr. Tom **[1]** 52/8
Ms. **[1]** 2/7
Ms. Lisa **[1]** 2/7
much **[7]** 3/5 3/10 7/11 34/11
51/14 73/19 82/9
must **[15]** 11/7 11/9 11/23
15/21 26/23 27/11 27/12
27/12 37/12 41/15 52/18
60/15 76/9 76/12 77/24
mute **[4]** 21/11 37/21 37/23
37/23
my **[43]** 2/15 9/25 10/1 10/3
10/15 11/7 11/8 12/20 14/11
17/13 23/5 26/13 28/20 31/5
38/1 40/21 41/1 41/3 41/20
42/7 42/7 47/11 52/7 52/23
54/24 58/8 60/19 61/21 64/12
66/20 70/24 71/15 72/10
73/10 75/6 76/15 78/18 79/9
83/21 85/6 85/13 85/14 85/15
myself **[1]** 72/3

## N

name **[1]** 85/16
NANCY **[3]** 1/6 2/3 85/9
nation **[2]** 4/2 61/1
nation's **[2]** 3/17 8/24
nations **[1]** 8/23
nature **[3]** 14/5 24/17 26/2
nays **[2]** 6/24 6/25
near **[7]** 41/9 43/23 80/1
necessarily **[5]** 11/21 14/4
14/23 18/1 71/25
necessary **[5]** 3/19 29/16
40/3 64/9 76/7
necessity **[2]** 26/17 27/14
need **[7]** 10/8 39/18 39/23
40/22 64/5 64/9 83/18
needed **[2]** 40/2 48/20
needs **[2]** 24/4 40/16
neither **[1]** 75/1
never **[7]** 12/25 15/17 15/18

24/15 48/24 58/18 69/4
vaguenesses **[1]** 60/2
new **[3]** 1/13 45/12 78/25
next **[3]** 2/17 20/19 40/12
NLRB **[1]** 81/14
no **[68]** 2/14 4/9 5/10 5/15
5/23 10/7 11/1 18/15 19/22
21/25 24/14 25/3 26/14 26/18
27/1 31/8 39/15 39/15 39/24
41/21 42/11 42/14 42/20
42/21 42/25 43/8 43/18 44/8
44/9 45/7 45/9 45/9 47/6
47/18 47/19 48/7 49/5 49/20
49/24 50/8 50/13 50/20 51/7
53/10 53/12 54/16 55/1 55/23
57/23 57/23 58/11 58/15 60/2
61/10 62/4 63/16 64/6 64/18
67/2 67/4 67/20 67/21 67/23
69/2 69/19 74/13 74/22 82/5
nobody **[5]** 43/14 54/13 54/17
58/12 77/7
Noel **[1]** 9/23
non **[8]** 14/2 23/9 31/15
33/13 66/7 66/8 66/17 66/19
non-citizens **[1]** 14/2
non-delegation **[1]** 23/9
non-member **[2]** 66/7 66/8
non-members **[2]** 31/15 33/13
non-present **[2]** 66/17 66/19
none **[1]** 45/16
North **[1]** 57/14
not **[159]**
note **[5]** 18/3 18/4 18/25
31/12 60/20
noted **[5]** 4/23 29/21 63/4
63/5 64/17
notereading **[1]** 1/24
notes **[7]** 47/11 52/23 60/19
61/21 70/24 80/6 85/13
nothing **[9]** 22/21 22/24
34/19 43/25 57/17 61/17
61/25 71/18 78/7
noting **[1]** 76/10
notion **[3]** 67/18 75/3 80/1
notwithstanding **[2]** 11/15
70/20
now **[40]** 3/5 3/24 4/15 9/13
10/5 10/10 10/21 13/24 14/8
15/17 16/14 17/16 28/14
29/22 32/7 36/10 37/23 38/1
42/17 43/18 45/22 46/18
48/13 49/1 49/7 52/5 53/16
53/19 55/8 56/7 57/20 58/2
58/24 61/2 68/14 69/23 73/17
76/13 79/1 80/6
nowhere **[6]** 43/23 57/11
72/23 73/2 79/19 80/1
null **[6]** 11/14 12/18 13/8
13/22 19/14 44/3
nullified **[2]** 19/8 19/12
nullities **[1]** 13/22
nullity **[3]** 11/13 11/16
12/13
number **[6]** 1/3 6/21 36/3
41/4 73/8 85/9
numbers **[3]** 12/13 18/20
44/11
NW **[2]** 1/13 1/22

## O

observe **[1]** 34/6
observed **[1]** 67/12
obtained **[3]** 50/12 50/18
79/17
obvious **[3]** 5/1 41/6 47/24
obviously **[12]** 2/12 13/1
43/20 45/16 48/21 50/22
54/16 56/11 63/22 63/23 80/8
80/12

**O**

occasion [1]   22/8
occasions [3]   4/20 9/11 9/18
occur [2]   5/25 32/24
off [2]   13/11 68/11
offer [1]   6/13
offered [4]   19/21 26/19 35/6
  71/16
offering [1]   65/5
office [2]   1/17 14/2
officers [5]   16/13 31/16
  33/8 35/1 37/19
official [5]   67/25 85/3 85/6
  85/12 85/20
officially [1]   80/2
officials [2]   36/3 36/4
oh [7]   47/13 48/2 48/16
  52/24 79/10 79/10 80/22
okay [17]   2/23 14/6 17/13
  17/19 17/20 20/24 25/10
  27/19 28/10 30/4 34/14 40/10
  40/19 46/21 48/15 50/21 79/8
old [6]   12/24 50/5 50/8
  64/12 72/10 73/10
OMB [1]   16/12
omits [1]   72/12
once [5]   11/14 36/25 39/6
  58/18 64/21
one [83]   4/17 5/3 6/15 7/2
  7/5 8/1 9/16 10/15 10/22
  10/23 10/23 12/15 12/16
  12/16 13/16 13/20 13/20
  14/18 14/25 15/2 16/2 16/6
  23/13 23/21 24/6 26/21 27/7
  27/9 27/15 27/16 28/1 28/5
  30/8 30/12 31/22 32/3 34/22
  35/9 35/15 36/20 38/15 38/23
  44/15 44/17 45/1 45/6 45/17
  45/23 46/12 47/5 47/13 51/7
  51/14 52/1 53/20 55/21 56/9
  58/14 59/23 59/24 59/24 60/7
  60/7 60/20 60/20 61/15 61/20
  62/3 64/15 64/16 64/20 64/22
  65/3 71/17 72/6 74/12 74/16
  76/3 81/21 82/17 83/4 83/4
  83/21
one-fifth [1]   7/2
ones [3]   6/14 23/25 47/6
online [1]   40/11
only [25]   8/2 10/21 10/23
  11/18 27/19 29/10 31/12
  34/21 37/13 39/6 42/1 42/24
  44/16 44/17 51/3 51/7 64/21
  64/22 65/3 74/11 76/20 77/18
  78/14 80/3 80/9
open [1]   2/15
operate [3]   50/15 58/23
  58/24
operation [1]   10/21
operations [1]   41/25
opined [1]   5/9
opinion [4]   16/15 56/22
  63/14 81/22
opinions [1]   81/1
opposed [4]   16/25 17/2 17/22
  67/9
opposing [1]   41/1
opposite [5]   41/6 44/21
  66/14 69/5 83/24
opted [1]   24/19
option [2]   9/2 9/7
optional [1]   8/25
oral [1]   19/22
order [13]   11/8 27/7 27/17
  28/22 30/9 30/16 36/21 37/1
  50/10 52/24 56/5 72/6 76/2
orderly [1]   10/6
orders [2]   4/17 58/7
organization's [1]   32/21

**P**

original [1]   44/12
other [53]   5/15 6/3 7/19
  8/3 8/5 8/5 8/24 12/17 14/19
  14/24 16/3 17/1 17/22 24/11
  25/22 30/10 30/11 30/14 33/6
  34/7 34/12 35/23 37/14 42/16
  42/23 43/4 43/24 43/25 44/8
  44/22 47/11 51/4 51/10 53/21
  54/18 56/14 59/22 60/7 61/5
  62/9 62/22 65/23 66/23 67/6
  69/15 71/9 73/5 73/19 74/24
  76/19 81/23 82/12
others [47]   47/12 55/22 62/22
  63/6
otherwise [3]   37/16 72/8
  75/4
our [46]   2/6 3/25 4/2 8/17
  8/19 8/20 8/23 13/3 13/6
  14/5 15/16 19/17 19/17 23/24
  24/17 25/1 25/9 29/20 30/24
  38/13 38/23 38/24 47/2 48/12
  48/12 55/6 55/6 55/9 56/8
  56/19 56/20 57/15 57/16
  57/25 61/1 61/4 63/25 66/14
  71/17 75/15 76/3 76/4 76/24
  81/2 81/2 82/5
out [32]   12/15 12/16 12/16
  14/11 16/25 17/17 17/18
  17/21 30/9 30/16 30/20 31/2
  33/10 34/25 36/5 36/21 37/11
  44/16 44/17 46/6 53/23 54/17
  55/11 56/8 56/13 58/9 66/25
  68/8 74/1 75/5 80/15 83/16
outlier [4]   34/5 47/25 48/3
  48/4
outlined [1]   71/17
outlook [1]   81/24
over [5]   4/16 14/25 15/2
  19/2 35/3
overlook [1]   6/10
overlooks [1]   11/6
overriding [1]   46/15
overruled [6]   15/17 15/19
  15/20 21/25 46/3 69/3
overrules [1]   49/19
overruling [4]   15/12 17/8
  46/10 49/4
overwhelming [1]   83/8
OWEN [2]   1/3 2/2
own [11]   11/19 13/6 35/17
  35/19 58/20 64/20 64/23
  69/22 72/12 75/7 78/1

**P**

p.m [1]   1/7
page [12]   17/11 21/16 29/5
  29/6 29/8 29/17 30/5 46/25
  56/9 57/10 68/11 82/1
pages [2]   19/2 85/11
pandemic [5]   3/25 9/2 9/6
  58/1 71/19
papers [2]   10/14 10/22
parade [1]   55/20
paragraph [1]   17/14
paraphrase [1]   75/14
parenthetical [3]   19/24 22/1
  22/2
part [8]   3/19 27/8 29/11
  29/19 33/19 51/22 81/21 82/8
participate [2]   7/15 24/10
particular [9]   6/19 23/22
  24/2 36/5 36/6 54/14 54/15
  56/5 73/7
particularly [2]   7/5 49/8
parties [1]   2/7
parts [3]   5/1 53/8 83/22
party [1]   82/6
pass [4]   59/23 60/3 74/22
  80/2

passage [9]   16/21 16/22 18/7
  62/25 72/8 76/3 76/6 82/21
  83/3
passages [4]   21/4 29/5 72/21
  72/22
passed [4]   38/18 40/16 65/3
  67/3
patience [1]   83/20
pause [2]   29/1 61/22
pay [2]   53/9 81/8
PELOSI [3]   1/6 2/3 85/9
people [13]   9/4 24/6 24/20
  31/25 43/15 44/16 44/22
  44/22 50/7 51/10 57/20 70/6
  71/15
people's [2]   8/11 82/12
percent [1]   4/16
percentage [1]   56/16
perfectly [2]   61/3 79/25
performed [2]   30/20 33/15
performs [2]   33/23 33/24
perhaps [3]   6/2 26/25 39/2
Periodical [1]   32/3
permanent [1]   74/25
permission [1]   28/15
permit [2]   65/12 74/19
permitted [4]   32/1 67/16
  75/25 76/1
permitting [1]   66/2
person [7]   5/16 25/8 25/12
  25/14 28/4 44/14 54/13
perspective [1]   28/2
perspectives [1]   28/1
persuade [1]   8/12
persuaded [1]   30/24
persuading [1]   15/20
persuasion [1]   2/16
pertain [1]   72/18
pertaining [1]   29/13
pertinent [1]   8/18
Philadelphia [7]   4/4 4/8
  4/13 5/12 5/19 6/3 74/18
Philadelphia's [1]   4/16
phone [2]   21/11 37/22
phrase [3]   7/16 7/23 83/4
phrases [5]   7/12 27/13 72/16
  75/17 76/25
phrasing [1]   19/14
physical [2]   57/12 61/17
physically [16]   44/15 44/16
  56/4 59/24 61/19 72/5 72/11
  72/12 72/18 79/20 79/24 81/9
  81/10 81/15 81/16 81/17
pick [1]   12/23
piece [1]   44/13
piggybacking [1]   49/22
pinpoint [1]   46/21
pitch [1]   2/16
place [14]   4/7 4/23 4/25
  5/12 7/24 8/3 8/5 21/1 55/5
  55/5 55/15 67/21 74/12 74/24
plague [1]   4/2
plain [1]   72/22
plainly [3]   15/5 67/22 76/25
plaintiff [7]   14/15 22/22
  23/14 23/22 71/4 71/5 71/7
plaintiffs [20]   1/4 1/12 2/4
  3/11 3/15 10/16 10/19 15/5
  18/21 23/14 35/24 38/24 47/3
  53/20 53/21 59/14 59/14
  59/17 59/18 59/22
plaintiffs' [3]   10/16 19/17
  38/6
pleading [1]   25/11
pleadings [1]   2/11
please [6]   2/25 3/10 31/11
  37/23 40/25 50/24
pleased [2]   52/10 52/15
pleases [1]   78/24

**P**

pleasure [2]  41/2 83/21
plentiful [1]  83/7
PLLC [1]  1/12
plus [3]  13/6 13/17 15/3
Pocket [1]  9/24
point [32]  2/24 9/23 14/11
19/17 20/19 26/22 34/1 38/2
38/4 47/9 47/23 54/22 55/2
58/17 59/12 61/5 64/14 66/14
66/25 71/3 71/4 73/13 75/24
76/4 76/13 77/21 78/18 79/21
80/15 82/17 82/20 82/22
pointed [3]  54/17 56/8 58/9
pointing [1]  14/11
points [16]  10/14 23/6 28/20
41/4 47/11 55/1 62/3 64/12
68/8 75/5 75/20 78/22 78/25
78/25 80/22 81/1
policing [2]  31/19 33/16
popular [2]  13/2 82/6
population [2]  4/16 9/5
portions [1]  47/2
positing [1]  19/24
position [5]  12/14 59/14
61/11 62/8 82/5
possible [1]  51/1
postdates [1]  68/21
Powell [16]  35/9 35/9 35/13
35/19 35/25 36/9 36/23 52/25
53/7 53/12 70/12 70/13 70/13
70/15 70/19 70/22
power [37]  4/10 4/19 5/10
6/8 6/9 16/17 18/1 18/9 24/1
24/5 24/6 24/9 24/22 25/4
25/8 25/8 25/16 25/21 26/16
35/16 35/18 38/9 38/11 40/17
54/18 58/11 58/22 59/15 61/3
72/24 73/2 75/6 75/7 75/8
75/9 75/11 77/16
powerful [1]  59/10
powers [3]  41/23 49/23 50/14
practical [2]  2/17 83/17
practice [4]  6/3 9/20 63/9
75/19
practiced [1]  6/5
practicing [1]  76/15
preceded [2]  47/14 73/18
precedence [1]  17/9
precedent [3]  15/12 30/5
50/9
precedes [1]  79/22
precisely [4]  21/3 21/15
52/3 66/17
preclude [1]  6/7
precluded [2]  5/13 10/3
predates [2]  76/14 76/18
predecessor [1]  52/8
preferences [1]  82/6
preliminary [2]  1/9 85/7
premise [3]  27/4 28/8 77/5
presence [19]  7/23 8/25
57/12 57/22 57/22 61/18
65/24 72/9 73/24 74/10 75/25
76/7 76/11 77/1 77/10 77/11
78/3 78/9 83/10
present [56]  2/8 3/21 6/12
7/2 7/2 7/16 7/21 7/22 7/22
10/25 11/12 11/18 13/21
25/20 26/17 27/10 27/11
27/17 28/3 28/4 40/7 44/14
44/15 44/17 56/4 56/10 56/10
64/23 65/8 65/11 65/16 65/19
66/3 66/17 66/19 71/24 72/5
72/12 74/12 76/9 76/12 76/20
77/6 77/8 77/11 77/12 77/20
78/11 78/13 79/20 79/24
79/25 81/14 81/16 81/17
83/11

**presentation [4]**  10/1 71/13
75/7 75/8 75/14
preserve [1]  29/16
President [13]  4/5 4/19 4/22
5/10 5/13 7/6 12/3 25/5 58/2
58/6 58/10 73/1 74/14
President's [1]  16/17
presidential [1]  82/11
press [7]  32/1 32/2 32/11
32/21 51/23 51/25 70/5
presumably [1]  71/23
presumed [1]  78/3
presumption [13]  77/3 77/4
77/4 77/6 77/9 77/10 77/14
77/22 78/6 78/9 78/10 78/12
78/15
pretty [2]  58/18 75/14
prevented [1]  22/20
previously [1]  70/1
primary [1]  26/25
principal [2]  8/19 8/20
printed [2]  57/10 82/1
prior [2]  57/21 59/19
private [3]  3/13 32/18 68/1
privilege [1]  32/17
problem [4]  46/1 50/14 50/23
53/10
problems [2]  56/15 79/6
procedural [2]  47/20 58/22
procedurally [1]  59/9
procedure [1]  79/22
proceed [8]  10/5 12/7 27/3
27/23 28/7 28/14 49/15 75/17
proceeding [3]  75/7 78/9
79/15
proceedings [6]  1/24 79/12
84/1 85/6 85/12 85/14
process [4]  27/18 29/17
30/13 65/6
processes [3]  29/12 29/12
33/20
produced [1]  1/24
produces [1]  22/17
prohibited [1]  11/4
prohibiting [1]  38/18
prohibits [1]  78/8
pronouncing [1]  56/23
proof [1]  78/3
proper [1]  9/21
properly [1]  72/25
proposition [10]  11/6 12/13
13/6 22/11 23/24 24/15 25/2
27/24 67/19 73/11
protect [4]  5/10 7/7 32/12
51/25
protected [3]  25/12 32/4
32/5
protecting [1]  70/8
protection [1]  26/3
provide [3]  6/20 23/16 23/17
provided [1]  23/15
provides [2]  6/25 53/12
providing [1]  10/24
provision [6]  4/24 8/1 9/10
9/17 26/18 83/4
provisions [7]  6/13 6/16 8/7
8/17 9/22 72/14 73/7
proximate [1]  13/1
proxy [47]  3/21 3/23 6/2
10/20 10/24 10/25 11/12
12/14 13/2 13/5 19/18 23/15
23/16 23/18 23/18 25/14
25/15 26/9 26/11 26/12 26/12
26/18 26/20 27/1 27/24 28/2
28/5 28/8 43/19 43/21 43/24
44/14 44/17 45/19 55/12
55/22 58/13 60/14 64/16 65/6
71/12 71/16 73/14 73/16
73/18 75/4 76/1

**public [4]**  4/1 14/1 55/8
62/8
Publications [2]  31/17 31/20
Puerto [1]  14/19
purchase [1]  57/20
purpose [2]  7/19 7/21
purposes [6]  13/14 29/20
39/10 64/25 65/20 81/14
pursuant [2]  35/15 66/7
pursued [1]  5/19
put [11]  4/6 13/3 15/25
21/11 37/23 55/5 55/5 55/15
77/17 78/2 82/2

**Q**

qua [3]  69/13 69/14 69/20
qualification [1]  35/21
qualifications [4]  35/17
35/19 35/23 37/3
quarrel [1]  37/9
question [16]  5/9 7/1 12/8
20/12 23/7 43/9 45/14 49/5
52/17 61/12 62/3 78/6 78/7
83/1 83/7 83/8
questioned [1]  80/24
questions [4]  40/6 54/22
62/1 82/13
quick [1]  82/17
quickly [2]  2/17 83/16
quiet [1]  73/19
Quill [1]  74/5
quite [8]  20/17 21/5 25/19
41/12 47/5 52/14 58/20 75/5
quorum [39]  3/19 6/15 6/21
27/8 40/7 56/5 60/11 60/13
60/15 61/13 61/14 65/17
65/20 65/25 66/4 66/4 72/7
73/7 76/1 76/2 76/4 76/7
76/11 76/12 76/21 77/1 77/3
77/7 77/11 77/11 77/15 77/15
77/17 78/3 78/3 78/4 78/7
78/9 81/15
quotation [2]  19/5 82/24
quote [5]  6/17 29/18 30/8
47/1 75/14
quoting [11]  4/12 4/25 5/4
10/21 16/14 17/16 29/9 29/15
29/22 32/25 36/10

**R**

race [1]  62/12
raging [1]  4/14
Raines [44]  15/10 15/24 16/5
17/7 20/15 21/2 21/2 21/3
21/14 21/15 21/17 22/5 22/20
22/21 22/24 22/25 38/16
38/17 41/23 45/5 45/13 45/15
45/21 45/22 45/24 46/2 46/3
46/3 46/8 47/3 47/12 47/14
48/20 48/21 48/24 49/1 49/3
49/10 49/19 49/23 50/2 68/10
68/14 68/24
raised [2]  62/3 79/1
raises [2]  58/17 59/12
Randolph [1]  50/10
Rangel [2]  51/6 63/14
Raskin [13]  12/24 13/15
13/18 42/7 42/9 42/13 42/15
42/15 42/20 43/16 43/24
64/15 64/19
Raskin's [1]  12/11
rather [1]  48/6
ravaged [1]  27/16
ravished [1]  4/3
RDR [1]  1/21
reach [1]  29/2
reaching [1]  10/3
reacting [1]  63/9
read [9]  2/11 6/10 10/14

## R

read... [6]  19/5 33/2 42/14
52/15 56/14 81/21
readily [1]  39/2 76/23
reading [3]  17/5 17/6 32/7
ready [4]  39/17 56/11 56/12
56/20
reaffirmed [1]  52/17
real [1]  69/19
reality [1]  27/22
realize [1]  11/14
really [4]  35/10 42/21 54/2
63/22
realm [1]  39/4
reason [7]  2/24 6/6 16/20
23/10 33/12 61/10 71/7
reasonable [4]  38/9 65/13
65/22 79/15
reasonably [2]  6/10 39/8
reasons [3]  41/7 47/24 71/18
rebuttal [1]  39/14
rebutted [1]  78/15
recall [4]  9/18 23/8 35/12
47/7
received [2]  4/6 13/4
recent [2]  28/23 56/22
recently [1]  9/22
reckless [1]  63/5
recognize [3]  8/1 42/3 68/9
recognized [4]  22/5 46/16
57/19 63/20
recognizes [1]  57/14
recognizing [1]  22/16
recollection [1]  31/5
reconcilable [1]  76/24
record [1]  19/6
recorded [7]  1/24 27/9 34/23
66/24 76/1 77/13 77/21
redress [4]  18/12 18/16
18/21 67/22
reduce [2]  57/9 81/25
reduced [1]  58/14
refer [1]  27/21
reference [4]  17/2 17/23
22/10 73/22
referencing [1]  20/10
referring [1]  29/5
reflected [1]  68/20
reflects [3]  48/21 69/5
80/24
refresh [1]  31/5
refuse [1]  43/2
regard [3]  49/8 79/9 80/5
regarding [1]  35/22
registered [1]  12/1
regulation [1]  32/22
rejected [2]  22/13 46/14
rejecting [1]  8/15
relates [1]  23/22
relating [1]  28/16
relation [2]  19/15 79/15
relevant [3]  8/18 35/5 35/11
relied [2]  47/15 52/5
relief [3]  54/1 67/20 69/21
rely [3]  47/3 49/8 65/18
relying [1]  49/2
remains [1]  80/5
remanded [1]  53/5
remedial [2]  49/15 49/18
remedy [2]  63/14 63/16
remember [8]  44/21 45/8 46/2
48/19 49/19 51/21 53/7 62/17
remote [3]  53/22 54/3 58/13
remotely [1]  60/14
removed [1]  52/1
repeat [1]  17/4
repeated [1]  6/11
reply [2]  19/23 56/9
reported [1]  85/5

reporter [10]  1/21 2/7 40/1
40/2 84/24 75/18 85/1
85/3 85/20
reporters [1]  32/16
represent [5]  24/3 24/4
24/24 25/23 71/9
representation [4]  25/23
26/2 26/4 71/8
representative [7]  12/24
13/15 13/18 42/8 53/7 53/18
59/18
representative's [1]  53/24
representatives [8]  1/15
3/12 7/24 8/9 8/11 47/8
55/17 56/18
represented [1]  55/16
republic [2]  24/17 24/19
requests [1]  4/6
require [2]  65/22 76/25
required [4]  51/15 54/13
56/25 69/9
requirement [5]  6/11 7/13
69/17 76/2 76/20
requires [3]  13/14 27/16
72/9
requiring [2]  47/17 67/14
research [1]  76/15
reserve [1]  40/21
reserved [1]  45/13
resolution [23]  3/16 3/17
11/10 21/21 31/2 33/24 34/22
35/2 35/15 35/25 36/5 36/14
37/18 38/18 38/21 38/21
38/22 38/24 39/5 42/14 66/10
71/11 71/23
resolve [1]  83/18
respect [10]  9/21 10/14
12/20 23/17 23/21 38/1 64/14
67/13 73/10 82/20
respective [7]  5/6 5/16 6/12
7/8 7/10 17/1 17/22
responding [1]  57/3
response [5]  23/5 31/19
48/20 64/12 82/18
responsible [2]  31/18 36/4
rest [2]  71/15 76/5
restraint [1]  75/13
restraints [3]  75/16 75/16
79/13
result [3]  32/1 65/4 79/16
retailers [2]  74/1 74/10
returning [2]  5/7 7/9
revealing [1]  68/19
reversed [1]  74/5
review [7]  30/22 32/5 36/13
38/22 39/11 72/24 72/25
Reynolds [1]  23/4
Rico [1]  14/19
Riegle [1]  49/11
right [27]  3/7 11/10 11/23
11/24 17/12 17/20 22/23
26/15 29/7 39/17 40/13 40/14
40/19 40/21 41/17 44/4 57/2
64/3 71/21 72/13 73/17 78/20
79/3 79/10 83/14 83/18 83/25
rights [7]  36/1 62/21 62/23
62/24 63/1 75/13 79/14
RMR [1]  1/21
role [2]  21/19 21/22
room [2]  56/5 72/6
root [1]  77/4
RUDOLPH [1]  1/9
rule [36]  3/24 6/8 10/20
11/4 14/18 14/18 22/3 25/14
26/9 26/10 26/19 42/3 42/24
44/17 47/17 47/20 52/13
55/18 58/21 60/21 62/5 66/8
67/3 67/8 69/8 69/9 70/4
73/24 74/5 75/16 79/16 80/14

80/17 80/18 80/21 80/25
80/25 81/1 81/2 81/4
rules [22]  22/22 26/15 32/12
32/15 45/18 51/24 52/9 52/13
56/2 58/20 59/2 59/5 60/12
61/3 65/12 69/15 75/6 75/7
75/12 79/12 79/13 80/9
ruling [1]  15/6
run [2]  12/22 31/11
rush [1]  10/7

## S

sadly [1]  8/23
sadness [2]  63/4 63/19
said [74]  9/19 15/17 15/18
17/15 18/3 18/15 20/9 20/9
21/17 29/8 30/5 30/19 33/11
36/24 37/5 37/9 37/10 39/8
43/18 43/24 45/6 45/7 45/25
46/5 46/17 47/22 48/2 49/13
49/14 50/13 50/15 50/20 51/3
51/5 51/15 51/21 51/23 52/7
52/18 53/2 55/18 56/25 57/11
58/2 58/10 59/8 62/20 62/24
63/3 63/13 64/18 65/17 65/21
66/13 67/2 67/3 69/2 69/4
69/5 72/5 72/16 74/15 75/12
75/24 80/7 81/12 82/2 82/23
82/25 82/25 83/4 85/9 85/12
85/14
salary [1]  70/16
sales [1]  74/1
same [15]  5/7 5/9 7/9 14/7
20/13 25/5 27/23 28/7 28/8
43/13 53/20 55/23 70/4 72/6
74/11
Sanders [1]  23/3
satisfied [1]  55/1
satisfy [1]  76/2
say [40]  10/8 10/8 13/10
14/2 18/3 22/14 22/25 30/18
39/1 42/17 43/10 43/17 44/12
45/2 46/18 47/6 47/7 48/20
49/19 50/5 50/24 51/9 52/14
52/20 52/24 54/8 55/14 57/12
59/7 59/15 60/10 60/17 70/11
71/15 72/9 72/11 72/23 73/3
74/13 80/9
saying [19]  14/6 18/7 21/24
40/25 44/6 45/24 50/23 53/1
53/21 54/2 57/15 60/2 61/5
61/16 62/9 62/13 63/19 72/10
81/16
says [31]  15/16 17/17 19/24
26/12 28/25 29/10 29/14 32/9
44/6 47/5 49/10 49/19 52/13
55/21 56/4 56/6 56/7 57/2
57/3 57/8 58/19 58/25 60/9
63/7 68/13 70/4 71/5 77/9
79/11 79/19 80/23
schedule [2]  40/10 40/11
school [1]  12/2
scope [1]  28/25
score [2]  71/3 82/9
seat [6]  4/5 5/16 8/3 27/15
35/15 74/25
second [4]  12/7 14/9 58/5
61/20
secretary [1]  16/11
Section [7]  4/20 4/24 5/4
6/25 35/16 35/22 83/5
see [13]  18/3 18/25 26/8
26/18 29/7 47/11 48/9 48/13
52/21 54/25 59/2 59/7 61/20
seed [1]  82/22
seeing [1]  47/12
seek [1]  78/5
seem [1]  56/8
seems [2]  45/22 53/25
seen [2]  37/13 41/19

## S

**Senate [12]** 7/14 7/23 8/9 18/11 24/7 50/11 50/11 50/12 50/19 58/19 60/25 80/4
**Senator [1]** 22/11
**senators [3]** 7/22 16/11 51/11
**send [2]** 82/4 83/17
**sense [5]** 19/9 19/14 24/16 57/24 75/10
**sent [1]** 58/10
**sentence [1]** 47/1
**separate [3]** 23/10 26/25 27/21
**separated [1]** 25/22
**separation [3]** 41/23 49/23 50/14
**sergeant [4]** 30/25 31/18 32/4 33/23
**series [1]** 46/4
**serious [2]** 50/22 59/13
**serve [1]** 18/21
**serves [3]** 60/21 69/8 73/25
**session [5]** 4/22 5/6 5/19 7/8 77/20
**set [3]** 28/20 58/19 60/12
**settled [1]** 9/19
**seven [20]** 12/12 13/4 13/6 13/7 13/11 13/18 13/22 13/25 42/8 42/12 42/13 42/15 42/21 43/17 64/16 64/20 64/23 65/1 65/1 65/5
**several [2]** 36/17 67/2
**shall [6]** 6/20 7/1 7/18 7/18 7/25 8/6
**share [2]** 7/16 16/21
**shared [3]** 8/17 81/23 82/21
**sharper [1]** 67/18
**She [1]** 57/3
**she's [1]** 57/3
**shield [6]** 30/20 33/8 33/13 34/21 37/15 38/20
**shielded [3]** 36/24 37/13 62/6
**shields [1]** 38/21
**short [1]** 73/8
**shorthand [2]** 85/6 85/13
**should [10]** 13/19 41/8 44/15 53/22 54/5 57/6 66/25 79/14 80/20 82/7
**shouldn't [1]** 54/8
**show [5]** 15/21 19/7 19/12 65/22 80/17
**shows [1]** 61/6
**signal [2]** 2/25 65/11
**signaling [1]** 65/8
**signed [1]** 73/1
**significance [1]** 25/17
**simple [3]** 12/22 25/1 69/16
**simply [8]** 6/9 10/15 11/6 11/25 13/7 13/11 51/16 72/17
**Sims [1]** 23/4
**since [7]** 3/7 34/3 34/5 47/22 50/6 51/12 60/25
**single [8]** 11/19 13/24 44/19 45/3 45/17 56/3 56/6 61/15
**singled [4]** 16/25 17/16 17/18 17/21
**sir [3]** 3/9 17/13 29/4
**sit [1]** 58/7
**sitting [6]** 7/19 7/20 7/25 8/6 26/7 12/22 83/11
**situation [5]** 4/8 44/20 50/17 60/5 61/10
**six [2]** 4/16 18/11
**Skaggs [5]** 47/15 47/16 47/21 48/5 69/7
**slander [1]** 63/6
**slightest [2]** 45/17 74/16

**slightly [1]** 47/14
**small [1]** 34/21
**so [119]**
**soldier [1]** 64/7
**some [15]** 2/13 2/14 4/7 7/16 9/4 46/4 55/20 56/10 58/13 63/4 63/22 67/14 67/17 69/10 70/1
**somebody [5]** 13/11 42/19 45/10 57/23 63/2
**somehow [3]** 22/20 22/24 26/19
**someone [1]** 37/21
**something [8]** 22/19 37/7 43/3 51/19 54/10 59/20 62/11 81/19
**somewhat [1]** 10/9
**somewhere [3]** 61/7 74/19 74/20
**sorry [6]** 17/4 29/24 43/8 47/13 53/1 79/10
**sought [1]** 79/16
**Spanish [1]** 9/3
**sparse [3]** 82/4 83/2 83/7
**speak [6]** 2/20 3/1 24/3 77/24 78/1 79/5
**speaking [2]** 21/11 37/22
**speaks [2]** 9/20 22/21
**special [3]** 4/22 25/16 77/25
**specially [2]** 16/25 17/21
**specific [8]** 16/20 24/3 24/12 24/23 26/12 35/21 35/23 42/25
**specifically [6]** 18/23 20/2 29/5 45/13 46/8 47/12
**specifying [1]** 26/10
**speculative [1]** 5/25
**speech [44]** 10/4 25/25 28/16 28/21 28/24 29/9 29/25 30/7 30/12 31/14 32/24 33/7 33/13 33/25 34/17 34/20 35/8 37/12 37/15 38/2 38/5 38/6 38/20 39/8 41/18 42/1 45/7 50/21 51/3 51/9 51/14 51/24 52/3 53/10 54/12 54/23 62/4 62/6 62/10 62/15 62/18 62/22 63/15 70/20
**spent [1]** 42/6
**spreading [1]** 4/14
**sprinkled [4]** 7/11 7/17 38/12 38/13
**staff [1]** 50/11
**staffer [1]** 13/10
**stage [1]** 28/20
**stamina [1]** 83/19
**stand [1]** 8/22
**standards [1]** 25/4
**standing [44]** 5/22 10/4 10/13 10/14 10/16 11/8 13/14 14/9 14/16 15/5 15/8 15/13 16/19 16/24 18/15 18/24 20/12 20/22 20/23 21/18 22/2 22/17 22/18 22/21 22/24 23/1 23/6 25/19 25/21 38/4 45/7 46/6 47/2 47/18 48/9 49/14 49/20 49/24 54/22 64/25 65/5 68/5 68/6 70/20
**stands [1]** 78/2
**start [1]** 45/6 58/25
**started [3]** 3/8 40/5 60/21
**state [8]** 6/4 23/17 56/15 57/22 67/6 74/1 74/1 74/4
**state's [1]** 73/25
**statements [1]** 52/7
**states [8]** 1/1 1/10 1/21 15/3 33/19 74/10 82/3 85/4
**stating [1]** 80/15
**status [5]** 11/3 26/8 67/25 67/25 77/25

**statute [3]** 72/25 74/22 81/8
**stay [1]** 40/16
**stenography [1]** 1/24
**step [1]** 52/1
**still [14]** 2/13 20/22 20/23 40/6 45/1 49/7 49/17 51/24 61/8 61/12 61/13 61/14 66/9 74/20
**stood [1]** 49/12
**stop [1]** 21/8
**store [1]** 74/4
**straight [1]** 41/7
**strangest [1]** 43/16
**street [1]** 13/11
**strength [7]** 10/17 10/19 11/20 14/17 14/24 14/25 15/2
**stripped [1]** 19/11
**structure [1]** 25/2
**struggle [1]** 16/18
**sub [2]** 24/9 25/7
**sub-delegate [1]** 24/9
**sub-delegation [1]** 25/7
**submit [9]** 5/22 6/9 9/15 15/14 17/8 20/11 20/15 34/13 76/8
**subscribed [1]** 85/15
**subsequent [2]** 21/2 70/2
**subside [1]** 10/5
**such [10]** 4/10 4/22 6/8 18/16 21/21 37/14 57/13 62/12 73/7 78/4
**sue [2]** 49/21 53/3
**sued [5]** 16/11 36/2 36/3 36/4 36/6
**suffer [1]** 68/4
**suggested [1]** 38/23
**suggesting [2]** 21/5 50/8
**suggests [1]** 76/9
**suing [1]** 54/12
**suit [3]** 18/24 32/4 32/25
**super [1]** 47/17
**support [2]** 24/15 45/3
**supposedly [1]** 42/8
**Supreme [30]** 9/19 29/9 29/21 30/6 36/9 36/23 46/13 46/13 46/14 48/22 48/23 49/3 49/6 49/9 50/1 51/5 51/8 53/2 53/3 53/4 53/10 56/22 57/13 57/21 58/20 63/3 63/7 63/19 81/3 81/5
**sure [13]** 2/25 5/25 10/7 10/11 21/10 23/16 29/18 53/15 57/2 58/18 74/13 75/23 78/23
**surely [2]** 9/1 25/2
**suspect [1]** 63/18
**suspend [1]** 47/20
**sustain [2]** 68/5 68/6
**Swayze [11]** 23/14 23/22 53/17 53/23 53/25 54/2 54/5 54/8 71/4 71/7 71/8
**Swayze's [3]** 53/18 71/5 71/5
**switched [1]** 52/25
**system [12]** 42/22 43/5 43/7 43/11 54/19 55/6 55/6 55/8 55/9 55/15 56/19 64/1

## T

**take [9]** 12/22 31/11 39/20 44/5 54/23 61/10 75/22 78/18 82/10
**taken [4]** 30/15 36/20 61/15 85/13
**taking [1]** 62/7
**talk [5]** 41/22 41/22 41/23 42/1 59/1
**talking [6]** 21/20 42/4 49/4 53/17 61/9 83/23

talks [2]   47/4 61/17
tally [9]   43/11 43/13 43/14
 43/25 65/7 66/1 66/6 66/6
 66/11
tape [1]   85/14
targeted [1]   45/10
tax [3]   69/11 73/25 74/4
taxation [1]   69/10
taxed [1]   57/23
technological [1]   55/9
technologies [1]   73/18
technology [10]   9/12 56/12
 56/20 57/15 57/19 57/24 61/2
 73/13 73/13 73/17
teeth [1]   35/8
telegraph [1]   73/19
tell [4]   50/15 59/25 60/8
 60/15
telling [1]   68/11
Ten [1]   24/18
tenable [1]   47/6
term [4]   19/25 38/18 56/24
 81/6
terms [3]   12/23 21/16 76/24
territorial [2]   14/18 44/24
territories [2]   14/20 15/4
test [3]   33/19 52/19 52/20
testimony [1]   85/7
text [9]   5/24 6/7 9/17 27/5
 27/6 56/1 56/4 72/4 76/5
textual [2]   8/7 8/16
than [19]   4/14 4/17 5/12
 7/24 8/3 8/5 28/22 43/11
 43/25 48/6 51/4 51/10 51/14
 51/19 52/21 54/18 66/23
 73/14 74/24
thank [27]   2/23 3/3 3/4 3/6
 3/9 10/12 17/20 20/25 21/12
 23/13 28/13 28/19 30/4 37/23
 37/25 39/22 39/24 40/20
 40/24 48/2 64/3 64/4 64/11
 82/16 83/12 83/19 83/25
that [665]
that's [57]   5/3 5/23 5/25
 11/9 13/23 14/5 16/7 19/8
 20/5 20/6 23/20 23/21 25/9
 31/7 31/9 31/10 33/4 34/18
 35/3 40/17 42/12 43/19 43/23
 44/7 44/16 45/14 45/25 47/5
 50/5 50/23 52/2 53/11 54/3
 54/4 57/18 58/4 59/3 59/10
 60/11 60/11 60/16 60/16
 60/24 64/21 69/20 71/21 75/8
 75/13 75/14 76/3 76/3 76/10
 77/3 77/6 77/21 80/12 80/18
their [80]   3/20 3/21 5/5 5/6
 5/16 5/19 6/12 7/7 7/8 7/9
 7/10 10/14 10/18 10/19 10/22
 11/19 11/21 12/7 14/9 14/14
 14/15 14/17 15/9 17/1 17/22
 17/24 19/7 19/10 19/12 19/14
 19/16 19/22 21/11 21/19
 21/22 22/3 23/1 23/2 24/2
 24/2 24/4 24/4 29/13 31/7
 31/10 32/1 35/19 36/10 36/13
 36/19 37/22 38/4 38/5 42/24
 45/11 45/12 45/13 56/16 57/4
 57/7 57/9 58/19 60/4 62/21
 62/23 65/11 65/24 67/16
 67/25 67/25 68/2 68/3 68/5
 68/6 69/24 70/21 74/1 75/25
 81/25 83/17
them [30]   4/21 5/12 5/17
 6/17 7/5 13/6 13/22 18/12
 24/3 24/3 24/4 24/24 24/25
 41/14 45/18 54/23 60/3 64/18
 65/23 67/9 67/14 68/7 69/22
 70/8 71/10 74/4 74/20 80/3

the [active]
themselves [3]   9/10 24/20
 24/21
then [41]   4/4 11/16 11/24
 12/12 13/14 15/10 18/2 18/25
 24/23 32/19 35/2 39/11 40/12
 41/14 41/22 42/1 42/11 44/2
 44/7 45/8 46/6 46/10 49/14
 49/17 50/4 50/6 52/24 53/25
 54/21 55/24 63/22 68/6 71/1
 72/12 72/19 73/16 74/19
 77/21 80/5 81/1 81/12
theoretically [1]   26/25
theory [8]   25/6 41/21 44/3
 44/11 45/4 46/15 62/5 76/22
there [69]   2/19 5/17 6/13
 12/6 16/18 17/12 17/15 18/17
 19/3 22/19 22/21 22/24 26/13
 31/16 32/25 36/25 37/20 40/7
 40/11 40/15 42/13 43/12 44/8
 45/9 46/6 47/4 47/11 47/18
 47/18 49/20 49/24 51/7 52/6
 52/19 53/2 53/9 53/10 55/11
 56/3 56/6 56/13 56/13 57/1
 57/19 59/23 59/24 60/1 60/5
 60/11 61/10 61/12 61/13
 61/14 62/15 62/25 63/15
 63/16 65/1 65/25 66/15 67/23
 69/12 69/15 69/17 70/5 77/7
 79/14 81/3 81/15
there's [21]   7/11 12/6 18/15
 26/16 34/19 39/3 40/12 41/21
 42/20 45/7 47/13 49/5 50/13
 54/16 55/11 55/23 60/13
 63/16 65/25 69/19 77/21
therefore [6]   50/18 56/21
 57/5 70/23 81/8 81/18
these [23]   5/14 6/16 8/7
 8/16 16/8 21/16 25/24 26/3
 27/12 29/5 33/6 37/16 39/9
 43/14 45/18 61/15 62/21
 67/24 72/14 72/16 72/20
 72/22 80/24
they [101]
they're [6]   2/12 27/22 41/13
 55/10 81/15 83/23
they've [1]   15/20
thing [6]   14/7 27/19 30/14
 43/16 53/20 60/20
things [11]   24/11 25/24
 26/21 30/12 45/6 55/19 57/20
 57/20 60/21 63/11 63/23
think [43]   9/22 9/24 11/3
 11/3 12/20 13/4 14/6 15/25
 16/7 16/22 23/10 25/10 27/6
 28/6 33/1 35/2 35/3 35/7
 35/10 38/4 38/9 39/3 41/8
 41/18 44/4 51/2 51/18 53/1
 55/11 55/24 56/9 59/13 59/19
 59/20 63/4 68/11 69/11 71/3
 75/24 80/7 81/19 82/21 83/3
thinking [1]   43/1
thinks [3]   43/14 44/15 54/5
third [3]   50/4 74/21 75/2
thirds [4]   7/21 7/22 69/10
 69/16
this [93]
thoroughness [1]   39/16
those [44]   3/14 6/1 7/2 7/2
 7/16 10/10 10/24 11/17 11/19
 13/7 13/18 13/25 14/3 14/21
 15/13 15/22 24/6 24/6 26/15
 27/21 28/6 30/15 30/21 31/1
 33/13 36/20 36/21 45/8 49/11
 50/3 53/5 54/11 55/1 55/12
 62/16 64/17 64/25 65/5 65/9
 66/21 67/17 68/6 81/6 82/4
though [10]   5/25 13/9 23/2
 37/6 39/2 48/3 49/7 56/18

75/9 77/8
thought [5]   54/10 81/25
thread [1]   68/22
threat [1]   55/8
threatened [1]   58/1
three [3]   6/14 8/2 34/24
threshold [1]   28/15
threw [1]   46/6
through [14]   5/19 8/14 8/14
 11/12 24/1 24/2 26/17 65/21
 65/23 68/17 68/23 68/24
 72/15 75/3
throughout [5]   7/12 7/17
 8/23 38/12 38/13
thus [2]   19/21 36/8
tied [2]   51/16 52/18
ties [1]   42/6
time [21]   3/17 4/22 6/1 9/4
 11/25 13/3 39/14 41/3 41/11
 42/6 47/20 53/23 56/8 64/20
 65/4 73/20 74/11 74/12 75/22
 76/10 78/4
time-honored [1]   76/10
times [14]   12/12 22/9 36/17
 42/8 42/10 42/11 42/13 42/15
 42/21 43/17 59/20 64/15
 64/19 69/17
tinge [1]   63/19
today [10]   2/7 2/16 3/16
 4/18 5/3 9/7 10/7 23/4 83/18
 83/22
today's [2]   9/5 56/12
together [5]   8/12 20/8 67/9
 68/3 85/13
Tom [1]   52/8
too [4]   3/5 5/9 63/24 83/24
took [1]   82/5
top [1]   17/15
topic [1]   20/22
totally [1]   60/17
touch [1]   23/11
touching [1]   23/8
toward [1]   60/14
towards [6]   23/10 25/10
 65/17 66/4 72/6 76/21
tradition [1]   9/14
traditional [1]   52/20
transaction [1]   74/8
transcript [3]   1/9 1/24
 85/12
transitioned [1]   71/2
transmission [1]   66/12
transmit [2]   42/18 43/25
transmitted [3]   42/15 64/20
 66/7
transmitters [1]   82/12
transmitting [4]   42/23 43/3
 43/15 55/22
transportation [1]   73/20
traveling [2]   80/13 80/16
treasury [1]   16/12
treated [1]   22/15
treatment [2]   16/25 17/22
tried [2]   12/21 45/22
trouble [2]   2/19 2/24
trudged [1]   72/15
true [9]   39/11 43/20 60/11
 64/24 69/22 69/24 70/9 76/3
 81/17
trusted [1]   82/11
truth [3]   77/8 77/24 78/1
trying [6]   27/20 44/5 44/5
 47/10 72/13 82/23
turn [2]   67/22 76/13
turnstiles [1]   65/23
tweak [1]   41/20
twice [2]   34/3 39/5
two [28]   7/21 7/22 7/25 8/6
 9/5 9/6 10/13 15/22 26/15

**T**

two... [19]  27/9 28/1 28/6
34/23 36/20 50/3 51/8 51/8
58/16 69/10 69/16 70/2 72/8
75/18 80/3 80/22 81/1 81/1
83/9
two million [2]  9/5 9/6
two-thirds [4]  7/21 7/22
69/10 69/16
type [2]  17/25 69/10
types [1]  46/10

**U**

U.S [3]  1/15 16/23 47/8
ultimate [1]  26/5
ultimately [5]  8/13 30/23
30/23 34/23 71/9
Um [1]  23/23
Um-hum [1]  23/23
unable [2]  19/11 55/10
unanimous [10]  59/15 59/18
60/5 60/24 76/13 76/14 76/16
76/23 77/2 79/21
unbroken [2]  9/14 9/19
unconstitutional [7]  11/11
33/11 37/17 67/5 67/6 67/23
68/2
unconstitutionally [5]  16/16
38/8 50/12 50/18 50/19
under [20]  4/11 4/20 6/8
23/3 33/24 35/1 37/12 44/3
44/17 45/18 46/6 49/23 61/7
61/19 62/3 62/5 63/15 65/13
66/9 69/15
undermines [1]  60/18
understand [5]  12/21 14/7
42/19 76/22 76/23
understanding [3]  7/13 8/8
16/8
understood [5]  8/10 68/19
68/20 70/3 75/23
undoubtedly [1]  63/20
unfavorable [2]  16/25 17/21
Union [16]  31/6 32/9 32/14
33/12 34/1 37/14 47/24 50/24
51/3 51/7 51/12 51/13 51/20
52/19 62/20 69/25
UNITED [5]  1/1 1/10 1/21
33/18 85/4
unless [2]  50/1 64/7
unprecedented [1]  3/23
untenable [2]  46/18 47/3
until [3]  40/12 78/4 78/13
up [7]  23/4 49/16 50/14 59/8
65/5 73/24 79/9
up-ended [1]  73/24
upon [4]  40/15 47/2 73/5
85/7
upwards [1]  4/12
urgent [1]  4/6
us [2]  32/24 50/14
use [6]  33/18 36/22 54/9
57/4 61/3 66/1
used [6]  32/16 44/12 50/19
51/4 54/3 75/17
uses [1]  73/6
using [6]  12/13 12/22 44/11
54/14 57/6 73/17
utilized [1]  54/6
utterly [1]  15/21

**V**

valid [6]  13/16 13/24 14/4
34/24 57/23 64/22
validity [8]  11/7 19/11
19/15 19/15 19/16 19/18 20/4
78/6
validly [1]  13/20
values [1]  24/4

vander [3]  15/7 15/18 49/11
vanhoughnet [1]  31/12 41/5
venerable [1]  29/9
version [1]  17/13
versus [27]  2/3 14/13 21/23
22/15 26/10 28/4 30/1 30/2
30/11 30/17 32/8 32/13 32/25
33/2 33/18 36/22 47/8 50/4
50/9 52/25 57/14 68/15 68/18
68/20 69/3 73/4 85/8
very [42]  2/12 2/12 2/20
3/10 10/11 21/24 24/16 28/23
32/23 36/23 38/15 42/9 42/11
45/22 45/23 45/25 47/13
48/21 51/18 52/4 52/10 52/16
52/21 53/23 55/3 56/22 56/24
59/10 61/1 62/8 62/9 62/13
63/7 63/20 63/25 75/9 79/5
79/20 80/12 80/12 81/20 82/7
vest [2]  22/18 25/20
vested [1]  15/5
veterans [1]  62/25
Veto [4]  9/24 16/14 16/16
18/8
view [6]  30/18 30/19 31/1
31/3 37/12 43/10
viewed [2]  33/17 33/19
violate [3]  75/13 79/14
80/14
violated [7]  22/12 62/23
62/25 80/9 80/17 80/18 80/20
violating [1]  57/18
violation [1]  62/21
violently [1]  4/14
virtue [1]  44/3
virus [3]  55/11 56/13 56/14
vitality [2]  69/1 69/6
void [1]  19/19
volumes [1]  9/20
vote [120]
voted [13]  19/10 26/13 42/10
42/11 42/15 42/20 43/17
55/12 64/15 64/20 64/23
64/25 65/16
voter [3]  22/10 22/18 55/22
voter's [1]  25/7
voters [6]  22/25 23/25 24/6
24/11 43/24 65/11
votes [53]  3/20 6/3 11/17
11/19 12/18 13/2 13/5 13/7
13/15 13/17 13/18 13/21
13/25 14/1 14/3 14/4 14/21
15/2 15/13 19/15 19/19 24/2
27/25 34/23 34/24 40/12
42/12 42/16 44/13 44/13 43/15
44/3 44/22 61/15 64/17 64/20
64/24 65/1 65/2 65/4 65/5
65/9 65/11 66/7 66/15 66/18
66/19 66/20 66/21 66/23 67/9
67/16 82/7
voting [43]  8/14 10/17 10/19
11/20 14/17 14/23 14/25 15/1
28/4 38/9 38/11 38/19 42/8
42/10 42/22 43/5 43/7 44/1
51/19 51/20 52/1 52/2 52/14
52/18 53/12 54/3 54/6 54/19
55/23 58/13 58/13 59/25
65/19 66/5 70/8 70/12 70/13
70/23 73/14 73/16 73/19 75/4
76/21
votings [1]  27/1

**W**

waive [1]  69/16
walk [1]  65/23
walked [1]  68/16
Walker [6]  30/1 30/1 30/10
30/17 32/25 36/22
walking [1]  13/11

want [14]  6/17 16/21 17/10
18/6 21/12 25/3 25/20 25/22
48/8 55/3 57/2 63/11 72/3
81/21
wanted [7]  41/7 45/5 58/4
60/20 61/21 61/24 80/14
wants [2]  46/12 52/15
War [2]  9/8 9/8
warehouse [1]  74/2
was [146]
Washington [12]  1/5 1/14
1/18 1/22 4/5 4/11 5/8 7/6
13/1 58/3 80/13 80/16
wasn't [2]  18/12 45/14
watching [1]  41/16
way [25]  10/5 11/1 12/22
20/16 24/25 29/23 42/9 42/14
42/20 46/5 54/14 56/14 58/24
59/2 60/10 60/23 60/25 61/2
61/14 62/17 65/22 70/4 70/17
80/22 83/17
Wayfair [5]  57/14 73/12
73/12 73/22 74/9
ways [2]  24/24
we [76]  4/8 4/17 5/22 9/15
10/15 13/3 14/6 17/8 20/6
20/11 20/15 21/10 24/16
24/19 25/6 25/18 26/7 26/18
27/3 27/4 27/4 27/6 28/6
30/22 32/19 33/22 34/1 34/4
35/5 35/10 37/9 37/21 38/9
38/13 39/2 39/7 39/12 41/8
41/12 41/14 43/21 44/4 47/15
48/16 50/15 52/3 52/12 54/21
55/4 55/8 55/11 55/24 56/8
57/13 57/24 58/10 59/1 59/1
59/16 59/21 61/2 66/17 70/1
70/4 70/9 72/9 72/15 73/17
74/15 74/22 78/20 79/25 81/1
81/13 82/2 83/18
we'll [1]  25/25
we're [12]  9/7 10/9 21/9
41/17 44/19 50/16 52/4 52/11
57/17 61/15 62/16 80/25
we've [4]  37/13 38/23 67/13
71/4
week [1]  40/12
weekend [1]  83/25
weeks [1]  81/20
well [54]  2/20 2/20 4/15 6/4
8/9 10/11 11/21 12/19 15/8
20/21 22/13 23/12 26/3 29/21
31/17 34/9 37/8 38/4 39/25
41/8 41/10 43/18 43/19 45/22
45/24 49/19 50/5 51/10 52/1
52/10 53/11 55/25 56/11 58/2
58/4 59/7 60/2 60/6 60/10
60/13 60/15 61/5 62/8 62/9
62/13 62/19 64/20 67/4 67/12
69/3 71/3 71/22 80/8 81/16
went [9]  18/18 30/17 65/2
65/21 68/10 71/20 80/8 80/11
80/15
were [69]  8/10 8/25 13/7
13/8 13/8 13/11 13/13 13/16
13/16 13/17 13/22 13/23 14/3
14/4 14/6 14/23 15/18 18/11
31/24 31/25 31/25 32/4 32/25
33/9 33/14 36/10 36/24 37/17
43/19 44/1 44/9 44/22 44/22
44/23 44/24 45/10 45/11
45/12 45/16 45/18 45/19
46/11 47/11 53/5 55/16 61/12
62/22 62/23 63/25 63/8 64/17
64/18 65/1 65/4 65/16 66/15
66/16 66/24 69/15 79/22
79/25 81/7 81/8 81/10 81/10
81/11 83/2 83/9 83/11
weren't [1]  55/12

**W**

Wesberry [1]  23/3
what [51]   10/8 12/17 13/19
 14/9 14/9 17/8 21/16 23/16
 25/11 26/22 27/4 27/6 29/15
 41/5 42/6 43/16 43/23 44/5
 44/6 46/2 51/15 51/21 52/2
 52/12 52/13 52/17 53/3 53/7
 53/11 53/19 54/2 54/18 55/4
 56/21 57/8 57/13 58/6 58/25
 59/16 66/17 67/3 68/20 72/10
 73/9 73/9 74/5 79/23 80/18
 80/23 82/2 83/23
whatever [2]   68/2 68/4
whatsoever [2]   24/14 26/14
when [26]   6/12 7/18 7/20
 9/19 31/24 33/9 37/10 41/17
 42/4 49/6 49/13 52/11 52/12
 56/13 57/5 57/25 59/23 61/14
 64/25 69/18 71/16 74/6 77/17
 81/6 83/12 83/22
whenever [1]   77/10
where [19]   8/11 12/11 20/3
 21/1 22/10 32/8 32/9 44/20
 45/23 46/5 46/17 48/1 50/17
 50/22 51/3 58/7 60/21 68/17
 69/1
whereas [2]   44/17 81/9
whereof [1]   85/15
whether [17]   4/10 12/1 20/7
 20/7 21/17 37/7 38/25 43/22
 56/24 59/2 60/12 61/18 65/14
 65/25 80/14 81/24 83/8
which [39]   4/4 7/25 8/5 9/3
 17/5 18/1 18/9 18/19 19/25
 20/2 20/17 21/19 22/3 23/9
 26/22 27/7 27/24 30/14 31/13
 32/23 33/2 33/15 37/13 39/16
 42/8 46/4 47/2 49/10 55/25
 60/8 60/17 63/15 63/16 65/10
 66/23 69/15 72/17 73/7 79/16
while [2]   24/14 72/1
who [31]   3/11 3/13 11/17
 11/18 11/18 13/23 18/11
 18/22 21/10 23/15 31/18
 31/25 32/16 35/1 36/7 37/16
 44/14 44/23 49/23 55/12
 59/24 59/25 60/6 60/7 60/14
 64/15 65/15 65/16 67/19 70/6
 81/11
who's [1]   10/24
whoever [1]   65/9
whole [7]   14/20 18/10 22/4
 49/10 70/18 73/14 76/4
whose [6]   15/13 28/2 28/5
 66/18 66/19 83/10
why [14]   3/8 5/25 10/9 16/8
 21/5 23/11 24/19 31/9 44/18
 52/3 60/24 61/2 76/10 76/23
will [33]   3/2 8/1 9/9 9/15
 9/18 9/20 16/1 23/13 24/9
 25/6 26/10 28/2 29/7 31/15
 31/22 32/4 33/8 33/10 33/18
 34/25 41/10 42/1 54/24 58/21
 58/23 59/25 60/8 66/15 71/2
 79/6 83/14 83/15 83/16
WILLIAM [3]   1/17 2/6 50/9
win [1]   41/14
wiped [1]   68/11
wished [2]   45/20 54/2
within [4]   21/22 29/13 40/17
 74/1
without [2]   8/4 25/3
witness [1]   85/15
witnesses [1]   81/11
women [2]   38/25 67/15
won [1]   53/8
word [7]   56/3 56/6 72/5
 72/12 72/18 83/4 83/15

wording [2]   36/22 58/14
words [19]   5/7 6/11 8/8 9/10
 27/13 72/16 75/17 76/19 83/6
work [4]   46/20 55/6 57/25
 59/9
working [2]   55/7 55/10
worth [2]   44/15 81/2
would [82]   2/25 5/15 5/22
 6/9 8/12 9/1 9/5 9/15 11/4
 12/17 12/25 14/3 14/3 14/8
 14/23 15/8 15/14 19/10 20/15
 21/19 21/18 22/14 22/17
 22/25 26/7 26/11 26/13 26/18
 28/14 32/15 32/16 34/13 35/3
 35/7 38/7 38/20 39/9 43/16
 45/3 45/9 49/7 50/18 50/24
 54/7 54/8 54/12 55/13 55/14
 56/1 56/25 57/4 58/7 62/5
 62/6 66/9 66/10 66/12 66/22
 67/2 67/5 67/6 67/20 67/21
 67/24 68/4 68/5 68/6 69/3
 71/24 71/25 72/7 72/15 72/19
 73/18 74/16 74/19 74/20 76/8
 79/4 81/24 82/3 82/3
wouldn't [1]   62/10
writes [1]   83/23
writing [2]   57/1 57/8
writings [1]   24/18
wrong [3]   54/13 74/6 74/7
wrongly [1]   51/22

**Y**

yeah [4]   48/16 48/18 56/7
 60/16
year [1]   33/3
yeas [2]   6/24 6/25
Yellow [3]   4/3 5/11 73/15
yes [34]   2/22 3/9 6/18 12/19
 14/8 17/6 17/13 20/20 20/25
 21/12 23/21 25/18 26/5 27/2
 27/25 28/11 28/18 29/4 35/2
 37/8 37/8 40/9 41/19 42/10
 42/11 48/11 63/18 64/17
 65/17 67/17 70/14 72/23
 73/12 76/3
yet [4]   2/15 37/5 63/23 66/3
you [183]
you'd [1]   29/1
You'll [1]   35/12
you're [4]   22/16 26/23 42/17
 42/18
you've [2]   22/8 22/14
your [240]